U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
Appeal from the U.S. Bankruptcy Court
For the District of Delaware

Marjorie Joan Martin,

        Appellant,                Appeal Case No. 1:06-cv-389

    v.

ANC Rental Corporation,

        Appellee.

---

## APPELLANT MARJORIE JOAN MARTIN'S OPENING BRIEF

---

Ryan T. Murphy, Esq.[1] (MN #311972)
Fredrikson & Byron, P.A.,
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN  55402-1425

Lee L. La Bore (MN #59274)
Steven L. Viltoft (MN #190615)
P.O. Box 70
Hopkins, MN  55343-0070

James S. Yoder (#2643)
White and Williams LLP
824 North Market Street
Suite 902
PO Box 709
Wilmington, DE 19899-0709

ATTORNEYS FOR APPELLANT
MARJORIE JOAN MARTIN

---

[1] Admitted Pro Hac Vice on June 20, 2006.

# TABLE OF CONTENTS

STATEMENT OF APPELLATE JURISDICTION .................................................................... 1

STATEMENT OF ISSUES ................................................................ 1

STATEMENT OF THE CASE AND FACTS ....................................................................... 3

    I.    ANC RENTAL CORPORATION, INC., ALAMO RENT-A-CAR, LLC AND RELATED ENTITIES FILED BANKRUPTCY. ....................................................... 3

    II.    MRS. MARTIN RENTED A CAR FROM ALAMO AND WAS INVOLVED IN AN ACCIDENT .................................................................. 3

    III.    AFTER THE BANKRUPTCY CASES WERE FILED, PLAINTIFFS COMMENCED AN ACTION AGAINST DEBTORS AND MRS. MARTIN, AND MRS. MARTIN ASSERTED A COMMON-LAW INDEMNITY CLAIM AGAINST DEBTORS. ............................................................. 4

    IV.    DEFENDANTS WERE FOUND JOINTLY AND SEVERALLY LIABLE AND DEBTORS WERE ORDERED TO INDEMNIFY MRS. MARTIN. ......................... 4

    V.    MRS. MARTIN PAID THE JUDGMENT AND TIMELY FILED THIS ADMINISTRATIVE EXPENSE CLAIM. ............................................................. 5

    VI.    THE BANKRUPTCY COURT DENIED MRS. MARTIN'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM. .... 5

SUMMARY OF ARGUMENT ................................................................ 6

ARGUMENT ................................................................ 8

    I.    SECTION 503 OF THE BANKRUPTCY CODE SETS FORTH THE REQUIREMENTS OF AN ADMINISTRATIVE EXPENSE CLAIM. .................... 8

    II.    THE MINNESOTA DISTRICT COURT HELD THAT DEBTORS FAILED TO COMPLY WITH THE MINNESOTA NO-FAULT AUTOMOBILE INSURANCE STATUTE AND ORDERED DEBTORS TO INDEMNIFY MRS. MARTIN PURSUANT TO MINNESOTA COMMON-LAW ......................... 9

    III.    UNDER THIRD CIRCUIT PRECEDENT, MRS. MARTIN'S COMMON-LAW CLAIM FOR INDEMNITY AROSE POST-PETITION WHEN THE JUDGMENT WAS PAID. ....................................................... 11

A.    In The Third Circuit, A Common-law Indemnity Claim Does Not Arise At The Time Of The Underlying Act, Rather, When The Judgment Is Paid. .... 11

B.    Pursuant To Minnesota Law, Mrs. Martin's Common-law Indemnity Claim Arose Post-Petition Because She Did Not Have A Right To Payment Until After The Filing Of The Cases. ........................................................................ 12

IV.    THE BANKRUPTCY COURT INCORRECTLY HELD THAT MRS. MARTIN'S INDEMNIFICATION OBLIGATION AROSE FROM THE CONTRACT WITH DEBTORS. ......................................................................................................... 14

A.    The Minnesota District Court Held That Debtors' Liability To Ms. Martin Arose Under The Common-law, Which Precluded The Bankruptcy Court From Holding To The Contrary. ...................................................................... 14

B.    Minnesota's No-Fault Automobile Insurance Statute Does Not Imply An Indemnification Obligation Into The Rental Contract Between Debtors And Mrs. Martin. ...................................................................................................... 17

C.    Mrs. Martin And Debtors Did Not Specifically Agree In Advance To Indemnification As Required By The Third Circuit. .......................................... 18

D.    The Bankruptcy Court's Decision Effectively Overrules Binding Precedent. ... 20

V.    MRS. MARTIN'S INDEMNITY CLAIM IS AN ACTUAL, NECESSARY COST AND EXPENSE OF PRESERVING DEBTORS' ESTATES. ...................... 21

CONCLUSION ................................................................................................................. 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re All Media Properties, Inc., 5 B.R. 126 (Bankr. S.D. Tex. 1980) ............................ 19

In re American Metrocomm Corp., 303 B.R. 32 (Bankr. D. Del. 2000) ........................ 17

Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40F 3d 1416
    (3d Cir. 1994) ........................................................................................................ 15

Avellino & Bienes v. Frenville Co., Inc. (In re Frenville Co., Inc.),
    744 F.2d 332 (3d. Cir. 1984) ................................................................ 9, 11-14, 19-21

In re Chateauguay Corp., 945 F.2d 1205 (2d Cir. 1991) ............................................... 19

Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950
    (1st Cir. 1976) ........................................................................................................ 8

Dixon v. Northwestern National Bank of Minneapolis, 275 F. Supp. 582
    (D. Minn. 1967) ....................................................................................................... 13

In re Harnischfeger Industries, Inc., 316 B.R. 616 (D. Del. 2003) ................................... 1

In re IT Group, Inc., 302 B.R. 483 (D. Del. 2003) .......................................................... 1

Jones v. Chunetron Corp., 212 F.3d 199 (3d Cir. 2000) ................................................ 12

In re Kester, 339 B.R. 749 (B.A.P. 10th Cir. 2006) ....................................................... 1

Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S. Ct. 1883 (1982) ........... 15

Lance v. Dennis, 546 U.S. 459, 126 S. Ct. 1198 (2006) ................................................ 15

Penn. Department of Env. Resources v. Tri-State Clinical Laboratories, Inc.,
    178 F.2d 685 (3d Cir. 1999) ................................................................................... 8

Reading Co. v. Brown, 391 U.S. 471 (1968) ................................................................. 21

Vanston Bondholders Protective Committee v. Green, 329 U.S. 156 (1946) ............. 9, 12

In re W.R. Grace & Co., 281 B.R. 852 (Bankr. D. Del. 2002) ....................................... 12

## STATE CASES

Allstate Insurance Co. v. Eagle-Picher Industries, Inc., 410 N.W.2d 324
(Minn. 1987) ......................................................... 16

American Family Mutual Insurance Co. v. Ryan, 330 N.W.2d 113 (Minn. 1983) ......... 18

American Mutual Liability Insurance Co. v. Reed Cleaners, 122 N.W.2d 178
(Minn. 1963) ......................................................... 16

Art Goebel, Inc. v. North Suburban Agencies, Inc., 567 N.W.2d 511 (Minn.
1997) ............................................................... 20

Blum v. Good Humor Corp., 57 A.D.2d 911 (N.Y. App. Div. 1977) ........................... 12

City of Wilmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872 (Minn. 1994) ....... 13

In re Estate of Morse, 364 N.W.2d 842 (Minn. Ct. App. 1985) ..................................... 22

Haney v. International Harvester Co., 201 N.W.2d 140 (Minn. 1972) ......................... 16

Hendrickson v. Minnesota Power & Light Company, 104 N.W.2d 843
(Minn. 1960) ......................................................... 20

Hertz v. State Farm, 573 N.W.2d 686 (Minn. 1998) .................................. 4, 9-10, 17-18

Johnson v. Consolidated Freightways, Inc., 420 N.W.2d 608 (Minn. 1988) ................. 15

Kaiser v. Northern State Power Co., 353 N.W.2d 899 (Minn. 1984) ........................... 15

McClain v. Begley, 465 N.W.2d 680 (Minn. 1991) ...................................................10, 17

Metropolitan Property and Casualty Insurance Company v. Metropolitan
Transit Commission, 538 N.W.2d 692 (Minn. 1995) ............................................... 10

Olson v. Blesener, 633 N.W.2d 544 (Minn. Ct. App. 2001) ......................................... 16

Roering v. Grinnell Mutual Reinsurance Co., 444 N.W.2d 829 (Minn. 1989) .............. 18

Schuler v. Meschke, 453 N.W.2d 156 (Minn. Ct. App. 1989) ...................................... 20

Streich v. American Family Mutual Insurance Co., 358 N.W.2d 396 (Minn. 1984)
..................................................................................................................... 18

Trapp v. R-Vee Corp., 359 N.W.2d 323 (Minn. Ct. App. 1984) .................................... 13

Zurich American Insurance Co. v. Bjelland, 710 N.W.2d 64 (Minn. 2006) ................... 16

## FEDERAL STATUTES

11 U.S.C.§ 101 ............................................................................................ 11

11 U.S.C. § 1129(a)(9) .................................................................................. 8

11 U.S.C. § 362(a) ........................................................................................ 14

11 U.S.C. § 503 .................................................................................... 1, 5-6, 8, 21

11 U.S.C. § 507 ............................................................................................. 8

28 U.S.C. § 158(a) .......................................................................................... 1

28 U.S.C. § 1738 .......................................................................................... 15

## STATE STATUTES

Minn. Stat. § 65B.49 subd. 5(a)(1) ................................................................. 4

N.Y. Civ. Prac. Law § 1007 (McKinney 1976) ............................................. 12

## OTHER AUTHORITIES

Fed. R. Civ. P. 54 ........................................................................................... 1

Minn. R. Civ. P. 13 and 14 ........................................................................... 13

42 C.J.S. Indemnity § 3 (June 2004) ............................................................. 20

## STATEMENT OF APPELLATE JURISDICTION

This is an appeal from the Order and Memorandum Opinion dated April 28, 2006 ("Opinion") of the Honorable Mary F. Walrath of United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") in Bankruptcy Case No. 01-11200. Pursuant to Fed. R. Bankr. P. 7054, which incorporates Fed. R. Civ. P. 54, the Opinion is a final order. 28 U.S.C. § 158(a)(1) provides that the district courts of the United States shall have jurisdiction to hear appeals from a final order of a bankruptcy court. Thus, this Court has jurisdiction to hear this appeal.

## STATEMENT OF ISSUES

I.    To constitute an allowed administrative claim under 11 U.S.C. § 503(b)(1)(A), the claim must (A) arise after the filing of the bankruptcy case and (B) be an actual, necessary cost and expense of preserving the bankruptcy estate. Did the Bankruptcy Court err in holding that Mrs. Martin's common-law indemnity claim did not constitute an allowed administrative expense?

Standard of Review: On appeal, the district court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to its legal conclusions. In re Harnischfeger Industries, Inc., 316 B.R. 616, 619 (D. Del. 2003). The district court exercises plenary review of the bankruptcy court's interpretation of state law and its application to a bankruptcy proceeding. In re IT Group, Inc., 302 B.R. 483, 486 (D. Del. 2003); In re Kester, 339 B.R. 749, 751 (B.A.P. 10th Cir. 2006).

A.    Established Third Circuit law recognizes that a common-law indemnity claim arises for purposes of the Bankruptcy Code when there exists a right to payment under applicable law. Under Minnesota law, a right to payment for a

1

common-law claim of indemnity arises at the time the judgment is paid or, at the earliest, when a defendant is permitted to institute a third-party suit against one who may be liable. Mrs. Martin was involved in an accident with Plaintiffs while driving a car rented from Debtors. After the bankruptcy cases were filed, Plaintiffs brought suit against Mrs. Martin and Debtors, and she asserted a common-law indemnity claim against Debtors. Plaintiffs were awarded judgment against Mrs. Martin and Debtors. The Minnesota district court ordered Debtors to indemnify Mrs. Martin under the common-law. Mrs. Martin paid Plaintiffs $2.44 million in satisfaction of their judgment against her and Debtors. Did the Bankruptcy Court err in holding that Mrs. Martin's common-law indemnity claim arose prior to the filing of the bankruptcy cases?

B.   The Supreme Court has held that an actual, necessary cost and expense of preserving the estate includes tort claims against a debtor because the injured party should enjoy the same priority as the expense for insurance premiums and it is inequitable for an injured party to bear the costs. Mrs. Martin's common-law indemnity claim is an equitable claim, which arose because she satisfied Plaintiffs' tort judgment against Debtors. Debtors had an opportunity to purchase insurance post-petition to cover such claims, which would have been entitled to priority treatment under section 503. Because the Bankruptcy Court held that Mrs. Martin's common-law indemnity claim was a pre-petition claim, it did not address this issue. Is Mrs. Martin's claim an actual, necessary expense and cost?

## STATEMENT OF THE CASE AND FACTS

**I.    ANC RENTAL CORPORATION, INC., ALAMO RENT-A-CAR, LLC AND RELATED ENTITIES FILED BANKRUPTCY.**

On November 13, 2001, ANC Rental Corporation, Inc. ("ANC"), Alamo Rent-A-Car, LLC ("Alamo") and other related entities (collectively, "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. (Appellant's Appendix ("AA") p. A3.)  In April 2004, the Bankruptcy Court confirmed the Debtors' plan of reorganization. (Id. at A4.)

The plan authorized the Liquidating Trust of ANC Rental Corporation, Inc. (the "Trust") to object to claims and make distributions to creditors pursuant to the plan. (Id.)  Under the plan, administrative claims are to be paid in full, whereas, general unsecured claims are projected to receive a distribution of 1% to 3%. (Debtor's Plan of Reorganization.)

**II.    MRS. MARTIN RENTED A CAR FROM ALAMO AND WAS INVOLVED IN AN ACCIDENT.**

In July 2001, Marjorie Martin leased a car from Alamo. Affidavit of Lee La Bore (AA. p. A39.)  The rental agreement provided that Mrs. Martin's insurance coverage was primary. (Id. at A40, A75.)  While driving the car leased from Alamo, Mrs. Martin was involved in an accident in Minnesota with another vehicle in which three people were traveling. (Id. at A39.)  Two of the occupants were fatally injured and the third suffered serious injuries. (Id.)  Mrs. Martin also suffered injuries. (Id.)

III.   **AFTER THE BANKRUPTCY CASES WERE FILED, PLAINTIFFS COMMENCED AN ACTION AGAINST DEBTORS AND MRS. MARTIN, AND MRS. MARTIN ASSERTED A COMMON-LAW INDEMNITY CLAIM AGAINST DEBTORS.**

In April 2002 – six months after Debtors commenced their bankruptcy cases – representatives of the other parties to the accident ("Plaintiffs") filed suit in Dakota County, Minnesota against Mrs. Martin.  (Id. at A39, A45.)  Mrs. Martin filed and served an answer denying liability and asserted a number of affirmative defenses.  (Id. at A40, A54.)

In April 2003, the Bankruptcy Court approved a stipulation for relief from the stay between Plaintiffs and Debtors permitting only Plaintiffs to name Debtors as defendants and proceed only to judgment.  (Id. at A40, A57.)  Mrs. Martin was not a party to the stipulation. (Id.)  Plaintiffs then served an amended complaint naming Mrs. Martin, Alamo, and ANC as defendants.  (Id. at A40, A60.)  Mrs. Martin and Debtors separately answered the amended complaint and filed competing cross-claims for indemnity.  (Id. at A40, A74.)

IV.   **DEFENDANTS WERE FOUND JOINTLY AND SEVERALLY LIABLE AND DEBTORS WERE ORDERED TO INDEMNIFY MRS. MARTIN.**

In September 2003, the jury returned a $2.5 million verdict in favor of Plaintiffs and found Debtors and Mrs. Martin jointly and severally liable.  (Id.)  On October 31, 2003, the Minnesota district court held that by failing to meet the requirements of Minn. Stat. § 65B.49 subd. 5(a)(1)(2) (the "Minnesota No-Fault Automobile Insurance Statute"), Debtors became self-insured entities with uncapped liability.  (Id. at A75, "October 31, 2003 Order").   In addition, the court held that Mrs. Martin was indemnified by Debtors to the full extent of any net judgment entered in this matter, as follows:

> By failing to meet the statutory requirements of Minn. Stat. § 65B.49, subd. 5(a)(1)(2), Defendant ANC/Alamo becomes a self-insured entity with uncapped liability.  Under Hertz v. State Farm, 573 N.W. 2d 686 (Minn. 1998), a self-insured rental car company is primary for provision liability coverage for any loss while a customer is operating a rental vehicle.  The self-insured rental car

4

> company is treated as if it had purchased a policy of auto liability insurance for each of its vehicles with itself as a named insured.  See id.  Such a policy, if purchased, would contain an omnibus clause extending coverage to permissive users as additional unnamed insureds.  As such, the liability of the permissive driver of the rented vehicle (here, Defendant Martin) would be fully covered by virtue of the omnibus clause.  See id.  Accordingly, Defendant Martin is indemnified by Defendant ANC/Alamo for the losses that were sustained while she was operating the rental vehicle.

(Id.)  In a subsequent order, the Minnesota district court made clear that the indemnity claim was a common-law claim because it arose under the "principles of indemnification."  (Id. at A77, "February 10, 2004 Order.")  Finally, the Minnesota district court dismissed Debtors' cross-claim for indemnity against Mrs. Martin with prejudice.  (Id. at A75.)

## V.    MRS. MARTIN PAID THE JUDGMENT AND TIMELY FILED THIS ADMINISTRATIVE EXPENSE CLAIM.

In January 2004, Mrs. Martin paid Plaintiffs $2.44 million in full settlement of Plaintiffs' judgment against her and Debtors.  (Id. at A41, A78.)  In March 2004, Mrs. Martin timely filed an administrative claim under 11 U.S.C. § 503(b)(1)(A) for the same amount.  (Id. at A41, A79.)  On March 24, 2006, Mrs. Martin filed a motion for allowance and payment of the administrative claim.  (Id. at A4.)  On April 20, 2006, the Trust in its capacity as the transferee of Debtors' rights and interest filed an objection to Mrs. Martin's motion.  (Id. at A5.)

## VI.    THE BANKRUPTCY COURT DENIED MRS. MARTIN'S MOTION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM.

On April 28, 2006, the Bankruptcy Court entered the Opinion denying Mrs. Martin's motion for allowance and payment of administrative claim.  (Id. at A1.)  The Bankruptcy Court held that "the indemnification obligation was an implied-at-law term of the actual contract between the Debtors and Martin."  (Id. at A9 (emphasis in original).)  Because the rental agreement was executed prior to the filing of the case, the Bankruptcy Court held that Mrs. Martin's indemnity claim arose pre-petition.  (Id. at A9-A10.)  Accordingly, the Bankruptcy

Court denied Mrs. Martin's motion for allowance and payment of the administrative claim. Mrs. Martin timely appealed. (Id.)

## SUMMARY OF ARGUMENT

Mrs. Martin rented a car from Debtors. In the rental agreement, Debtors attempted to thrust upon Mrs. Martin the obligation to provide coverage in the event of an accident. Mrs. Martin was, in fact, involved in an accident in which two people were killed and a third seriously injured.

After Debtors commenced their Chapter 11 cases, Plaintiffs commenced an action against Mrs. Martin. Relief from the automatic stay was obtained to permit Plaintiffs to name Debtors as a co-defendant. Mrs. Martin and Debtor asserted competing indemnity claims against each other.

After trial, the jury returned a $2.5 million verdict finding Mrs. Martin and Debtors jointly and severally liable. The Minnesota district court held that Debtors failed to comply with the Minnesota No-Fault Automobile Insurance Statute by attempting to obligate Mrs. Martin to provide primary coverage under the rental agreement. The Minnesota district court also granted Mrs. Martin common-law indemnity claim, holding that Mrs. Martin was to be indemnified by Debtors for the net amount of the judgment.

After paying the judgment, Mrs. Martin filed a motion to allow and compel payment of her common-law indemnity claim as an administrative expense under 11 U.S.C. § 503. To constitute an administrative claim, the claim must arise after the filing of the petition. The United States Court of Appeals for the Third Circuit has held under New York law that a common-law indemnity claim arises when the judgment is paid or, at the earliest, when a defendant is permitted to institute a third-party suit against one who may be liable. Minnesota

law is identical.  After the filing of the Debtors' petitions, Plaintiffs commenced an action against Mrs. Martin and Debtors, Mrs. Martin asserted a cross-claim for common-law indemnity against Debtors, and Mrs. Martin paid the judgment.    Thus, Mrs. Martin's common-law indemnity claim arose post-petition pursuant to controlling Third Circuit precedent.

Nonetheless, the Bankruptcy Court held that Mrs. Martin's claim arose pre-petition on the grounds that Debtors' indemnity obligation was an implied-at-law term in the rental agreement between Mrs. Martin and Debtors.  To the contrary, the Minnesota district court held that Mrs. Martin's claim arose under the common-law, which precluded the Bankruptcy Court's holding.  Moreover, the Bankruptcy Court's holding runs contrary to Minnesota law and binding precedent.    The Minnesota No-Fault Automobile Insurance Statute struck the provision purporting to provide that Mrs. Martin's coverage was primary.  It did not and cannot replace that provision with one providing that Debtors were obligated to indemnify Mrs. Martin because no such cause of action exists under the statute.  Because there existed no contractual indemnity provision, the Minnesota district court found that Mrs. Martin was to be indemnified under Minnesota common-law.

Further, the Bankruptcy Court's holding contradicts Third Circuit precedent.  Under this precedent, to constitute an indemnity contract, the parties must specifically agree in advance to the indemnification.  Mrs. Martin and Debtors never agreed that Debtors would indemnify Mrs. Martin.  Indeed, the rental agreement provided that Mrs. Martin's coverage was primary. Finally, the Bankruptcy Court's decision effectively overrules the binding Third Circuit precedent as the salient facts are identical – there existed a contract between the parties that did not provide for indemnification and the indemnification obligation was subsequently implied-at-law pursuant to the common-law.  Accordingly, Mrs. Martin respectfully requests that this Court

reverse the Bankruptcy Court's Opinion and enter an order allowing Mrs. Martin's administrative claim in the amount of $2.44 million and ordering Debtors and the Trust to immediately pay the same.

## ARGUMENT

I. **SECTION 503 OF THE BANKRUPTCY CODE SETS FORTH THE REQUIREMENTS OF AN ADMINISTRATIVE EXPENSE CLAIM.**

Administrative claims are entitled to priority in payment.  11 U.S.C. § 507.  In a chapter 11 case such as this one, the plan cannot be confirmed unless it provides for payment in full of all administrative claims.  11 U.S.C. § 1129(a)(9)(A).  In contrast, general unsecured claims – those that arose before the filing of the case – are projected to receive a 1% to 3% distribution. (Debtor's Plan of Reorganization.)

11 U.S.C. § 503 governs the allowance of administrative expense claims.  It provides that:

> (b)      After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under § 502(f) of this title, including –
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate including wages, salaries, or commissions for services rendered after the commencement of the case.

11 U.S.C. § 503(b).[2]

To qualify as an allowed administrative expense under section 503, a claim must (1) arise post-petition and (2) be an actual, necessary cost and expense of preserving the bankruptcy estate.  Penn. Dept. of Env. Res. v. Tri-State Clinical Labs., Inc., 178 F.2d 685, 689 (3d Cir. 1999); Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 955 (1st Cir.

---

[2]    In April 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act was enacted. Section 1501(a) provides that the amendments apply to bankruptcy cases commenced after October 17, 2005.  Debtors' cases were commenced in November 2001.  Thus, the 2005 amendments to section 503(b) do not apply.

1976).  When a claim arises is determined by state law.  <u>Vanston Bondholders Protective Comm.</u> <u>v. Green</u>, 329 U.S. 156, 161 (1946); <u>Avellino & Bienes v. Frenville Co., Inc. (In re Frenville Co.,</u> <u>Inc.)</u>, 744 F.2d 332, 335 (3d Cir. 1984).

**II.    THE MINNESOTA DISTRICT COURT HELD THAT DEBTORS FAILED TO COMPLY WITH THE MINNESOTA NO-FAULT AUTOMOBILE INSURANCE STATUTE AND ORDERED DEBTORS TO INDEMNIFY MRS. MARTIN PURSUANT TO MINNESOTA COMMON-LAW.**

The Minnesota district court was confronted with the following issues: (1) whether Mrs. Martin or Debtors were "primary" as to the damages sustained by the Plaintiffs and (2) whether Mrs. Martin or Debtors were entitled to indemnification in the event that either paid more than its share of any judgment.

Debtors relied on the language of the rental agreement in support of their first position. That agreement provided Mrs. Martin was primary and, therefore, Debtors argued she had an obligation to indemnify them.  In contrast, Mrs. Martin asserted that the rental agreement violated the Minnesota No-Fault Automobile Insurance Statute, which established Debtors were primary.  In the event Mrs. Martin paid the judgment, the common-law claim of indemnity provided Debtors were liable to Mrs. Martin for the amount paid.

In accordance with the Minnesota No-Fault Automobile Insurance Statute and established case law, the Minnesota district court employed the "conceptual policy approach" to determine whether the contract between Debtors as a self-insured entity and Mrs. Martin was enforceable. (AA. p. A75.)  Under this approach, the Minnesota district court hypothesized that Debtors purchased a policy naming themselves as insureds:

> The self-insured rental car company is treated as if it had purchased a policy of auto liability insurance for each of its vehicles with itself as a named insured. [<u>Hertz Corp. v. State Farm</u>, 573 N.W.2d 686 (Minn. 1998)]. Such a policy, if purchased, would contain an omnibus clause extending coverage to permissive users as additional unnamed insureds.  As such, the liability of the permissive

driver of the rented vehicle (here, Defendant Martin) would be fully covered by virtue of the omnibus clause.  See id.

(Id.)[3]  Because the rental agreement conflicted with the "imagined policy," the Minnesota district court struck the offending language in the rental agreement and held that Debtors were primary. (Id.); see also Hertz Corp., 573 N.W.2d at 689-90.

This holding ran contrary to the terms of the rental agreement; therefore, the Minnesota district court held that Mrs. Martin was to be indemnified under the common-law.  (AA. p. A75.) The court made clear in a subsequent order the common-law nature of the claim, noting that it arose from the "principles of indemnification."[4]  (Id. at A77.)

---

[3]    The conceptual policy approach was first mentioned by Justice Simmonett in McClain v. Begley, 465 N.W.2d 680, 682 (Minn. 1991) and formed the basis of the Minnesota Supreme Court decision that undergirds the Minnesota district court's opinion.  See Hertz Corp. v. State Farm Mutual Ins. Co., 573 N.W.2d 686 (Minn. 1998).  The Hertz court was confronted with a declaratory action between two competing insurers to determine which coverage was primary.  Id. at 688.  This decision makes apparent that the conceptual policy approach is a product of the Minnesota No-Fault Automobile Insurance Statute, and not common-law indemnity as held by the Bankruptcy Court:

> Further, in his concurring opinion in McClain, Justice Simonett concluded that, in considering the application of the No-Fault Act to self-insureds, we should "treat the self-insurer as if it had purchased a policy of auto liability insurance for each of its vehicles with itself as the named insured.  Such a policy, if purchased, would contain an omnibus clause extending coverage to permissive drivers as additional unnamed insureds."  Id. at 684.  Applying this conceptual approach here, one could identify Powers as a permissive driver of the rented vehicle, whose liability would be fully covered by virtue of the omnibus clause.

Id. at 689.  The procedural posture – a declaratory action where neither insurer had asserted a common-law claim for indemnity or paid any amounts on account of the underlying claim – cements the fact that the conceptual policy approach is restricted to the Minnesota No-Fault Automobile Insurance Statute.  Id. at 688.

[4]    Limited provisions of the Minnesota No-Fault Automobile Insurance Statute provide a statutory right of indemnification.  For instance, section 65B.53 grants a right of indemnity to an insurer who pays no-fault benefits to a claimant injured through the negligent operation of a commercial vehicle such as a public bus.  See Metropolitan Property and Casualty

III.    **UNDER THIRD CIRCUIT PRECEDENT, MRS. MARTIN'S COMMON-LAW CLAIM FOR INDEMNITY AROSE POST-PETITION WHEN THE JUDGMENT WAS PAID.**

A.    **In The Third Circuit, A Common-law Indemnity Claim Does Not Arise At The Time Of The Underlying Act, Rather, When The Judgment Is Paid.**

In Frenville Co., Inc., the Third Circuit addressed whether an indemnity claim under New York law arose before or after the filing of the petition. 744 F.2d 332, 337 (3d Cir. 1985). In that case, the soon-to-be debtor entered into an agreement with an accountant to prepare certified financial statements. Id. at 333. After the filing of the petition, the secured creditors brought claims against the accountant on the basis that it negligently, recklessly, and fraudulently prepared the debtor's financial statements. Id. The accountant sought to assert an indemnity claim against the debtor as a result of the suit by the secured creditors. Id. at 334. The debtor argued that the claim was a pre-petition claim and was barred by the automatic stay, whereas, the accountant argued that the claim was a post-petition claim, which is not stayed. Id. at 336.

The court stated that the Bankruptcy Code defines "claim" broadly in section 101(5), but a claim does not arise until there exists a "right to payment."[5] Id. The court recognized that when "parties agree in advance that one party will indemnify the other in the event of a certain

Insurance Company v. Metropolitan Transit Comm'n, 538 N.W. 2d 692, 695 (Minn. 1995). No provision of the Minnesota No-Fault Automobile Insurance Statute provides a right of indemnity to Ms. Martin. Accordingly, the Minnesota district court could not have held that Debtors' liability to Ms. Martin arose under statute.

[5]    The Bankruptcy Code defines a "claim" as:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C.§ 101(5).

occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement." 744 F.2d at 336. The court held that "[t]he debtor and accountant, however, had no indemnity agreement." Id. at 337. Accordingly, the common-law indemnity claim did not arise upon the parties entering into the agreement. Id.

Because the question of when a right to payment arises is determined by state law, the court turned to New York law. Id.; see also Vanston Bondholders Protective Comm., 329 U.S. at 161. Under New York law, a claim for indemnification does not arise at the time of the commission of the underlying act, but rather at the time of the payment of the judgment flowing from the act. In re Frenville, 744 F.2d at 337; see also Blum v. Good Humor Corp., 57 A.D.2d 911 (N.Y. App. Div. 1977). Although such a claim does not mature until payment is made, the New York Civil Practice Code permits a defendant to institute a third-party complaint against a party who may be liable to him for all or part of the plaintiff's claim after service of his answer. In re Frenville Co., Inc., 744 F.2d at 337; see also N.Y. Civ. Prac. Law § 1007 (McKinney 1976).

As a result, the Third Circuit held that because the suit, which gave rise to the common-law claim for indemnity, was not commenced and any judgment would not be paid until after the debtor's bankruptcy petition was filed, the common-law indemnity claim was a post-petition claim.[6] In re Frenville Co., Inc., 744 F.2d at 337.

### B.    Pursuant To Minnesota Law, Mrs. Martin's Common-law Indemnity Claim Arose Post-Petition Because She Did Not Have A Right To Payment Until After The Filing Of The Cases.

As described above, the Minnesota district court held that Mrs. Martin's right to payment is based on the common-law right of indemnification. (AA. p. A74-A77.) She had and has no other right to payment such as a contractual or statutory right. The contract between the parties

---

[6]    "Frenville remains the law of this Circuit." In re W.R. Grace & Co., 281 B.R. 852, 860 (Bankr. D. Del. 2002) (citing Jones v. Chunetron Corp., 212 F.3d 199, 206 (3d Cir. 2000)).

provided that Mrs. Martin's coverage was primary. The Minnesota No-Fault Automobile Insurance Statute provides and established only that Debtors are primary. No statute, including the Minnesota No-Fault Automobile Insurance Statute, establishes Debtors are liable to Mrs. Martin if she paid the judgment. Thus, as held by the Minnesota district court, Debtors' indemnity obligation to Mrs. Martin arose under Minnesota common-law.

Minnesota and New York law are identical as to when a common-law claim for indemnity arises. Under Minnesota law, a claim of indemnity does not arise at the time of the commission of the underlying act; rather, the claim arises at the time of the payment of the judgment flowing from the act. Dixon v. Northwestern Nat'l Bank of Minneapolis, 275 F. Supp. 582, 584 (D. Minn. 1967); City of Wilmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872, 874-75 (Minn. 1994); Trapp v. R-Vee Corp., 359 N.W.2d 323, 327 (Minn. Ct. App. 1984). Although such a claim does not mature until payment is made, the Minnesota Rules of Civil Procedure permit a defendant to institute a claim against another party who may be liable for all or part of the plaintiff's claim after service of the answer. Minn. R. Civ. P. 13 and 14.

In accordance with In re Frenville and Minnesota law, Mrs. Martin's common-law claim for indemnity against Debtors did not arise until, at the earliest, the date the underlying suit was brought. That suit was commenced in April 2002, which was approximately six months after Debtors filed bankruptcy. Mrs. Martin did not pay the judgment until January 2004, which is over three years after Debtors filed for bankruptcy. Accordingly, Mrs. Martin's claim arose after the filing of Debtors' petitions.

Debtors' post-petition conduct demonstrates they recognized the common-law indemnity claim was a post-petition claim at the time the underlying lawsuit was commenced. The automatic stay bars claims that could have been commenced prior to the filing of a bankruptcy,

but does not apply to claims that arise after the filing of the case.  11 U.S.C. § 362(a)(1); <u>In re Frenville Co., Inc.</u>, 744 F.2d at 335.  Plaintiffs sought and Debtors agreed to relief from the stay solely for the purpose of permitting Plaintiffs to amend their Complaint to name Debtors as a party to the action and proceed to final judgment.  (AA. p. A57.)  Mrs. Martin was not a party to the Stipulation because her claim arose post-petition and was not barred by the stay.  If Debtors, as the Trust now contends, thought the claim was a pre-petition claim, they would have sought to enforce the automatic stay at the time Mrs. Martin asserted her common-law indemnity claim (almost four years ago) or included it in the stipulation providing for relief from stay.  The fact that the Debtors did not so act further shows Mrs. Martin's claim was a post-petition claim.

## IV.  THE BANKRUPTCY COURT INCORRECTLY HELD THAT MRS. MARTIN'S INDEMNIFICATION OBLIGATION AROSE FROM THE CONTRACT WITH DEBTORS.

The Bankruptcy Court recognized that <u>In re Frenville</u> controls, however, it signaled that the decision was "egregiously in error."  (AA. p. A5.)  The Bankruptcy Court attempted to sidestep this binding precedent by holding that Debtors' indemnification obligation was an implied-at-law term of the actual contract between Debtors and Mrs. Martin.  (<u>Id.</u> at A9.)  On that basis, the Court held that the indemnification claim arose at the time the rental agreement was executed – before the filing of the bankruptcy cases.  (<u>Id.</u> at A9-A10.)  The Bankruptcy Court's decision is erroneous.  The Minnesota district court held that the claim arose under common-law, which must be given preclusive effect.  Further, the Bankruptcy Court misapplied Minnesota law and effectively overruled controlling Third Circuit precedent.

### A.    The Minnesota District Court Held That Debtors' Liability To Ms. Martin Arose Under The Common-law, Which Precluded The Bankruptcy Court From Holding To The Contrary.

Federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."

Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 102 S. Ct. 1883, 1889 (1982) (quotation omitted).  This principle is embodied in 28 U.S.C. § 1738.  Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40F 3d 1416, 1429 (3d 1994).  Section 1738 provides that state court judgments "shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such State." 28 U.S.C. § 1738.

"Congress has directed federal courts to look principally to state *law* in deciding what effect to give state-court judgments."  Lance v. Dennis, 546 U.S. 459, 126 S.Ct. 1198, 1202 (2006) (emphasis in original).  Under Minnesota law, issue preclusion bars the same party or its privity from disputing a right, question, or fact previously determined.  Kaiser v. Northern State Power Co., 353 N.W. 2d 899, 902 (Minn. 1984).  Issue preclusion applies where:

> (1) the issue was identical to the one in the prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

Johnson v. Consolidated Freightways, Inc., 420 N.W. 2d 608, 613 (Minn. 1988).

Here, all of the elements exist.  As recognized by the Bankruptcy Court, the nature of Mrs. Martin's claim was decided by the Minnesota district court.  (AA. p. A8.) ("[T]o settle this dispute the Court must look to the conclusions of the Minnesota Court to determine on what basis and when the indemnification claim arose.").   The Bankruptcy Court, however, misinterpreted that court's orders, ostensibly overlooking the second order clarifying the first.  In the second order, the Minnesota district court ordered Debtors to indemnify Ms. Martin pursuant to the "principles of indemnification."  (Id. at A77.)  When Minnesota courts utilize the phrase "principles of indemnification," they invoke the common-law.  Zurich American Ins. Co. v. Bjelland, 710 N.W.2d 64, 67 (Minn. 2006) (holding right to indemnity in workers' compensation

statute was more limited than common-law "principle of indemnity"); <u>Haney v. International Harvester Co.</u>, 201 N.W.2d 140, 144 (Minn. 1972) (utilizing term "principles of indemnity and contribution" to describe numerous prior cases applying common-law); <u>Allstate Insurance Co. v. Eagle-Picher Industries, Inc.</u>, 410 N.W.2d 324, 327-28 (Minn. 1987) (using term "principles of indemnity" to contrast common-law indemnity with workers' compensation law); <u>American Mut. Liability Ins. Co. v. Reed Cleaners</u>, 122 N.W.2d 178, 182 (Minn. 1963) (employing common-law to describe "principle of indemnity"); <u>Olson v. Blesener</u>, 633 N.W.2d 544, 546-47 (Minn. Ct. App. 2001) (employing term "principle of indemnity" in reference to common-law description of indemnity). Moreover, as demonstrated above, this holding is in accordance with the Minnesota No-Fault Automobile Insurance Statute and established case law. Thus, the Minnesota district court held that Ms. Martin's indemnity claim rose under Minnesota common-law.

This decision was a final order. It was rendered after the trial and post-trial briefing. Debtors were given a fair opportunity to be heard. They participated at the trial and submitted post-trial briefs. Debtors also had an opportunity to appeal the Minnesota district court's decision.

Finally, there exists privity. A trust charged with administering the assets and liabilities of a debtor is in privity with that debtor. <u>In re American Metrocomm Corp.</u>, 303 B.R. 32, 34 (Bankr. D. Del. 2000). Debtors, as debtors-in-possession, litigated the underlying dispute before the Minnesota district court. The Trust is charged with administering Debtors' assets and claims under the confirmed plan. As such, the Trust is a party in privity with the Debtors.

In sum, the Minnesota district court already determined that Debtor's liability arose under Minnesota common-law. Pursuant to the issue preclusion doctrine, the Bankruptcy Court was precluded from finding that the claim arose under the rental agreement.

**B.**  **Minnesota's No-Fault Automobile Insurance Statute Does Not Imply An Indemnification Obligation Into The Rental Contract Between Debtors And Mrs. Martin.**

The Bankruptcy Court's decision is premised on the assertion that the Minnesota No-Fault Automobile Insurance Statute "deems" a policy to exist between Debtors and Mrs. Martin indemnifying Mrs. Martin and that policy becomes an "implied at law term of the <u>actual</u> contract between the Debtors and Martin." (AA. p. A9.) Simply put, the statute does not so provide, and no Minnesota court has so held.

As described above, Minnesota courts employ the conceptual policy approach to determine whether the contract between a self-insured (such as Debtors) and another party is enforceable under the Minnesota No-Fault Automobile Insurance Statute. <u>Hertz Corp.</u>, 573 N.W.2d at 689; <u>McClain v. Begley</u>, 465 N.W.2d 680, 682 (Minn. 1991). Under this approach, the courts treat the self-insurer as if it had purchased a policy of auto liability insurance naming itself as the insured and containing an omnibus liability clause extending coverage to unnamed permissive drivers. <u>Hertz Corp.</u>, 573 N.W.2d at 689; <u>McClain</u>, 465 N.W.2d at 682.

"[A]n insurer's liability is governed by the contract between the parties *only as long a coverage required by law is not omitted and policy provisions do not contravene applicable statutes.*" <u>Hertz Corp.</u>, 573 N.W. 2d at 690 (emphasis in original) (quoting <u>Streich v. American Family Mut. Ins. Co.</u>, 358 N.W.2d 396, 399 (Minn. 1984)); <u>see</u> <u>also</u> <u>American Family Mutual Ins. Co. v. Ryan</u>, 330 N.W.2d 113, 115 (Minn. 1983) ("The well-settled general rule in the construction of insurance contracts, however, provides that parties are free to contract as a desire,

and so long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes, the extent of the insurer's liability is governed by the contract entered into."). If the contract conflicts with the Minnesota No-Fault Automobile Insurance Statute, it does not replace or infer a term into that contract; rather, the offending contractual provisions are unenforceable. Hertz Corp., 573 N.W.2d ("We conclude that the provision of the rental agreement purporting to limit Hertz' liability obligation to situations in which there is no other coverage, contravenes the No-Fault Act and is, therefore, unenforceable."); Roering v. Grinnell Mut. Reinsurance Co., 444 N.W.2d 829, 833 (Minn. 1989) ("[C]ontract provisions which conflict with statutory law will not be enforced.").

Here, the provision of the rental agreement purporting to establish that Mrs. Martin's coverage was primary conflicted with the Minnesota No-Fault Automobile Insurance Statute, specifically the conceptual policy approach. Consequently, the provision was struck. The Minnesota No-Fault Automobile Insurance Statute did not substitute in its place a provision indemnifying Mrs. Martin. Indeed, no provision of that statute provides Mrs. Martin a right to indemnity. Rather, the statute only obligated Debtors to provide "primary" coverage. Debtors failed to provide primary coverage, and Mrs. Martin was forced to pay the judgment. This gave rise to a common-law claim of indemnity, which the Minnesota district court granted.

Thus, contrary to the Bankruptcy Court's holding, the Minnesota No-Fault Automobile Insurance Statute does not imply a term into the parties' contract that contradicts its express terms and did not previously exist.

## C.    Mrs. Martin And Debtors Did Not Specifically Agree In Advance To Indemnification As Required By The Third Circuit.

The Bankruptcy Court's holding that the indemnity obligation was a term of the actual contract between Debtors and Mrs. Martin contradicts the Third Circuit's definition of an

indemnity agreement and the terms of the rental agreement to which Debtors and Mrs. Martin agreed.

In <u>Frenville</u>, the Court contrasted when an indemnity claim arises under the common-law and under contract. The Court noted that to constitute an indemnity contract, the "parties must agree in advance that one party will indemnify the other."[7]  <u>In re Frenville</u>, 744 F.2d at 337. In other words, the claim will only relate back in time to the agreement when the parties "specifically agree" as to indemnification in that agreement. <u>Id.</u>

Mrs. Martin and Debtors never specifically agreed that Debtors would indemnify her. Indeed, the only agreement between the parties – the rental agreement – provided that Mrs. Martin's coverage was primary.   Debtors maintained that this language controlled throughout the underlying case and, therefore, they asserted no obligation, including a contractual obligation, to indemnify Mrs. Martin existed.  Not until the Minnesota district court entered the October 31, 2003 Order, did Debtors cease to maintain that Mrs. Martin had a contractual obligation to indemnify them.

Moreover, the Minnesota district court did not insert an obligation to indemnify Mrs. Martin into the rental agreement under the conceptual policy approach. (AA. p. A75.) The court merely hypothesized that Debtors had purchased a policy naming themselves as insureds. (<u>Id.</u>) That imagined policy was not a part of the rental agreement.  It is a separate and distinct

---

[7]   This requirement is consistent with the definition of contingent claims: "obligations that will become due upon the happening of a future event that was 'within the actual or presumed contemplation of the parties at the time the original relationship was created.'"  <u>In re Chateaugay Corp.</u>, 945 F.2d 1205, 1208 (2d. Cir. 1991) (quoting <u>In re All Media Properties, Inc.</u>, 5 B.R. 126, 133 (Bankr. S.D. Tex. 1980); <u>see also</u> <u>In re Frenville</u>, 744 F.2d at 337, n.7.  Although unmatured, contingent claims are claims for purposes of section 101(5).

contract (albeit existing only hypothetically) between Debtors and their conceptualized insurer under which Mrs. Martin was only an "unnamed" permissive user.  (Id.)

### D.    The Bankruptcy Court's Decision Effectively Overrules Binding Precedent.

The Bankruptcy Court recognized that it "cannot overrule Frenville and is bound by its holding."  (Id. at A5.)  However, by holding that an indemnification obligation that is implied-at-law arises at the time the parties enter into any agreement, the Bankruptcy Court did just that.

"Indemnity is generally said to rest upon contract, either express or implied." Hendrickson v. Minnesota Power & Light Company, 104 N.W.2d 843, 847 (Minn. 1960) overruled in part on other grounds Tolbert v. Gerber Industries, Inc., 255 N.W.2d 362 (Minn. 1977); see also 42 C.J.S. Indemnity § 3 (June 2004) ("Generally, in the absence of an express or implied contract a right to indemnity cannot be claimed.").  Common-law indemnity exists only in the absence of an express agreement.  Art Goebel, Inc. v. North Suburban Agencies, Inc., 567 N.W.2d 511, 516 (Minn. 1997).  Thus, by its very nature, common-law indemnity is always implied-at-law.  Schuler v. Meschke, 453 N.W.2d 156, 164 (Minn. Ct. App. 1989).

In Frenville, the parties entered into a pre-petition agreement whereby the accountant would provide services to the debtor.  744 F.2d at 333.  The court, however, noted that there was "no indemnity agreement" between the parties.  Id. at 337.  Thus, the court held that the common-law indemnity claim (which had to be implied-at-law) arose at the time the judgment was paid or, at the earliest, when the underlying suit was commenced.  Id. at 338.

The Bankruptcy Court's holding effectively overrules this decision.  The Bankruptcy Court's Opinion stands for the proposition that, when liability rests on a common-law claim and there exists any agreement between the parties, even one that bars such indemnity, the common-law indemnity claim is implied into the contract.  This holding runs afoul of Frenville,

in which the court did not imply the common-law right of indemnification into the agreement, even though that agreement was silent on the subject of indemnity.

## V.    MRS. MARTIN'S INDEMNITY CLAIM IS AN ACTUAL, NECESSARY COST AND EXPENSE OF PRESERVING DEBTORS' ESTATES.

Having incorrectly held that Mrs. Martin's claim arose pre-petition, the Bankruptcy Court did not address whether the claim is an actual, necessary cost and expense of preserving the bankruptcy estate under 11 U.S.C. § 503(b)(1)(A).  Mrs. Martin's claim is such an expense.

The Supreme Court has held that an actual, necessary cost and expense of preserving the bankruptcy estate includes expenses "ordinarily incident to operation of a business, and are not limited to costs without which rehabilitation would be impossible."  Reading Co. v. Brown, 391 U.S. 471, 483 (1968).  Accordingly, the Supreme Court held that a tort claim was an actual, necessary cost and expense under section 503.  Id. at 485.

The Supreme Court's holding was based upon two principles.  First, "fairness to all persons having claims against the insolvent" mandated that post-petition tort claims, which arise post-petition by operation of the law, be accorded priority status.  Reading Co., 391 U.S. at 477. Second, post-petition obligations of a bankruptcy estate should be imposed on the party who should bear the cost of purchasing insurance, and the injured party should enjoy the same priority as the expense for insurance premiums.  Id. at 483.

Mrs. Martin's indemnity claim is not a tort claim; it is an "equitable claim."  In re Estate of Morse, 364 N.W.2d 842, 843 (Minn. Ct. App. 1985).  Nonetheless, the same principles upon which the Supreme Court based its holding apply.  The Supreme Court based its holding in Reading Co. on the fact that it was "equitable" and here Mrs. Martin's common-law indemnity claim is, in fact, an equitable claim.  Moreover, Mrs. Martin's equitable claim arose because she satisfied Plaintiffs' tort claim against Debtors.

The post-petition equitable obligation should also be imposed on Debtors because they are the parties who had the opportunity to purchase insurance post-petition. The payment of this expense would have been entitled to priority treatment under section 503 and that policy would provide coverage for Mrs. Martin's claim. The fact that Debtors chose not to purchase such insurance should not relegate Mrs. Martin's indemnity claim to a general unsecured claim. Instead, she should enjoy the same priority status as the expense for insurance premiums. This principle is especially pertinent here because Mrs. Martin's equitable claim arose from Debtor's failure to meet the statutory requirements of Minnesota's No-Fault Automobile Insurance Statute.

If Mrs. Martin's claim is not given priority treatment, Debtors will have successfully imposed upon Mrs. Martin their responsibility in contravention of both the Minnesota No-Fault Automobile Insurance Statute and the Minnesota district court's interpretation of Minnesota law. Thus, Mrs. Martin's claim is an actual, necessary expense and cost of preserving the estate. As such, it is an allowed administrative expense.

## **CONCLUSION**

Mrs. Martin respectfully requests that this Court reverse the Bankruptcy Court's Opinion, allow Mrs. Martin's administrative claim in the amount of $2.44 million under 11 U.S.C. § 503, and order the Debtors and Trust to immediately pay that claim.

Dated: January 25, 2007

James S. Yoder (#2643)
White and Williams LLP
824 North Market Street
Suite 902
PO Box 709
Wilmington, DE 19899-0709

and

Ryan T. Murphy (MN #311972)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402
(612) 492-7000
(612) 492-7077


and

Lee L. La Bore (MN #59274)
Steven L. Viltoft (MN #190615)
P.O. Box 70
Hopkins, MN  55343-0070
(952) 933-3371

ATTORNEYS FOR MARJORIE JOAN MARTIN

4139621_1.DOC

23

U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
Appeal from the U.S. Bankruptcy Court
For the District of Delaware

|  |  |  |
|---|---|---|
| Marjorie Joan Martin, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| | : | Appeal Case No. 1:06-cv-389 |
| v. | : | |
| | : | |
| ANC Rental Corporation, | : | |
| | : | |
| Appellee. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, James S. Yoder, Esquire, do hereby certify that a true and correct copy of the

**Appellant Marjorie Joan Martin's Opening Brief and Appendix** to be made on January 25,

2007, to the following party via first class mail:

William J. Burnett, Esq.
Flaster/Greenberg, P.C.
913 Market Street, Suite 1001
Wilmington, DE  19801

_____
James S. Yoder (#2643)

U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
Appeal from the U.S. Bankruptcy Court
For the District of Delaware


Marjorie Joan Martin,

               Appellant,                     Appeal Case No. 1:06-cv-389

    v.

ANC Rental Corporation,

               Appellee.

---

**APPELLANT MARJORIE JOAN MARTIN'S SEPARATE APPENDIX TO OPENING BRIEF**

---

Ryan T. Murphy, Esq.[1] (MN #311972)
Fredrikson & Byron, P.A.,
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN  55402-1425

ATTORNEYS FOR MARJORIE JOAN
MARTIN


James S. Yoder (#2643)
White and Williams LLP
824 North Market Street
Suite 902
PO Box 709
Wilmington, DE 19899-0709

ATTORNEYS FOR MARJORIE
JOAN MARTIN

Lee L. La Bore (MN #59274)
Steven L. Viltoft (MN #190615)
P.O. Box 70
Hopkins, MN  55343-0070

ATTORNEYS FOR
MAJORIE JOAN MARTIN

---

[1] Admitted Pro Hac Vice on June 20, 2006.

## APPENDIX

1. Order and Memorandum Opinion dated April 28, 2006 ...................................... A 1

2. Transcript of Hearing dated April 24, 2006 ......................................... A 11

3. Notice of Appeal dated May 5, 2006 ................................................. A 37

4. Affidavit of Lee La Bore ........................................................... A 39

5. Summons and Complaint ............................................................. A 43

6. Answer ............................................................................. A 54

7. Order Approving Stipulation Granting From Relief Stay .............................. A 57

8. Amended Summons and Amended Complaint ............................................. A 58

9. Minnesota District Court Order dated October 31, 2003 ............................. A 74

10. Minnesota District Court Order dated February 10, 2004 ........................... A 76

11. Settlement Check .................................................................. A 78

12. Administrative Claim .............................................................. A 79

13. Letter dated December 16, 2005 from Mrs. Martin's Counsel to Trust's counsel ............................................................. A 111

4139659_1.DOC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                              )    Chapter 11
                                    )
ANC RENTAL CORPORATION, INC.,       )    Case No. 01-11200 (MFW)
et al.,                             )
                                    )    (Jointly Administered)
                Debtors.            )
                                    )
_____     )

## O R D E R

AND NOW, this **28th** day of **APRIL, 2006**, upon consideration of

the Motion of Marjorie Joan Martin for Allowance and Immediate

Payment of Administrative Claim and the response of the Trust

thereto, and for the reasons set forth in the accompanying

Opinion, it is hereby

**ORDERED** that the Motion is **DENIED**.


                              BY THE COURT:


                              _Mary F. Walrath_
                              Mary F. Walrath
                              United States Bankruptcy Judge



cc: James S. Yoder, Esquire[1]

_____

[1] Counsel is to serve a copy of this Opinion and Order on
all interested parties and file a Certificate of Service with the
Court.

## <u>SERVICE LIST</u>

William J. Burnett, Esquire
Flaster/Greenberg, P.C.
913 Market Street, Suite 1001
Wilmington, DE 19801
Counsel for the Liquidating Trust

James S. Yoder, Esquire
White & Williams LP
824 N. Market Street, Suite 902
P.O. Box 709
Wilmington, DE 19899-0709
Counsel for Martin

Clinton E. Cutler, Esquire
Fredrikson & Byron, P.A.
4000 Pillsbury Center
200 South Sixth Street
Minneapolis, MN 55402
Counsel for Martin

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                          )   Chapter 11
                                )
ANC RENTAL CORPORATION, INC.,   )   Case No. 01-11200 (MFW)
et al.,                         )
                                )   (Jointly Administered)
              Debtors.          )
_____  )

### MEMORANDUM OPINION[1]

This matter is before the Court on the Motion of Marjorie Joan Martin ("Martin") for Allowance and Immediate Payment of Administrative Claim (the "Motion"). The Liquidating Trust of ANC Rental Corporation, Inc. (the "Trust") opposes the Motion. For the reasons set forth below, the Court will deny the Motion.

I.    BACKGROUND

On November 13, 2001, ANC Rental Corporation, Inc. ("ANC") and Alamo Rent-A-Car, LLC ("Alamo") (collectively "the Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code together with several other subsidiaries. Prior to the filing, on July 1, 2001, Martin rented a car from Alamo. On July 14, 2001, while driving the rental car, Martin was involved in an accident in Minnesota with another vehicle. The occupants of the other vehicle were seriously injured, two fatally.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

Post-petition, on or about April 10, 2002, representatives of the other parties to the accident (the "Plaintiffs") filed suit in Minnesota against Martin. In April 2003, the Debtors stipulated to relief from the stay to permit the Plaintiffs to name the Debtors as defendants in the Minnesota suit. As a result, the Plaintiffs filed an amended complaint against Martin and the Debtors. Martin and the Debtors answered the amended complaint and filed cross-claims against each other for indemnity.

On September 24, 2003, after trial, the jury returned a $2.5 million verdict in favor of the Plaintiffs, finding Martin and the Debtors jointly and severally liable. On October 31, 2003, the Minnesota Court held that the Debtors were liable to Martin for indemnity and dismissed the Debtors' cross-claim against Martin.

In January 2004, Martin paid the Plaintiffs $2.44 million in full settlement of the judgment. On March 12, 2004, Martin filed an administrative claim in the Debtors' bankruptcy cases in that same amount. On March 24, 2006, Martin filed the instant Motion for allowance and payment of that administrative claim.

In the interim, this Court confirmed the Debtors' Plan of Reorganization on April 15, 2004. The Trust is authorized to object to claims and to make distributions to creditors pursuant to the Plan. The Trust filed an objection to Martin's Motion on

2

**A4**

April 20, 2006, and a hearing was held on the Motion on April 24, 2006.  After hearing oral argument the Court took the matter under advisement.


II.  JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 & § 157(b)(1), (b)(2)(A), (B), & (O).


III. DISCUSSION

Martin asserts that she has a post-petition administrative claim for indemnity against the Debtors under In re M. Frenville Co., 744 F.2d 334 (3d Cir. 1984), which held that a common law indemnity claim arose post-petition when the movant was sued, not pre-petition when the debtor's allegedly fraudulent acts occurred.

The Trust asserts that Frenville is not applicable and should, at any rate, be overruled.  The Court, of course, cannot overrule Frenville and is bound by its holding.  Bankruptcy courts "are bound by the law of their own circuit. . . .  They are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be."  See Hasbrouck v. Texaco, Inc., 663 F.2d 930, 933 (9th  Cir. 1981) (citations omitted).


3


**A5**

Frenville instructs the Court to ascertain when the claim arose under state law, that is, "at what point [the claimant] has a 'right to payment' for its claim for indemnification." 744 F.2d at 335. In Frenville, New York common law provided that a claim for indemnity did not arise when the fraudulent acts occurred but only when suit was filed. In performing its analysis, however, the Third Circuit acknowledged that

> The present case is different from one involving an indemnity or surety contract. When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement.

Id. at 336. See also In re Pinnacle Brands, Inc., 259 B.R. 46, 50-51 (Bankr. D. Del. 2001) (holding that indemnification claim based on contract executed pre-petition was a pre-petition claim); In re Mid-American Waste Systems, Inc., 228 B.R. 816, 821-22 (Bankr. D. Del. 1999) (holding that indemnification claim arising under debtor's certificate of incorporation for pre-petition actions of debtor's officers was pre-petition claim); In re Pennsylvania Truck Lines, Inc., 189 B.R. 331, 334 (Bankr. E.D. Pa. 1995) (concluding that claim for indemnity under pre-petition contract was a pre-petition claim under Frenville).

The Trust argues that this case is distinguishable from the facts of Frenville and fits within the exception noted by Frenville: that contract claims for indemnity arise when the contract is signed, not when the underlying cause of action

4

**A6**

accrues.    744 F.2d at 336.   The Trust asserts that in this case Martin's claim for indemnity arises under statute, not under common law, and asserts that the statute supports its argument. The Trust cites to the portion of the Minnesota statute which provides that "[w]henever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."   Minn. Stat. § 170.54 [renumbered § 169.09, subd. 5a].   The Trust argues, therefore, that Martin's indemnification rights arose when she signed the car rental agreement, which is the applicable contract.   Because Martin signed the contract pre-petition, the Trust contends that Martin has only a pre-petition claim.

Martin responds that her indemnity claim does not arise under the section cited by the Trust but instead arises under Minn. Stat. § 65B.49, subd. 5a(i)(2).   The latter section caps the vicarious liability that a car rental agency otherwise has under Minnesota law so long as it has "in effect, at the time of the accident, a policy of insurance or self-insurance" that meets certain statutory requirements.   Id.   According to Martin, it was not until the Minnesota Court determined that the Debtors had not complied with the statutory requirements that Martin's claim for indemnity arose.

5

A7

To settle this dispute the Court must look to the conclusions of the Minnesota Court to determine on what basis and when the indemnification claim arose.  It is true, as the Trust contends, that the Minnesota Court concluded that the Debtors were vicariously liable for the negligence of Martin under Minn. Stat. § 170.54 [renumbered § 169.09, subd. 5a].  (See Order dated September 24, 2003, at Findings of Fact ¶ 2.)  However, that was the basis for its conclusion that the Debtors were liable to the Plaintiffs, not to Martin.  (Id. at Conclusions of Law ¶ 1.)

The issue of who (between the Debtors and Martin) would be primarily liable was addressed by the Minnesota Court in its October 31, 2003, ruling.  In that Order, the Minnesota Court found that the Debtors had not complied with the self-insurance requirements of the Minnesota Statute.  (See October 31, 2003, Order at Findings of Fact ¶ 5.)  As a result, the Court concluded that the Debtors were primarily liable (and owed an indemnification obligation to Martin).  That decision was founded on Minnesota case law.  See, e.g., Hertz Corp. v. State Farm Mut. Ins. Co., 573 N.W.2d 686 (Minn. 1998).  The Court in Hertz held that: "A self-insured car rental agency does not meet its obligations as an automobile owner under the No-Fault Act by thrusting upon the renter its responsibility to provide liability coverage – that is, by providing liability coverage only in the event that the renter is without liability coverage."  Id. at

6

**A8**

688-89.  Thus, the <u>Hertz</u> Court held that an agreement restricting
the car rental agency's liability was unenforceable as against
public policy and that, as the owner of the vehicle, the car
rental agency was primarily liable for the damages caused by the
renter's accident.  <u>Id.</u>

Because the Debtors had not complied with the Minnesota
statute, the Minnesota Court similarly held that the Debtors'
insurance coverage was primary - that is, the Debtors were
primarily liable, before Martin, for payment of the Plaintiffs'
injuries.  (<u>See</u> October 31, 2003, Order at Conclusions of Law ¶
5.)  Accordingly, the Minnesota Court concluded that the Debtors
would be treated as a self-insured entity with no cap and with a
policy providing for indemnification for the driver, Martin.  <u>Id.</u>

Based on the conclusions of the Minnesota Court, the Court
must conclude that Martin's claim is a pre-petition claim.  The
premise of the Minnesota Court's decision is that the Debtors
must be deemed to have a contract of indemnity with Martin that
has no cap.  <u>Id.</u>  In other words, the indemnification obligation
was an implied-at-law term of the <u>actual</u> contract between the
Debtors and Martin.  Therefore, the Debtors' obligation to
indemnify Martin arose when the contract arose, i.e., when the
car rental agreement was executed.  Because the car rental
agreement was executed pre-petition, the indemnification

7

**A9**

obligation similarly arose pre-petition.  <u>Frenville</u>, 744 F.2d at

336.


IV.   <u>CONCLUSION</u>

    For the foregoing reasons, the Court will deny the Motion of

Marjorie Joan Martin for Allowance and Immediate Payment of

Administrative Claim.

    An appropriate order is attached.


                BY THE COURT:


Dated: April 28, 2006

                Mary F. Walrath
                United States Bankruptcy Judge

8

**A10**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          .    Case No. 01-11200(MFW)
                                .
                                .
ANC RENTAL CORPORATION,         .
et al.,                         .
                                .    824 Market Street
                                .    Wilmington, Delaware 19801
                                .
          Debtor.               .    April 24, 2006
. . . . . . . . . . . . . ..          2:00 p.m.


TRANSCRIPT OF HEARING
BEFORE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES:

For the Debtor:          Flaster Greenberg, P.C.
                         By: WILLIAM J. BURNETT, ESQ.
                             COLLEEN GARRITY, ESQ.
                         913 Market Street, Suite 1001
                         Wilmington, DE  19801

For Vanguard Car         Stich, Angell, Kreidler & Dodge, P.A.
Rental USA:              By:  Robert T. Stich, Esq.
                         250 Second Avenue South, Suite 120
                         Minneapolis, MN   55401

For the Movant:          White and Williams, LLP
                         By: JAMES S. YODER, ESQ.
                         824 North Market Street, Suite 902
                         Wilmington, DE  19801


Audio Operator:          Brandon McCarthy


Proceedings recorded by electronic sound recording, transcript
produced by transcription service

---

**J&J COURT TRANSCRIBERS, INC.**
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@optonline.net

(609) 586-2311    Fax No. (609) 587-3599


A11

2

1          THE COURT:  Good afternoon.

2          MR. BURNETT:  Good afternoon, Your Honor.  William

3   Burnett, Flaster Greenberg on behalf of the ANC Liquidating

4   Trust.  I'm here with my colleague, Colleen Garrity, and also

5   on the phone, I believe, is Bob Stitch who is counsel to

6   Vanguard.  He is a member in good standing in the state of

7   Minnesota and I have not filed a pro hoc for him but I would

8   like to be able to do so.

9          THE COURT:  All right.

10          MR. BURNETT:  I don't know if he's going to actually

11   speak but he wanted to participate.

12          THE COURT:  All right.  I will allow him to.

13          MR. BURNETT:  Thank you, Your Honor.  With respect to

14   the agenda for this afternoon, all the matters are continued

15   except for one matter.  It's 1 through 11 listed on the agenda

16   as continued and the only matter going forward is Item No. 12

17   which is the motion of Marjorie Joan Martin for an allowance of

18   a payment of an administrative claim.  I yield the podium to

19   counsel to the movant.

20          THE COURT:  Thank you.

21          MR. YODER:  Good afternoon, Your Honor.  May it

22   please the Court, James Yoder on behalf of movant, Marjorie

23   Joan Martin.  This is Ms. Martin's motion for an allowance of

24   immediate payment of an administrative claim in the amount of

25   $2.44 million.  This claim arises from a -- well, initially

3

1  there was a motor vehicle accident pre-petition involving Ms.

2  Martin as the driver of a rental car, an Alamo ANC rental car.

3  Post-petition, the aggrieved party in the motor vehicle

4  accident sued -- well, the estate for the aggrieved party, sued

5  Ms. Martin and that was in April of '02.  In April of '03, the

6  debtor stipulated with the plaintiff's estate to lift the

7  automatic stay to the extent of applicable insurance coverage.

8  And in the event there was any amount of a claim that exceeded

9  insurance, there would be an unsecured liquidated claim against

10 the estate.

11          Subsequently, thereafter, also in April of '03, the

12 Nibbs (phonetic) estate sued ANC Alamo and both Martin and ANC

13 cross claimed against each other for cross claim common law

14 indemnity.  In August of '03, a jury awarded $2.5 million in

15 Minnesota State Court against Martin, Alamo ANC jointly and

16 severally.  In its findings of fact and conclusion of law dated

17 October 31, '03, the Minnesota District Court found that by

18 failing to meet its statutory requirements, ANC Alamo, under --

19 well, under the no-fault statute, ANC Alamo is deemed to be a

20 self insurer with uncapped liability limits and it also -- the

21 District Court also found that Martin was an insured under the

22 self-insured scheme and that Martin was fully covered for the

23 claims by the plaintiff's estate and that the indemnity clause

24 of the -- or Martin was indemnified by ANC Alamo for the full

25 extent of the losses and ANC Alamo's competing indemnity claim

**J&J COURT TRANSCRIBERS, INC.**

**A13**

4

1 against Martin was dismissed.

2          In January of '04, the Nibbs estate and Martin agreed
3 to settle the case for $2.44 million which is the amount at
4 issue today.  On March 12th of '04, Martin filed a timely
5 administrative -- claim for administrative expenses for the
6 $2.44 million and this is Martin's motion for enforcement.

7          The motion is governed by the Bankruptcy Code at
8 Section 503(b).  503(b)(a) provides that the claim for
9 administrative expenses must arise from post-petition events
10 and it's Martin's contention that this claim has arisen
11 post-petition because the operative date is not the date of the
12 motor vehicle accident or of the rental agreement but rather
13 for the date when the right to payment arose as provided in the
14 Third Circuit case, the _Frenville_ case that is cited in the
15 papers.  And taking a look at _Frenville_ and also with Minnesota
16 Civil Procedure, it's Martin's position that the right to claim
17 arose at earliest when they were completing cross claims made
18 for common law indemnity in April of '03 which, of course, is a
19 prepetition event.

20          THE COURT:  Well, is it pre or post-petition?

21          MR. YODER:  Post-petition.  Thank you.

22          THE COURT:  Thank you.

23          MR. YODER:  Now, I know that in opposing party's
24 papers, there's an argument that Martin is estopped from
25 seeking administrative expense claim on the virtue of the

5

1  language of the stay, lift stay stipulation, providing for

2  pre-petition unsecured liquidated status for any claim in

3  excess of insurance coverage or not governed by insurance

4  coverage.  I would like to rephrase it.  But it's Martin's

5  position that the entire claim is covered by self insurance as

6  provided by the Minnesota State Court in its October 31, '03

7  order and in plaintiff's own -- or in the estate's own papers

8  at Page 3, Note 1.  They cite Minnesota authority for the

9  proposition that self-insurance under the Minnesota law is the

10  functional equivalent of commercial insurance.  So there's no

11  basis for an estoppel if there's full insurance coverage for

12  the claim.

13          The next prong of --

14          THE COURT:  Well, was Mr. Martin a party to the

15  stipulation for relief from stay?

16          MR. YODER:  Well, no, but if it's not -- it's at

17  least law of the case.

18          THE COURT:  All right.

19          MR. YODER:  The next element of the analysis is

20  Section 503(b)(b) of the Bankruptcy Code and it's relating to

21  the requirement that the claim for administrative expenses must

22  rise out of some activity has benefitted the estate

23  post-petition and the case cited by both parties is the Reading

24  v. Brown case, the U.S. Supreme Court case from 1968, which

25  provides that tort claims arising out of the administration of

6

1  the estate are actual and necessary expenses and are deemed to

2  be administrative expenses.

3       Now, the <u>Redding</u> case does relate to a motor vehicle

4  accident that occurred post-petition but our case is not a tort

5  case but it is analogous to a court case.  It's a case arising

6  in equity on the common law principles.  It's an equitable

7  claim for common law indemnification.  And that claim arises

8  post-petition because it was, as I said earlier, given rise to

9  by the post-petition competing cross claims at the earliest if

10  not by the October 31, 2003 order of the Court awarding the

11  indemnity in favor of Martin and dismissing the indemnity claim

12  of the estate.

13       Now, the basis of the <u>Reed</u> case which is analogous to

14  the instant matter for allowing post-petition tort obligations

15  to be considered administrative claims is, one, was fairness to

16  the parties who were involved in the pertinent activities of

17  the estate that give rise to whatever operation of law has --

18  is the basis for the claim and, second, that the post-petition

19  obligation of the estate should be imposed on the party who

20  should have borne the cost of purchasing insurance.  And I

21  think those two requirements are met in this case.

22       The estate entered into a stipulation to lift stay

23  with the Nibbs estate and it -- well, the bankruptcy estate --

24  and the plaintiff's estate entered into the stipulation to lift

25  stay where the bankruptcy estate had knowledge that there is a

7

1  claim against both Martin and then there will be a claim
2  against ANC Alamo arising from the personal injury or wrongful
3  death claims and that the ANC Alamo elected to defend and rely
4  on the fact that it had completing indemnity claims against
5  Martin and other defenses.  And they lost in state court and
6  they rolled the dice and it's only fair now that they be held
7  to the post-petition operation of law of the state court
8  imposing the ultimate liability squarely on the part of ANC and
9  Alamo.

10          And, again, since the Minnesota court deemed ANC
11  Alamo to be a self insured under the Minnesota no-fault
12  statutory scheme, the second prong of 503(b)(b) is met because
13  ANC Alamo is thereby the party who should bear the insurance
14  burden in this particular instance.

15          There are two other points I would like to address
16  briefly in opposing counsel's papers.  One is that the
17  _Frenville_ case should be overruled.  I mean, that's just not
18  possible here.  That's left for another day.  And similarly the
19  argument about Vanguard really being responsible, not ANC
20  Alamo, is not of immediate consequence to this motion.  If they
21  have -- if ANC Alamo has indemnity rights against Vanguard, you
22  know, they will have the opportunity to enforce them but that
23  has no effect on the indemnity rights of Martin against ANC
24  Alamo.

25          THE COURT:  All right.  Thank you.

**J&J COURT TRANSCRIBERS, INC.**

**A17**

8

1    MR. BURNETT:  Good afternoon again, Your Honor.
2  William Burnett for the ANC liquidating trust.
3    Your Honor, we have several objections to the motion.
4  First, just to give a little bit of a background, ANC filed
5  their petitions for a Chapter 11 on November 13th of 2001.  At
6  the time, there were well over 10,000 personal injury claims in
7  this case and the Martin and Nibbs accident was just one of
8  them.  Martin rented a car from ANC in July of 2001 and the
9  accident occurred July 14, 2001.  Martin is not entitled to an
10  administrative claim and Martin has not cited any legal or
11  equitable basis to elevate its pre-petition claim to
12  administrative status.  And I'll go through the --
13    THE COURT:  Well, don't you think _Frenville_ applies?
14    MR. BURNETT:  Well, I'll go through that.
15    THE COURT:  All right.
16    MR. BURNETT:  I mean, no.  I think that it's
17  distinguishable for a few reasons.  Firstly, the claim is
18  totally based on a pre-petition accident.  The Nibbs, who are
19  the injured party, instituted suit and they believe they needed
20  stay relief to sue the debtors.  Martin paid the judgment first
21  and that's part of the basis of their claim.  If Martin had not
22  paid it first, clearly the same accident would undoubtedly be a
23  pre-petition claim alone.  _Frenville_ --
24    THE COURT:  Well, their claim against you, the
25  debtor, is a -- the plaintiff's claim against the debtor is

**J&J COURT TRANSCRIBERS, INC.**

9

1  pre-petition but why, under <u>Frenville</u>, isn't the
2  indemnification claim?

3        MR. BURNETT:  Well, Your Honor, the primary
4  distinguishing feature between <u>Frenville</u> and the current
5  situation is the statutory scheme under which the claim is
6  based, the Martin claim is based.  The Martin claim is based on
7  the vicarious liability statute contained in Minnesota law
8  which is what enables Martin to be able to sue ANC, which is --
9  and when they entered into this rental agreement in July of
10  2001 pre-petition, they were signing on as a car renter under
11  the Minnesota statutory scheme.  It's very similar to the
12  situation in <u>Pinnacle</u> where this Court found that a contractual
13  asset purchase agreement which contained an indemnification
14  clause gave rise to a contingent right to payment that had not
15  been actually actualized until the later damage occurred, which
16  was post-petition in that particular case.

17        THE COURT:  Well, <u>Frenville</u> itself distinguished
18  between contractual indemnification provisions and
19  non-contractual, or common law.  Why is this not more similar
20  to the common law?  It's by virtue of their relationship with
21  the debtor, though not a contractual one.  There's no
22  contractual indemnification agreement in the car rental
23  agreement and that's not what they're asserting.

24        MR. BURNETT:  Correct.  But what they're doing is
25  they're basically taking a claim which is, at bottom, a

**J&J COURT TRANSCRIBERS, INC.**

**A19**

10

1  pre-petition claim and they are transforming it int a

2  post-petition admin claim using the <u>Frenville</u> --

3        THE COURT:  That's exactly what happened in <u>Frenville</u>

4  though.  The underlying claim was clearly a pre-petition claim.

5  The indemnification was found not be pre-petition though.

6        MR. BURNETT:  Correct and the indemnification in this

7  particular is grounded in a statute, not common law, and it's

8  our view that <u>Frenville</u> should be held to its exact holding

9  which determined that common law indemnification is what gives

10 rise to this.  And it was actually in the context of a stay

11 relief case.  It wasn't in the context of a 503(b)

12 administrative claim motion which there's other issues with

13 respect to 503 which I'll get to in a  moment, Your Honor.

14       But in terms of just the pure distinction of

15 <u>Frenville</u> versus this case, we have a statutory scheme which

16 grounds the liability that Martin is relying on, the prosecuted

17 claim.

18       THE COURT:  But the statute provides that the claim

19 only arises when the cross claim is filed.  Isn't that true?

20       MR. BURNETT:  Well, Your Honor, as I said, in our

21 view, it's very analogous to -- you could make the same

22 argument with respect to the facts in the <u>Pinnacle</u> case,

23 although I'm aware that <u>Frenville</u> did specifically carve out

24 contractual claims in its own ruling.  It didn't deal with

25 statutory claims.  But the same analogy holds true, which is

**J&J COURT TRANSCRIBERS, INC.**

**A20**

11

```
 1  that at the time that the car renter's agreement was entered
 2  into, it was a contingent claim, or at least the accident date
 3  of July 14, 2001, it was a contingent claim that Martin had
 4  pursuant to this statute and that it hadn't, you know, given
 5  rise yet, similar to Pinnacle, and therefore, you know, this
 6  Court and the Frenville court acknowledged that there was, you
 7  know, this contingent type of claim that would suffice it to be
 8  pre-petition.
 9          THE COURT:  Well, but when does the indemnity claim
10  arise under Minnesota law?  Is it when an agency contract is
11  signed?
12          MR. BURNETT:  Well, Your Honor, I guess I keep going
13  back to the vicarious liability statute that is really the
14  basis upon which the indemnification claim arises.
15          THE COURT:  And what does that say?
16          MR. BURNETT:  The vicarious --
17          THE COURT:  Yes.
18          MR. BURNETT:  Your Honor, let me get it but I believe
19  it's at the time of the accident.  Do you want me to cite the
20  actual statute?
21          THE COURT:  Yes.  Yes.
22          MR. BURNETT:  One moment, Your Honor.
23                        (Pause)
24          THE COURT:  Would counsel on the phone please mute
25  your phone?  Thank you.
```

**J&J COURT TRANSCRIBERS, INC.**

A21

12

1          MR. STITCH:  Yes.  I'm here, Your Honor.

2          THE COURT:  Okay.  Could you push the mute button

3 because we're getting feedback.

4          MR. STITCH:  Sorry about that.

5          THE COURT:  Thank you.

6          MR. BURNETT:  Your Honor, if you refer to Page 5 of

7 our objection, Paragraph 18, we cite the reference to Minnesota

8 statute which basically indicates whenever -- I'm just quoting

9 Section 170.54.  "The act provides that whenever any motor

10 vehicle shall be operated within the state by any person other

11 than the owner with the consent of owner, express or implied,

12 the owner thereof shall, in case of accident, be deemed the

13 agent of the owner and the owner of such motor vehicle and the

14 operation of" -- basically, what it says is that the driver was

15 the agent for ANC and then ANC was liable under the statute

16 which really was -- it came directly applicable when this

17 accident.  That law suit could have -- could have -- taken

18 place the day after that accident and the issue in _Frenville_ is

19 the applicability of the automatic stay and the provisions of

20 362(a) as to whether a case could have been brought.  And it is

21 our view that, based on the statutory scheme, that that claim

22 was fully ripe to be brought at the time of the accident.

23          As it turns out, that did not occur and that the

24 claim did not arise until afterwards because Martin happened to

25 pay the Nibbs or Walburg (phonetic) claim post-petition.  But

**J&J COURT TRANSCRIBERS, INC.**

13

1  that's never been a determination in terms of a stay relief

2  argument. Just because somebody fails to bring a law suit

3  pre-petition doesn't make it so that the stay does not apply to

4  it. In other words, if you have a claim that's a pre-petition

5  claim, if you don't initiate a law suit, obviously the stay

6  would still apply to it. You couldn't --

7          THE COURT: The stay is really irrelevant to this,

8  isn't it? I mean --

9          MR. BURNETT: Well, understood. Your Honor, I go

10  back to the stay only because that is the basis of -- Frenville

11  was a stay relief case as opposed to, you know, an

12  administrative claim case.

13          THE COURT: Yes.

14          MR. BURNETT: But let me move on, Your Honor, because

15  I think that there -- even if Frenville does apply and that

16  this Court believes that it's a post-petition claim due to the

17  Frenville type reasoning, Frenville doesn't deal with 503(b).

18  It doesn't deal with the allowance of administrative claim.

19  And this Court actually, in Pinnacle, discussed this issue. It

20  may be it's a post-petition claim but it doesn't necessarily

21  mean it's an administrative claim under 503.

22          Martin, in their papers, points to the Reading v.

23  Brown case and a couple other cases thereafter which stand for

24  the general proposition that post-petition torts can give rise

25  to administrative claims and, of course, we wouldn't argue with

J&J COURT TRANSCRIBERS, INC.

A23

14

1  that. In fact, there's been -- if you can imagine, there's been
2  thousands of post-petition torts that have happened against ANC
3  Rental.  In fact, those were purchased and that liability was
4  assumed by Vanguard which I'll get to in a moment.  But that
5  Reading v. Brown case isn't applicable here because, as we've
6  said, this is not a post-petition tort.  In fact, they
7  acknowledge that it's an equitable claim.

8          So part of the issue here is how do you bridge the
9  gap between Reading and the 503(b) standards.  How do you show
10 that there was a benefit to the estate in the same way that was
11 implicated?  Like the Pinnacle case found, first you need a
12 post-petition transaction, which we contend that we don't have.
13 Second, you need to give benefit to the estate.  And almost
14 exactly analogous to Pinnacle, in that case you were basically
15 trading one creditor for another, one creditor paying a
16 pre-petition claim and transferring it for a post-petition
17 claim.  Here, you've got the Nibbs claim, or Walburg, depending
18 on how you look at it, would certainly be a pre-petition claim
19 under any analysis.  And basically, by having Martin pay,
20 you're just transferring one for the other.

21         THE COURT:  Yes, I know, but Frenville came to the
22 same conclusion.  The pre-petition claim was a pre-petition
23 claim.  However, the indemnity claim that was based on a
24 pre-petition claim was a post-petition claim, is what they
25 said, isn't it? I don't think the fact that you've converted it

15

1   is really an argument.

2           MR. BURNETT:  I understand, Your Honor.  I mean, it's

3   our view that the only reason that it's really like a

4   contractual claim, statutory base, and that it gave rise

5   pre-petition.

6           THE COURT:  I understand that.

7           MR. BURNETT:  And that's what distinguishes it.  And

8   the transferring of -- you know, I was just making the

9   arguments that are raised in <u>Pinnacle</u> which is that

10  transferring of one creditor for another.

11          A couple of other important things that I would like

12  to discuss.  One is that Martin also makes an analogy to

13  payments by ANC of post-petition insurance and that any payment

14  of our insurance premiums would be administrative so why

15  shouldn't this payment be administrative.  But that sort of

16  assumes that it's post-petition to begin with and I don't think

17  that solves the question.  The question really is whether this

18  is a pre-petition claim or not.

19          I would like to turn to another important argument

20  which is the estoppel argument.  The Walburg trustee, or the

21  Nibbs, after they filed their law suit, wanted to add ANC

22  Rental Corporation as a defendant in that law suit.  They filed

23  a motion for relief from stay.  The debtor objected and

24  eventually they entered into a stipulation.  The stipulation

25  specifically provides that the stay of relief is granted only

16

1    to the extent of applicable insurance and is not implicated, as

2    Martin tried to turn it, it's not -- it wasn't self insurance.

3    It was non-debtor property, third party insurance that was

4    allowed to go after because it's very clear that that's what

5    was intended by the stipulation because it says that no

6    enforcement should be had against any of the debtor's property.

7         THE COURT:  Well, they're not violating the stay by

8    filing an administrative claim, are they?  Why  is that even

9    relevant?

10        MR. BURNETT:  It's relevant because in that

11   stipulation, it specifically says that anything that's not

12   covered by insurance will be a pre-petition claim.

13        THE COURT:  And that's the plaintiff's claim, not

14   Martin's claim.

15        MR. BURNETT:  Right.

16        THE COURT:  Martin wasn't a party to that

17   stipulation.

18        MR. BURNETT:  Martin is not a party to the

19   stipulation.  Martin was certainly aware.  They were certainly

20   part of the law suit.  They were aware that the stipulation is

21   happening.  They didn't seek to preserve their administrative

22   claim as part of that stipulation.

23        THE COURT:  But why would they have to?

24        MR. BURNETT:  Well, I mean, I supposed that's the

25   issue but it's our view that if it was intended they were going

**J&J COURT TRANSCRIBERS, INC.**

**A26**

17

1  to attempt to assert an administrative claim that it would have

2  to be included in that stipulation.

3        THE COURT:  Why?  They're not seeking an

4  administrative claim in the State Court.  They properly filed a

5  claim in this court.  Why would they need relief from the stay

6  for that?

7        MR. BURNETT:  Well, Your Honor, they wouldn't need

8  relief from the stay but there's a specific provision in the

9  stipulation which indicates that anything that's not covered by

10 insurance would be a pre-petition claim.  Now, Your Honor,

11 you're saying that they're not --

12       THE COURT:  It doesn't deal with the Martin claim.

13       MR. BURNETT:  Well, it's our view that it should have

14 and you're saying that it's not good enough because they

15 weren't a party to it.

16       THE COURT:  Right.

17       MR. BURNETT:  But it's our contention that it should

18 have and I think that that precludes them because they were --

19 they benefitted in a way that they knew about the stay relief

20 motion and they didn't seek to preserve that.

21       THE COURT:  I don't --

22       MR. BURNETT:  That's fine.

23       THE COURT:  -- like that argument.

24       MR. BURNETT:  That's fine.  The last two points I

25 wanted to make are we certainly preserved our right to argue

**J&J COURT TRANSCRIBERS, INC.**

A27

18

1   that _Frenville_ should be overruled.  I understand this Court

2   can't do that.

3           THE COURT:  Right.

4           MR. BURNETT:  But we wanted to have that in our

5   papers to the extent that we needed to do so.  I don't expect

6   this Court to, you know, rule on that.  It's just in our

7   papers.

8           THE COURT:  Okay.

9           MR. BURNETT:  And lastly we want to make the point

10  clear, in the first opportunity, that the estate itself --

11  whether this is a valid administrative claim or not, the State

12  itself cannot be liable for this administrative claim.  There

13  is an asset purchase agreement between Vanguard and the estate

14  which clearly divided the world into pre-petition claims and

15  post-petition claims.  And the premise of the entire sale was

16  that Vanguard would continue on with the operating business and

17  that it would assume the liabilities of the post-petition

18  personal injury claims.  And the remaining estate was to pay

19  all the other creditors.  And if creditors were able to sort of

20  back door their way into post-petition claims, this would

21  seriously undermine the asset purchase agreement in full.

22          THE COURT:  How would it undermine the asset purchase

23  agreement?

24          MR. BURNETT:  Well, it would essentially vicarate the

25  value of the -- the net value of the proceeds of the sale to

**J&J COURT TRANSCRIBERS, INC.**

A28

19

1  benefit any other creditors because --

2          THE COURT:  Well, any claim, any administrative

3  claim, would do the same.

4          MR. BURNETT:  Absolutely but the concept between all

5  the parties was, and I think the documents, the asset purchase

6  agreement which was cited in the last couple of pages of our

7  objection, Page 11, Page 12, specifically detail how that

8  splitting of the world was to go and I can go through it if you

9  would like.  But the idea was, is that because Vanguard is the

10 successor operator of the business, that they would pick up the

11 administrator burden of administrative type claims, which this

12 is deemed to be one and that the estate, the remaining estate,

13 the pot of money that deals with the claimant, would deal with

14 all the pre-petition claims and to administer all the -- you

15 know, all the claims objections and all the things that are

16 left behind.  And so if you follow, you know, the Redding v.

17 Brown type analysis, basically Vanguard was taking the burden

18 of the, you know, parties that continued to do business the

19 debtor post-petition and assuming that liability, assuming that

20 administrative claim reliability.  And the estate was leaving

21 behind the pre-petition claims and the pre-petition

22 administration.

23          THE COURT:  Well, are you asking me to decide that if

24 there's an administrative claim that Vanguard is responsible

25 for it?

**J&J COURT TRANSCRIBERS, INC.**

20

1            MR. BURNETT:  Well, Your Honor, it's certainly our
2    view that it's not an administrative claim.  If you believe
3    that today is the day to make that determination, then we would
4    ask that  you do that.  If you think that it's for another day,
5    we wanted to make sure that the trust, the liquidating trust,
6    you know, is forthright with this Court in telling them that
7    even if we were to lose today, it is clearly not out view that
8    it is our burden to shoulder.  And whether you believe it's
9    right, whether you think that we have to file another motion or
10   an adversary complaint against Vanguard to have them assume
11   that liability, that can be, you know, an open issue.  But it's
12   certainly our contention that it is not our burden, even if
13   this were to be an administrative claim.

14           THE COURT:  All right.  Okay.  I understand your
15   position.  And your response?

16           MR. YODER:  Just on one point, Your Honor.  I believe
17   -- James Yoder on behalf of movant Martin again.  I believe
18   there was reference made in opposing counsel's argument that
19   the claim was for indemnity was grounded in statute by the
20   vicarious liability statutory scheme under Minnesota law.  But
21   if you look at the Hertz v. State Farm Supreme Court case that
22   is cited in the order of October 31, 2003 as the basis for the
23   Minnesota court's ruling against ANC Alamo, you'll see that at
24   Page 61, it clearly provides that the state's statutory scheme
25   does not preclude the common law claim for indemnity so they

**J&J COURT TRANSCRIBERS, INC.**

**A30**

21

1  can exist.  Whether or not there's some right under the

2  vicarious liability statute does not preempt or otherwise

3  preclude a claim for common law indemnity.  Thank you.

4          THE COURT:  Well, go back.  Did the court, the

5  Minnesota court, find that this was common law liability?

6          MR. YODER:  In the --

7          THE COURT:  In its ruling.

8          MR. YODER:  -- Martin case?

9          THE COURT:  In the Martin case.

10         MR. YODER:  In the Martin case, it was pled as common

11 law liability and it was -- in the order, it was reflected

12 simply as indemnity and it doesn't say that it was derived

13 expressly from a common law or from a statutory scheme.  But

14 the pleadings which are attached to the papers, the claim that

15 was being -- the relief that was being sought was for common

16 law indemnity specifically.

17         THE COURT:  Well, point out -- all right.  It just

18 says, defendant Martin is to be indemnified by defendant, ANC

19 Alamo, to the full extent of any net judgment entered in this

20 matter.

21         MR. YODER:  Yes.  And then, if you look --

22         THE COURT:  Binding five.

23         MR. YODER:  Right.

24                     (Pause)

25         MR. YODER:  We look to -- I can't find the --

**J&J COURT TRANSCRIBERS, INC.**

**A31**

22

 1          THE COURT:  Well, do you have a copy of the <u>Hertz</u>

 2   decision by any chance?

 3          MR. YODER:  I do, Your Honor.  Unfortunately, I only

 4   have one copy.  May I approach, Your Honor?

 5          THE COURT:  You may.

 6                         (Pause)

 7          THE COURT:  Thank you.  Could counsel on the phone

 8   please mute their phone?

 9          MR. STITCH:  I thought I had done that, Your Honor.

10   I'm sorry.

11          THE COURT:  We're still hearing you.

12                         (Pause)

13          MR. BURNETT:  Your Honor?

14          THE COURT:  Yes?

15          MR. BURNETT:  May I interject at this point?

16          THE COURT:  You may.

17          MR. BURNETT:  It's our view that the <u>Hertz v. State</u>

18   <u>Farm</u> case that's being referenced and some of the language that

19   was cited as the underlying Martin orders refer to the no-fault

20   issue and as to whether there can be capped liability under the

21   Minnesota statutory scheme.  But it doesn't go to the issue

22   that's important here which is the basis and genesis of the

23   indemnification claim.  It's our understanding that actually

24   common law indemnification was not pled and we would like to

25   see that.  We actually -- the answer wasn't included as part of

**J&J COURT TRANSCRIBERS, INC.**

23

1  the underlying motion.  But in any event, the actual

2  indemnification claim is what's at issue here and the grounding

3  of that indemnification claim.  That indemnification claim only

4  is possible because ANC is vicariously liable and the State

5  Court order does specifically say that, under Section 170.54,

6  it's the vicarious liability section is what grounds ANC's

7  liability and what was being litigated --

8          THE COURT:  Where does it say that?

9          MR. BURNETT:  Your Honor, there's a few state court

10 orders.  I need to make sure that I'm looking at the same one

11 that you are.

12         THE COURT:  I'm looking at the October 31, 2003

13 order.

14         MR. BURNETT:  Your Honor, bear with me one moment,

15 please?

16         THE COURT:  Yes.  And I don't find --

17         MR. BURNETT:  I think there's a subsequent order,

18 Your Honor.

19         MR. YODER:  It's in February, the 10th of '04, I

20 believe.  It doesn't really -- it relates to a clarification

21 regarding the Illinois priority policies.

22         THE COURT:  Well, do I have that?

23         MR. YODER:  Yes.

24         THE COURT:  Where is it?

25         MR. YODER:  It is Exhibit F, Your Honor.

**J&J COURT TRANSCRIBERS, INC.**

**A33**

24

1          MR. BURNETT:  Your Honor, I'm sorry.  I also have --
2    and I apologize.  There's just a lot of underlying state court
3    orders but there is also one dated September 24, 2003 which I
4    can hand up.  And that specifically states that the -- it says
5    -- Findings of Fact by the Court, Paragraph 2, the parties
6    stipulated that the defendant, ANC Alamo, is vicariously liable
7    for the negligence of the defendant, Marjorie Martin, pursuant
8    to 170.54.  And that's the September 24, 2003 order and I can
9    hand that up.  And that's one of the exhibits from there.  I
10   just don't know exactly --

11          THE COURT:  It is?

12          MR. YODER:  I don't see it in any of these papers.

13                    (Pause)

14          MR. BURNETT:  Your Honor, I'm not sure I see a
15   reference to that as an exhibit to theirs but to the extent
16   that that's relevant, I can certainly -- if the Court will
17   allow, I can get that admitted.

18          THE COURT:  Any objection to that, me considering
19   that order?

20          MR. YODER:  May I see it again?

21          MR. BURNETT:  Your Honor, as a practical matter, I
22   know it was attached to the papers.  I didn't get it from
23   elsewhere but I have to find out exactly where it came from.

24                    (Pause)

25          MR. BURNETT:  And, Your Honor, just to go to your

**J&J COURT TRANSCRIBERS, INC.**

A34

25

1  other point, which was the October 31, 2003 order which you are

2  looking at, Paragraph 5 --

3          THE COURT:  Yes.

4          MR. BURNETT:  The reference to Minnesota statute

5  65(b).49, that's the no-fault section, that deals with the

6  capping of liability, not the indemnification issue.  Are you

7  okay with this?

8          MR. YODER:  Yes.

9          MR. BURNETT:  Okay.  Your Honor, may I hand this up?

10          THE COURT:  Yes.  Thank you.

11                    (Pause)

12          THE COURT:  All right.

13          MR. BURNETT:  Your Honor, I have nothing to add

14  except for just to sort of -- my understanding of what was

15  happening in the underlying Minnesota case, and I defer to

16  Attorney Stitch on the line if he wants to speak -- my

17  understanding of what occurred at that time and what was being

18  really litigated is the applicability of this self insured's

19  provisions which allowed a car rental company to cap their

20  liability if they satisfy certain obligations under the state

21  no-fault insurance.  There wasn't a discussion regarding the

22  sources of indemnification or how the indemnification claim

23  arose but, whenever it came up at bottom, the Court found, and

24  the parties agreed, that the liability of ANC was based on this

25  vicarious liability statute which is provided in that Section

**J&J COURT TRANSCRIBERS, INC.**

**A35**

26

1  170.  And most of the other discussion was with respect to

2  sources of liability all centered around the applicability of

3  this no-fault cap and that's what that <u>State Farm v. Hertz</u> case

4  deals with.

5          THE COURT:  All right.

6          MR. BURNETT:  Thank you, Your Honor.

7          THE COURT:  Any response?

8          MR. BURNETT:  Nothing further, Your Honor.

9          THE COURT:  All right.  Let me take this matter under

10  advisement and look at the <u>Hertz</u> decision and the statutes.

11          MR. BURNETT:  Thank you.

12          THE COURT:  All right.  We'll stand adjourned then.

13  Thank you.

14                  *    *    *    *    *

C E R T I F I C A T I O N

        I, Cecilia Ashbock, certify that the foregoing is a
correct transcript to the best of our ability, from the
electronic sound recording of the proceedings in the above-
entitled matter.


<u>/s/ Cecilia Ashbock</u>                    Date:  May 18, 2006

CECILIA ASHBOCK
J&J COURT TRANSCRIBERS, INC.




**J&J COURT TRANSCRIBERS, INC.**

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

---

In Re:

ANC RENTAL CORPORATION, *et al.*

Debtor,

---

Case No. 01-11200 (MFW)
Jointly Administered

### NOTICE OF APPEAL

**NOTICE IS HEREBY GIVEN** that Creditor Marjorie Joan Martin, pursuant to 28

U.S.C. § 158(a)(3) and Rule 8001 of the Federal Rules of Bankruptcy Procedure, hereby appeals

to the United States District Court for the District of Delaware from the Order (D.I. #7865) and

Memorandum Opinion (D.I. #7864) issued by the United States Bankruptcy Court for the

District of Delaware on April 28, 2006, denying the Motion of Marjorie Joan Martin for

Allowance and Immediate Payment of Administrative Expense Claim.

The parties and their counsel of record are:

| **Party** | **Counsel** |
|---|---|
| **Creditor Marjorie Joan Martin** | James S. Yoder, Esquire (#2643)<br>824 North Market Street, Suite 902<br>P. O. Box 709<br>Wilmington, DE 19899-0709<br>(302) 467-4524 (phone)<br>(302) 467-4554 (facsimile)<br>yoderj@whiteandwilliams.com<br>and<br>Clinton E. Cutler (#158094)<br>Ryan T. Murphy (#311972)<br>Fredrikson & Byron, P.A.<br>4000 Pillsbury Center, 200 S. Sixth Street<br>Minneapolis, MN 55402-1425<br>(612) 492-7310 (phone)<br>(612) 492-7077 (facsimile)<br>ccutler@fredlaw.com<br>rmurphy@fredlaw.com |

DOCS_DE 125598v.1

A37

**Debtors ANC Rental Corporation,** *et al.*

William J. Burnett, Esquire (#4078)
Flaster/Greenberg, P.C.
913 Market Street, Suite 1001
Wilmington, DE 19801
(302) 351-1910 (phone)
(302) 351-1919 (facsimile)
william.burnett@flastergreenberg.com

**Office of US Trustee**

Don A. Beskrone, Esquire (#4380)
Ashby & Geddes
222 Delaware Avenue
PO Box 1150
Wilmington, DE 19899
302-654-1888 (phone)
302-654-2067 (facsimile)
dbeskrone@ashby-geddes.com

Office of the U.S. Trustee
844 King Street
Suite 2313
Wilmington, DE 19801
(302) 573-6491 (phone)

**Unsecured Creditors Committee**

Sean Matthew Beach, Esquire (#4070)
Young, Conaway, Stargatt & Taylor
The Brandywine Building, 17th Floor
1000 West Street
PO Box 391
Wilmington, DE 19899
302-571-6600 (phone)
302-576-3281 (facsimile)
bankruptcy@ycst.com

**WHITE AND WILLIAMS LLP**

Dated:  May 5, 2006

By:  _____
James S. Yoder (#2643)
824 North Market Street, Suite 902
P. O. Box 709
Wilmington, DE 19899-0709
(302) 467-4524
(302) 467-4554 (facsimile)
yoderj@whiteandwilliams.com
Attorneys for Creditor Marjorie Joan Martin

- 2 -

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re:

ANC RENTAL CORPORATION, et al.

                    Debtor,

Case No. 01-11200 (MFW)
Jointly Administered

## AFFIDAVIT OF LEE LA BORE

Lee La Bore, being first duly sworn upon oath, states as follows:

1.      I am an attorney licensed to practice law in the State of Minnesota.  I represent Ms. Marjorie Martin.

2.      In July 2004, Marjorie Martin leased a car from Alamo Rent-A-Car, LLC ("Alamo").

3.      On or about July 14, 2001, while driving the car leased from Alamo, Martin was involved in an accident in Dakota County, Minnesota with another vehicle in which Robert Lewis Nipp, Virginia Ida Nipp, and Andrew James Nipp were traveling.  Robert Lewis Nipp and Virginia Ida Nipp were fatally injured and Andrew James Nipp suffered injuries to his leg, foot, head, and face.  Martin suffered contusions, abrasions and other soft tissue injuries.  She has also suffered psychologically from the trauma of the event.

4.      Judith B. Wahlberg (the "Trustee" for the next of kin of Robert Lewis Nipp and Virginia Ida Nipp) and Andrew James Nipp commenced a suit against Martin on or about April 10, 2002 – approximately five months after Debtors commenced these cases.  Attached hereto as Exhibit A is a true and correct copy of the complaint.

5.    Martin filed and served an answer denying liability and asserted a number of affirmative defenses. Attached hereto as Exhibit B is a true and correct copy of the answer.

6.    On or about April 10, 2003, this Court entered an Order Approving Stipulation Granting Relief from the Automatic Stay. Attached hereto as Exhibit C is a true and correct copy of that order.

7.    As a result, on or about April 25, 2003, Wahlberg and Andrew James Nipp filed and served an amended complaint naming Martin, Alamo, and ANC Rental Corporation as defendants. Attached hereto as Exhibit D is a true and correct copy of that amended complaint.

8.    Martin filed and served an amended answer and cross-claim in which she denied liability and asserted a number of affirmative defenses and also asserted a cross-claim for common law indemnity against Alamo and ANC Rental Corporation.

9.    Similarly, Alamo and ANC Rental Corporation denied liability and brought a cross-claim for common law indemnity against Martin.

10.    On September 24, 2003, after a trial, the jury returned a $2.5 million verdict in favor of the next of kin of Robert Lewis Nipp and Virginia Ida Nipp and found Alamo, ANC Rental Corporation, and Martin jointly and severally liable.

11.    On October 31, 2003, the Minnesota district court found that by failing to meet the statutory requirements of Minn. Stat. § 65B.49 (Minnesota's No-Fault Automobile Insurance Statute), Alamo and ANC Rental Corporation became self-insured entities with uncapped liability. As a result, the Minnesota district court found that Martin was indemnified by Alamo and ANC Rental Corporation to the full extent of any net judgment entered in this matter. Moreover, the Minnesota district court dismissed Alamo's cross-claim for indemnity against Martin with prejudice. Attached hereto as Exhibit E is a true and correct copy of the October 31,

2

2003 order.  Also attached hereto as <u>Exhibit F</u> is a true and correct copy of an order dated February 10, 2004 clarifying the October 31, 2003 order.

12.    In January 2004, pursuant to a settlement agreement and release, Martin paid Wahlberg on behalf of the next of kin of Robert Lewis Nipp and Virginia Ida Nipp $2.44 million in full settlement of the judgment.  Attached hereto as <u>Exhibit G</u> is a true and correct copy of the settlement check.

13.    On or about January 30, 2004, this Court approved and ordered the dissemination of a Notice Requiring Filing of Administrative Claims in these cases.  In conformance with such Notice, on March 12, 2004, Martin duly and timely filed a Proof of Administrative Claim in <u>ANC Rental Corporation, et al.</u>, Case No. 01-11200, in the amount of $2.44 million ("Administrative Claim").  Attached hereto as <u>Exhibit H</u> is a true and correct copy of that Administrative Claim.

14.    In November 2005, the Motion of ANC Liquidating Trust for an Order Establishing Procedures for the Treatment of Certain Pre-Petition Personal Injury Claims was filed.  Although that motion was not served on Martin, she responded by letter to ANC Liquidating Trust's counsel informing him that the claim was an administrative expense claim and it had been liquidated by final orders entered by the Minnesota district court.  Attached as <u>Exhibit I</u> is a true and correct copy of that letter.  The ANC Liquidating Trust has not responded.

15.    Martin has made repeated requests for payment of the Administrative Claim. However, to date, no disposition or payment of Martin's Administrative Claim has been made.

16.    No prior requests for payment of such Administrative Claim, other than the original filing of the Proof of Administrative Claim, has been presented to this Court.

3

FURTHER AFFIANT SAYETH NOT.

Lee La Bore

Subscribed and sworn to before me
this ___ day of March, 2006.

Notary Public

LIESL NIBBE
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2007

#3243679\1

4

A42

05/15/02  WED 11:19 FAX 6517316062         STATE FARM INS

WOODBURY

MAY 3  2002

CLAIM SERVICE OFFICE

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

CASE TYPE:  WRONGFUL DEATH
& PERSONAL INJURY

------------------------------------------------

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and Allan
J. Nipp, as the parent and natural guardian
of the minor plaintiff Andrew James Nipp,

Plaintiffs,

**SUMMONS**

v.

Marjorie Joan Martin,

Defendant.

------------------------------------------------

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to serve upon plaintiffs' attorneys an Answer

to the Complaint which is herewith served upon you, within twenty (20) days after service of this

Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be

taken against you for the relief demanded in the Complaint.

You are advised that under Rule 114 of the General Rules of Practice for the District Courts,

all civil cases are subject to Alternative Dispute Resolution (ADR) processes.  Your attention is

directed to the ADR options available under that rule.

1509523.1



EXHIBIT

A



05/15/02  WED 11:19 FAX 6517318082    STATE FARM INS    WOODBURY    ☒009

MAY 3  2002

CLAIM SERVICE OFFICE

Dated this _10ᵗ_ day of _April_, 2002.

ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.

By: _Leo F Feeney_

    Leo F. Feeney (#28599)
    David J. Koob (#307282)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFFS

1509523.1

2

05/15/02  WED 11:19 FAX 6517316062    STATE FARM INS

MAY 3  2002

CLAIM SERVICE OFFICE

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

CASE TYPE: WRONGFUL DEATH
& PERSONAL INJURY

---

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and Allan
J. Nipp, as the parent and natural guardian
of the minor plaintiff Andrew James Nipp,

       Plaintiffs,

v.

Marjorie Joan Martin,

       Defendant.

---

**COMPLAINT**

       Plaintiffs, for their Complaint and cause of action against the above-named defendant,

states and allege as follows:

**PARTIES**

**I.**

       On October 5, 2001, Judith V. Wahlberg was appointed Trustee for the next of kin

of Robert Louis Nipp and Virginia Ida Nipp, decedents, by Order of the Honorable Donald J. Venne,

Judge of District Court, Tenth Judicial District, County of Anoka, State of Minnesota, a copy of

which Order is attached as Exhibit A.  The action on behalf of the survivors of decedents is brought

by Judith V. Wahlberg, in her appointed capacity as Trustee, against the above-named defendant in

compliance with the Minnesota Wrongful Death Statute, Minn. Stat. §573.02, et seq.  The action on

behalf of the minor plaintiff, Andrew James Nipp, is brought by his parent and natural guardian, Allan

J. Nipp.

1509323.1



05/15/02  WED 11:20 FAX 6517316062      STATE FARM INS

MAY 3  2002

CLAIM SERVICE OFFICE

## II.

At all times herein material, decedents Robert Louis Nipp and Virginia Ida Nipp, husband and wife, were citizens and residents of Dakota County, residing at the time of their deaths at 710 Marie Avenue, Mendota Heights, MN 55118.

## III.

At all times herein material, Allan J. Nipp was and is the father and natural guardian of minor plaintiff Andrew James Nipp (DOB 9/28/99), residing in Dakota County, at 8195 190th Street East, Hastings, MN 55033.

## IV.

Upon information and belief, and at all times herein material, defendant Marjorie Joan Martin was a citizen and resident of Pima County, Arizona, residing at 7590 Via Los Arbusto, Tucson, AZ 85750.

## V.

At all times herein material, Trustee Judith V. Wahlberg was and is a resident of Saint Louis County, residing at 5069 Country Road, Mountain Iron, MN 55768.

## VI.

The next of kin of decedents Robert and Virginia Nipp, together with their ages and relationship to decedents, are as follows:

| Name | Age | Relationship |
| --- | --- | --- |
| Christine S. Kelley | 49 | Daughter |
| Cynthia J. Nipp | 46 | Daughter |
| Judith V. Wahlberg | 42 | Daughter |
| Jeffrey R. Nipp | 40 | Son |
| Allan J. Nipp | 38 | Son |
| Amy L. Nipp | 35 | Daughter |

2

1509523.1

05/15/02  WED 11:20 FAX 8517316062          STATE FARM INS

MAY 3 2002

CLAIM SERVICE OFFICE

## FACTS

### VII.

At all times herein material, Robert Louis Nipp was the owner and operator of a 1991 Ford Crown Victoria bearing Minnesota license plate EGX 778.  At all times herein material, Virginia Ida Nipp, the wife of Robert Louis Nipp, was a passenger in the above-described motor vehicle.  At all times herein material, Andrew James Nipp, the minor plaintiff and grandson of Robert and Virginia Nipp, was a passenger in the above-described motor vehicle.

### VIII.

At all times herein material, defendant Marjorie Joan Martin was in possession of and operating a 2001 Chevrolet Malibu bearing Minnesota license plate GGR 759.  At the time of the collision, the 2001 Chevrolet Malibu was leased by defendant Marjorie Joan Martin from Alamo Rent-A-Car, Inc., a Florida corporation.  Upon information and belief, Alamo Rent-A-Car, Inc. was the registered owner of the vehicle being operated by defendant Marjorie Joan Martin at the time of the collision.

### IX.

Upon information and belief, Alamo Rent-A-Car, Inc. engages in vehicle leasing services; i.e., providing vehicles for the public to lease, and, as part of its business, leased the above-described vehicle to defendant Marjorie Joan Martin from its business premises at the Minneapolis/St. Paul International Airport on July 14, 2001.

### X.

At all times herein material, Interstate highway 35E was a duly dedicated public thoroughfare located within the city of Lino Lakes, county of Anoka, state of Minnesota.  Said highway, as it proceeds through the above-described area, consists of two lanes of travel

1509523.1

3

05/15/02  WED 11:20 FAX 6517316062        STATE FARM INS

MAY 3 2002
WOODBURY
CLAIM SERVICE OFFICE
MAY 3 2002
A

proceeding generally northbound and two lanes of travel proceeding generally southbound. A large, unpaved grass median separates the northbound and southbound lanes of travel.

## GENERAL ALLEGATIONS

### XI.

On July 14, 2001, at approximately 5:00 p.m., Robert Louis Nipp was lawfully operating his 1991 Ford Crown Victoria in a generally southbound direction upon Interstate 35E in the vicinity of Lino Lakes, Minnesota. At the same time and place, defendant Marjorie Joan Martin was operating her leased 2001 Chevrolet Malibu in a generally northbound direction upon Interstate 35E in the vicinity of Lino Lakes, MN. At the time and place described above, defendant's Chevrolet Malibu motor vehicle, traveling at a high rate of speed, suddenly bolted across the divider median and entered the southbound lanes of Interstate 35E, causing a collision with the Nipp vehicle at highway speeds. As a direct result of the foregoing high-speed collision, Robert Louis Nipp and Virginia Ida Nipp were fatally injured. The Nipp's grandson, Andrew James Nipp (DOB 9/28/99), a passenger in the Nipp vehicle, was taken by ambulance to North Memorial Medical Center and admitted for injuries to his left leg, foot, head and face. As a result of the accident, the minor child ceased ambulating and does not verbally communicate.

### XII.

The fatal injuries sustained by Robert and Virginia Nipp were proximately caused by the negligence of defendant Marjorie Joan Martin. Consequently, the next-of-kin of Robert Louis Nipp and Virginia Ida Nipp have sustained a permanent and final loss of all elements of their ongoing relationship with their parents, including, but not limited to, the loss of their services, counseling and advice and other natural and normal losses flowing from the previously existing familial relationships including, but not limited to, loss of their care, comfort, society,

4

1509523.1

05/15/02  WED 11:21 FAX 6517316062     STATE FARM INS     WOODBURY

MAY 3  2002

CLAIM SERVICE CENTER

assistance and guidance, all to each heir's pecuniary damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000.00).

## XIII.

As a direct result of the death of Robert Louis Nipp and Virginia Ida Nipp, proximately caused and contributed to by the negligence of defendant Marjorie Joan Martin, as set forth herein, plaintiff Judith V. Wahlberg, individually, and as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, has been required to expend sums of money for medical bills, reasonable funeral and burial expenses and related items, all to her damage in a sum presently estimated to be in excess of Ten Thousand Dollars ($10,000.00).

## XIV.

As a direct result of the above-described collision and the negligence of defendant the minor plaintiff, Andrew James Nipp, has sustained injuries to his person which injuries, upon information and belief, are disabling and permanent, all to his damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000).

## XV.

As a direct result of the trauma sustained by minor plaintiff Andrew James Nipp, proximately caused and contributed to by the negligence of defendant Marjorie Joan Martin, as set forth herein, Allan J. Nipp, individually, and as father and natural guardian for Andrew James Nipp, has been required to expend sums of money for medical bills and related items, all to his damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000).

5

1509523.1

05/15/02  WED 11:21 FAX 6517316062        STATE FARM INS

MAY 3  2002

CLAIM SERVICE OFFICE

## NEGLIGENCE OF MARJORIE JOAN MARTIN

### XVI.

Plaintiffs Judith V. Wahlberg, individually, and as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, and Allan J. Nipp, as father and natural guardian of minor plaintiff Andrew James Nipp, reallege and incorporate the above allegations by reference as set forth more fully below.

### XVII.

At the above-described time and place, defendant Marjorie Joan Martin negligently, carelessly and unlawfully operated the subject 2001 Chevrolet Malibu motor vehicle, causing a collision with the motor vehicle operated by Robert Louis Nipp. Illustrations of such negligent, careless and unlawful conduct of defendant Marjorie Joan Martin, cited by way of example, but not limitation, are the following:

A.    Defendant Marjorie Joan Martin failed and neglected to maintain the required degree of attention in her operation of the 2001 Chevrolet Malibu rental vehicle;

B.    Defendant Marjorie Joan Martin's inattentiveness resulted in her losing complete control of the 2001 Chevrolet Malibu rental vehicle;

C.    Defendant Marjorie Joan Martin was operating the 2001 Chevrolet Malibu rental vehicle at a speed in excess of the posted speed limit at the time of and prior to the subject occurrence;

D.    Defendant Marjorie Joan Martin failed and neglected to keep the 2001 Chevrolet Malibu rental vehicle on the proper side of the highway within its designated northbound lane of travel and otherwise failed to exercise due care in

1509523.1

6

05/15/02   WED 11:22 FAX 6517318062        STATE FARM INS

MAY 3   2002

CLAIM SERVICE OFFICE

the operation of the vehicle, including her failing to operate said vehicle in accordance with the laws of the State of Minnesota, the rules of the road and in a generally responsible manner prior to the above-described occurrence; and defendant Marjorie Joan Martin was negligent, careless and unlawful in other ways too numerous to herein mention.

## XVIII.

Defendant Marjorie Joan Martin committed the above-described negligent, careless and unlawful acts and omissions while operating a motor vehicle upon a public thoroughfare of the State of Minnesota. As a direct and proximate result of the above-described negligence, Robert Louis Nipp and Virginia Ida Nipp sustained fatal injuries which resulted in the damages alleged to the next of kin of Robert and Virginia Nipp.

## XIX.

As a direct and proximate result of the above-described negligence of defendant, the minor plaintiff, Andrew James Nipp, sustained traumatic injuries to his person, which injuries have resulted in the alleged damages to the minor plaintiff and to Allan J. Nipp, his father and natural guardian.

WHEREFORE, plaintiff Judith V. Wahlberg, individually, and as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, prays for judgment against the defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with costs and disbursements herein and reasonable attorneys' fees and Allan J. Nipp, as father and natural guardian of minor plaintiff Andrew James Nipp, prays for judgment against the defendant in an amount in excess of Fifty Thousand Dollars ($50,000), together with costs and disbursements herein and reasonable attorneys' fees.

7

1509523.1

05/15/02  WED 11:22 FAX 6517318062          STATE FARM INS

MAY 3  2002

CLAIM SERVICE OFFICE

Dated this 10ᵗʰ day of _April_, 2002.

                    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.


                    By: _Leo F. Feeney_
                        Leo F. Feeney (#285999)
                        David J. Koob (#307282)


                    2800 LaSalle Plaza
                    800 LaSalle Avenue
                    Minneapolis, Minnesota 55402-2015
                    (612) 349-8500

                    ATTORNEYS FOR PLAINTIFFS

1509523.1

8

05/15/02  WED 11:22 FAX 6517318062            STATE FARM INS

WOODBURY

MAY 8 2002

CLAIM SERVICE OFFICE

## ACKNOWLEDGMENT REQUIRED BY
## MINN. STAT. SEC. 549.211, SUBD. 2

The undersigned hereby acknowledges that, pursuant to Minn. Stat. Sec. 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated this 16ᵗʰ day of _April_ , 2002.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _____
     Leo F. Feeney (#28599)
     David J. Koob (#307282)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFFS

9

STATE OF MINNESOTA                          DISTRICT COURT

COUNTY OF DAKOTA                        FIRST JUDICIAL DISTRICT

                                              FILE NO.

Judith V. Wahlberg, as Trustee    )
for the next of kin of Robert     )
Louis Nipp and Virginia Ida Nipp) 
decedents, and Allan J. Nipp, as) 
the parent and natural guardian   )
of the minor Plaintiff, Andrew    )
James Nipp,                       )
                                 )
                 Plaintiffs,     )
                                 )                        ANSWER
          vs.                     )
                                 )
Marjorie Joan Martin,             )
                                 )
                 Defendant.      )

                         * * * *

      Comes now the Defendant, and for her Answer to the Complaint

of the Plaintiffs, states and alleges as follows:

                              I.

      Denies each and every allegation contained in Plaintiffs'

Complaint, save and except as hereinafter qualified or admitted.

                             II.

      That she is without sufficient information to judge the truth

or falsity of Plaintiffs' Complaint and as a result, puts the

Plaintiffs to the strict proof thereof.

                            III.

      Upon information and belief, admit paragraphs I, II, III,

IV, V, VI, VII, VIII, IX, and X of Plaintiffs' Complaint.

                    AFFIRMATIVE DEFENSES

                             IV.

      As an affirmative defense the Defendant states that the



A54

Plaintiffs have failed to state a cause of action for which relief can be granted.

<div align="center">V.</div>

As to the minor Plaintiff, Andrew James Nipp, the Defendant states that the Plaintiffs have failed to state a cause of action for which relief can be granted in that she has failed to fulfill a threshold requirement of Minnesota Statute §65B and related subdivisions therein.

<div align="center">IV.</div>

WHEREFORE, the Defendant prays that the Plaintiffs take nothing by their pretended cause of action and that she be awarded her costs and disbursements herein.

LA-BORE, GIULIANI, COSGRIFF & VILTOFT, LTD.

Steven L Viltoft (190615)
Attorney for Defendant
P. O. Box 70
Hopkins, Minnesota, 55343
(952) 933-3371

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded, pursuant to Minn. Stat. Sec. 549.21, Subd. 2, to the party against whom the allegations in this pleading are asserted.

Steven L. Viltoft

A55

AFFIDAVIT OF SERVICE BY MAIL

STATE OF MINNESOTA)
                  ) ss:
COUNTY OF HENNEPIN)  ,

Kimberly A. Eddy, of the City of Shorewood, County of Hennepin, State of Minnesota, being duly sworn, says that on the 17th day of May, 2002, she served Defendant's Answer on:

Leo Feeney, Esq.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402

in this action, by mailing to and depositing the same in the post office at Hopkins, Minnesota, directed to said attorney at his respective address as listed above, that being his last known mailing address.

_Kimberly A. Eddy_

Kimberly A. Eddy

Subscribed and sworn to before me this 17th  day of May, 2002.

_Jody Alexander_

Notary Public

JODY A. ALEXANDER
Notary Public
Minnesota
My Commission Expires Jan. 31, 2005

A56

FILE No.712 04/11 '03 09:05          :          FAX:                    PAGE   3/  3

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ANC RENTAL CORPORATION, *et al.*, | ) | Case No. 01-11200 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Re: Dkt. No. 4245 |

---

### ORDER APPROVING STIPULATION
### GRANTING RELIEF FROM AUTOMATIC STAY

Upon the Motion of Judith Wahlberg, as Trustee for the Next of King of Robert and Virginia Nipp, and Andrew James Nipp, a Minor, by and through His Parent and Natural Guardian, Allan Nipp ("Movants"), for Relief from stay Under Section 362 of the Bankruptcy Code [Docket No. 4245] (the "Motion").

And it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A);

And the above captioned Debtors' and Movants having entered into a stipulation granting relief from the automatic stay (the "Stipulation");

And it appearing that the relief requested in the Stipulation is in the best interests of the Debtors, their creditors and their estates;

And good and sufficient cause appearing therefore; it is hereby

ORDERED that the Stipulation is granted and approved pursuant to the terms set forth therein.

Wilmington, Delaware

April 10         , 2003

The Honorable Mary F. Walrath
United States Bankruptcy Judge

11.586.016XX940119Ш2v1

```
EXHIBIT

   C
```

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

CASE TYPE: WRONGFUL DEATH
& PERSONAL INJURY

---

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and Allan
J. Nipp, as the parent and natural guardian
of the minor plaintiff Andrew James Nipp,

     Plaintiffs,

v.

Marjorie Joan Martin, and ANC Rental
Corporation and its subsidiary Alamo
Rent-A-Car, LLC,

     Defendants.

<u>AMENDED SUMMONS</u>

---

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:

     You are hereby summoned and required to serve upon plaintiffs' attorneys an Answer

to the Amended Complaint which is herewith served upon you, within twenty (20) days after service

of this Amended Summons upon you, exclusive of the day of service. If you fail to do so, judgment

by default will be taken against you for the relief demanded in the Amended Complaint.

     You are advised that under Rule 114 of the General Rules of Practice for the District Courts,

all civil cases are subject to Alternative Dispute Resolution (ADR) processes. Your attention is

directed to the ADR options available under that rule.

15060572.1



A58

Dated this 25ᵗʰ day of April, 2003.

ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.

By: _____
    Leo F. Feeney (#28599)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

**ATTORNEYS FOR PLAINTIFFS**

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

CASE TYPE: WRONGFUL DEATH
& PERSONAL INJURY

---

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and Allan
J. Nipp, as the parent and natural guardian
of the minor plaintiff Andrew James Nipp,

    Plaintiffs,

v.

Marjorie Joan Martin, and ANC Rental
Corporation and its subsidiary Alamo
Rent-A-Car, LLC,

    Defendants.

---

**AMENDED COMPLAINT**

Plaintiffs, for their Amended Complaint and cause of action against the above-named

defendants, states and allege as follows:

## PARTIES

### I.

On October 5, 2001, Judith V. Wahlberg was appointed Trustee for the next of kin

of Robert Louis Nipp and Virginia Ida Nipp, decedents, by Order of the Honorable Donald J. Venne,

Judge of District Court, Tenth Judicial District, County of Anoka, State of Minnesota, a copy of

which Order is attached as Exhibit A. The action on behalf of the survivors of decedents is brought

by Judith V. Wahlberg, in her appointed capacity as Trustee, against the above-named defendant in

compliance with the Minnesota Wrongful Death Statute, Minn. Stat. §573.02, et seq. The action on

15060572.1

behalf of the minor plaintiff, Andrew James Nipp, is brought by his parent and natural guardian, Allan J. Nipp.

## II.

At all times herein material, decedents Robert Louis Nipp and Virginia Ida Nipp, husband and wife, were citizens and residents of Dakota County, residing at the time of their deaths at 710 Marie Avenue, Mendota Heights, MN 55118.

## III.

At all times herein material, Allan J. Nipp was and is the father and natural guardian of minor plaintiff Andrew James Nipp (DOB 9/28/99), residing in Dakota County, at 8195 190th Street East, Hastings, MN 55033.

## IV.

Upon information and belief, and at all times herein material, defendant Marjorie Joan Martin was a citizen and resident of Pima County, Arizona, residing at 7590 Via Los Arbusto, Tucson, AZ 85750.

## V.

At all times herein material, Trustee Judith V. Wahlberg was and is a resident of Saint Louis County, residing at 5069 Country Road, Mountain Iron, MN 55768.

## VI.

The next of kin of decedents Robert and Virginia Nipp, together with their ages and relationship to decedents, are as follows:

| Name | Age | Relationship |
| --- | --- | --- |
| Christine S. Kelley | 49 | Daughter |

15060572.1

2

A61

| | | |
|---|---|---|
| Cynthia J. Nipp | 46 | Daughter |
| Judith V. Wahlberg | 42 | Daughter |
| Jeffrey R. Nipp | 40 | Son |
| Allan J. Nipp | 38 | Son |
| Amy L. Nipp | 35 | Daughter |

## VII.

At all times herein material, ANC Rental Corporation, a Delaware Corporation and its subsidiary Alamo Rent-A-Car, LLC operates one of the world's largest car rental businesses. On information and belief on July 14, 2001 Alamo, at its Minneapolis airport location, rented a Chevrolet Malibu to defendant Marjorie Joan Martin. On November 13, 2001, Defendant ANC Rental Corporation, and its subsidiary Alamo Rent-A Car, LLC filed a Chapter 11 Petition in U.S. Bankruptcy Court for the District of Delaware. In that action, Judith Wahlberg, as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, and minor plaintiff Andrew Nipp, by and through his parent and natural guardian, Allan Nipp, are named as unsecured creditors.

On April 10, 2003 an Order signed by the Honorable Mary F. Wallrath, Judge, United States Bankruptcy Court for the District of Delaware, granted relief from the automatic bankruptcy stay allowing plaintiffs to amend their Complaint to add ANC Rental Corporation, and its subsidiary Alamo Rent-A-Car, LLC as a defendant to this action. This Amended Complaint is being brought under the authority of that Order, attached hereto as Exhibit B.

15060572.1

3

A62

## FACTS

### VIII.

At all times herein material, Robert Louis Nipp was the owner and operator of a 1991 Ford Crown Victoria bearing Minnesota license plate EGX 778. At all times herein material, Virginia Ida Nipp, the wife of Robert Louis Nipp, was a passenger in the above-described motor vehicle. At all times herein material, Andrew James Nipp, the minor plaintiff and grandson of Robert and Virginia Nipp, was a passenger in the above-described motor vehicle.

### IX.

At all times herein material, defendant Marjorie Joan Martin was in possession of and operating a 2001 Chevrolet Malibu bearing Minnesota license plate GGR 759. At the time of the collision, the 2001 Chevrolet Malibu was leased by defendant Marjorie Joan Martin from Alamo Rent-A-Car, LLC. Upon information and belief, Alamo Rent-A-Car, LLC was the registered owner of the vehicle being operated by defendant Marjorie Joan Martin at the time of the collision.

### X.

Upon information and belief, Alamo Rent-A-Car, LLC engages in vehicle leasing services; i.e., providing vehicles for the public to lease, and, as part of its business, leased the above-described vehicle to defendant Marjorie Joan Martin from its business premises at the Minneapolis/St. Paul International Airport on July 14, 2001.

### XI.

At all times herein material, Interstate highway 35E was a duly dedicated public

15060572.1

4

thoroughfare located within the city of Lino Lakes, county of Anoka, state of Minnesota. Said highway, as it proceeds through the above-described area, consists of two lanes of travel proceeding generally northbound and two lanes of travel proceeding generally southbound. A large, unpaved grass median separates the northbound and southbound lanes of travel.

## GENERAL ALLEGATIONS

### XII.

On July 14, 2001, at approximately 5:00 p.m., Robert Louis Nipp was lawfully operating his 1991 Ford Crown Victoria in a generally southbound direction upon Interstate 35E in the vicinity of Lino Lakes, Minnesota. At the same time and place, defendant Marjorie Joan Martin was operating her leased 2001 Chevrolet Malibu in a generally northbound direction upon Interstate 35E in the vicinity of Lino Lakes, MN. At the time and place described above, defendant's Chevrolet Malibu motor vehicle, traveling at a high rate of speed, suddenly bolted across the divider median and entered the southbound lanes of Interstate 35E, causing a collision with the Nipp vehicle at highway speeds. As a direct result of the foregoing high-speed collision, Robert Louis Nipp and Virginia Ida Nipp were fatally injured. The Nipp's grandson, Andrew James Nipp, a passenger in the Nipp vehicle, was taken by ambulance to North Memorial Medical Center and admitted for injuries to his left leg, foot, head and face. As a result of the accident, the minor plaintiff has experienced developmental delays in speech and motor skills, and possibly other injuries yet to be determined.

### XIII.

15060572.1

5

A64

The fatal injuries sustained by Robert and Virginia Nipp were proximately caused by the negligence of defendant Marjorie Joan Martin. Consequently, the next-of-kin of Robert Louis Nipp and Virginia Ida Nipp have sustained a permanent and final loss of all elements of their ongoing relationship with their parents, including, but not limited to, the loss of their services, counseling and advice and other natural and normal losses flowing from the previously existing familial relationships including, but not limited to, loss of their care, comfort, society, assistance and guidance, all to each heir's pecuniary damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000.00).

### XIV.

As a direct result of the death of Robert Louis Nipp and Virginia Ida Nipp, proximately caused and contributed to by the negligence of defendant Marjorie Joan Martin, as set forth herein, plaintiff Judith V. Wahlberg, individually, and as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, has been required to expend sums of money for medical bills, reasonable funeral and burial expenses and related items, all to her damage in a sum presently estimated to be in excess of Ten Thousand Dollars ($10,000.00).

### XV.

As a direct result of the above-described collision and the negligence of defendant the minor plaintiff, Andrew James Nipp, has sustained injuries to his person which injuries, upon information and belief, are disabling and permanent, all to his damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000).

### XVI.

As a direct result of the trauma sustained by minor plaintiff Andrew James Nipp,

6

15060572.1

A65

proximately caused and contributed to by the negligence of defendant Marjorie Joan Martin, as set forth herein, Allan J. Nipp, individually, and as father and natural guardian for Andrew James Nipp, has been required to expend sums of money for medical bills and related items, all to his damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000).

## NEGLIGENCE OF MARJORIE JOAN MARTIN

### XVII.

Plaintiffs Judith V. Wahlberg, individually, and as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, and Allan J. Nipp, as father and natural guardian of minor plaintiff Andrew James Nipp, reallege and incorporate the above allegations by reference as if set forth more fully below.

### XVIII.

At the above-described time and place, defendant Marjorie Joan Martin negligently, carelessly and unlawfully operated the subject 2001 Chevrolet Malibu motor vehicle, causing a collision with the motor vehicle operated by Robert Louis Nipp. Illustrations of such negligent, careless and unlawful conduct of defendant Marjorie Joan Martin, cited by way of example, but not limitation, are the following:

A.    Defendant Marjorie Joan Martin failed and neglected to maintain the required degree of attention in her operation of the 2001 Chevrolet Malibu rental vehicle;

B.     Defendant Marjorie Joan Martin's inattentiveness resulted in her losing complete control of the 2001 Chevrolet Malibu rental vehicle;

C.     Defendant Marjorie Joan Martin was operating the 2001 Chevrolet Malibu rental vehicle at a speed in excess of the posted speed limit at the time of and prior to the subject occurrence;

D.     Defendant Marjorie Joan Martin failed and neglected to keep the 2001 Chevrolet Malibu rental vehicle on the proper side of the highway within its designated northbound lane of travel and otherwise failed to exercise due care in the operation of the vehicle, including her failing to operate said vehicle in accordance with the laws of the State of Minnesota, the rules of the road and in a generally responsible manner prior to the above-described occurrence; and defendant Marjorie Joan Martin was negligent, careless and unlawful in other ways too numerous to herein mention.

## XIX.

Defendant Marjorie Joan Martin committed the above-described negligent, careless and unlawful acts and omissions while operating a motor vehicle upon a public thoroughfare of the State of Minnesota. As a direct and proximate result of the above-described negligence, Robert Louis Nipp and Virginia Ida Nipp sustained fatal injuries which resulted in the damages alleged to the next of kin of Robert and Virginia Nipp.

## XX.

As a direct and proximate result of the above-described negligence of defendant,

the minor plaintiff, Andrew James Nipp, sustained traumatic injuries to his person, which

injuries have resulted in the alleged damages to the minor plaintiff and to Allan J. Nipp, his

father and natural guardian.

## Negligence as to ANC Rental Corporation and its subsidiary Alamo Rent-A-Car, LLC

## VICARIOUS LIABILITY

### XXI.

Plaintiffs Judith V. Wahlberg, individually, and as Trustee for the next of kin of

Robert Louis Nipp and Virginia Ida Nipp, and Allan J. Nipp, as father and natural guardian of

minor plaintiff Andrew James Nipp, reallege and incorporate the above allegations by reference

as if set forth more fully below.

### XXII.

Defendant ANC Rental Corporation and its subsidiary Alamo Rent-A-Car, LLC

as the owner of the vehicle causing the deaths of Robert Louis Nipp and Virginia Ida Nipp, and

the injuries to minor plaintiff Andrew Nipp, is vicariously liable for the negligence, carelessness

and unlawful conduct of the driver of its vehicle, Marjorie Joan Martin, deemed to be defendant

Alamo's agent under the provisions of Minn. Statute § 170.54.

WHEREFORE, plaintiff Judith V. Wahlberg, individually, and as Trustee for the

next of kin of Robert Louis Nipp and Virginia Ida Nipp, prays for judgment against the

defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with her

costs and disbursements herein and reasonable attorneys' fees, and Allan J. Nipp, as father and

natural guardian of minor plaintiff Andrew James Nipp, prays for judgment against the

defendants in an amount in excess of Fifty Thousand Dollars ($50,000), together with costs his

and disbursements herein and reasonable attorneys' fees.

Dated this 25ᵗʰ day of April , 2003.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _Leo F. Feeney_

Leo F. Feeney (#28599)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFFS

15060572.1

11

A70

## ACKNOWLEDGMENT REQUIRED BY
## MINN. STAT. SEC. 549.211, SUBD. 2

The undersigned hereby acknowledges that, pursuant to Minn. Stat. Sec. 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated this 25ᵗʰ day of _Cepul_ , 2003.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _____

Leo F. Feeney (#285999)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFFS

15060572.1

12

A71

## AFFIDAVIT OF SERVICE BY HAND DELIVERY

STATE OF MINNESOTA )
                    ) ss
COUNTY OF HENNEPIN )

        James A. Jadwin, being first duly sworn on oath, deposes and says, that on the 25th day of April, 2003, he made service of the attached **Amended Summons and Amended Complaint** by delivering a true and correct copy thereof to Alamo Rent-A-Car, LLC by leaving the above mentioned items with Tessa Kosky of the CT Corporation, 401 Second Avenue South, Suite 454, Minneapolis, Minnesota, 55401. The CT Corporation is the Registered Agent for Alamo Rent-A-Car, LLC.

                                             _____
                                           James A. Jadwin

Subscribed and sworn to
before me this 28 day
of April, 2003.

_Connie Marquardt_
Notary Public

CONNIE MARQUARDT
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005

10008435.1

A72

## AFFIDAVIT OF SERVICE BY HAND DELIVERY

STATE OF MINNESOTA          )
                            ) ss
COUNTY OF HENNEPIN          )

James A. Jadwin, being first duly sworn on oath, deposes and says, that on the 25th day of April, 2003, he made service of the attached **Amended Summons and Amended Complaint** by delivering a true and correct copy thereof to ANC Rental Corporation by leaving the above mentioned items with Tessa Kosky of the CT Corporation, 401 Second Avenue South, Suite 454, Minneapolis, Minnesota, 55401. The CT Corporation is the Registered Agent for ANC Rental Corporation.

_____
James A. Jadwin

Subscribed and sworn to
before me this 28 day
of April, 2003.



_____
Notary Public

CONNIE MARQUARDT
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

File No. C7-02-8209

Judith V. Wahlberg, as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, decedents, and Allan J. Nipp, as the parent and natural guardian of the minor Plaintiff Andrew James Nipp,

Plaintiffs,

v.

Marjorie Joan Martin, and ANC Rental Corporation and its subsidiary Alamo Rent-A-Car, LLC,

Defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

WHEREAS, the above entitled matter came before the Honorable Richard G. Spicer, Judge of District Court, on October 30, 2003, at the Dakota County Judicial Center, Hastings, Minnesota, for post-trial motions.

WHEREAS, Leo Feeney, Esq., and Richard Gill, Esq., appeared on behalf of the Plaintiffs; Lee La Bore, Esq., appeared on behalf of Defendant Marjorie Martin; Louise Behrendt, Esq., appeared on behalf of Defendant ANC/Alamo.

## FINDINGS OF FACT

1. The Defendants argue that Plaintiffs' counsel made improper closing arguments by misstating the law that was applicable to this case.

2. The Court gave what it felt to be proper curative instructions when it made the following two statements during final jury instructions: (1, given near the beginning of the instructions) "What the attorneys say about the law may differ from what I say. If this happens you must rely upon what I say the law is in this case." (2, given immediately before JIG 91.75) "No matter what the attorneys have argued to you in their final arguments, the law to be applied in this case is the law I am going to read you now."

3. After the verdict was entered in this case, the jury foreperson made certain statements regarding the jury deliberations that were printed in the St. Paul Pioneer Press newspaper. Defendants argue that these statements prove that the jury misapplied the law in reaching its verdict.

4. Defendants argue that a remittitur or new trial is appropriate because the jury verdict is excessive, in that it is shocking and results in plain injustice. See Hughes v. Sinclair Marketing, Inc., 389 N.W.2d 194 (Minn. 1986). Further, Defendants argue that a remittitur or new trial is appropriate because the verdict appears to have been given under the influence of passion or prejudice, and/or that the damages awarded are not justified by the evidence. See Baufield v. Safelite Glass Corp., 831 F. Supp. 713 (D.Minn. 1993).

5. Defendant ANC/Alamo failed to comply with the rental car liability "cap" provisions of Minn. Stat. § 65B.49, subd. 5(a)(1)(2).

FILED DAKOTA COUNTY
VAN A. BROSTROM, Court Administrator

NOV 03 2003

BY [signature] DEPUTY

EXHIBIT
E

## CONCLUSIONS OF LAW

1. This Court need not pass on the question of whether Plaintiffs' counsel's closing arguments were proper.

2. Regardless of whether or not Plaintiffs' attorney's closing argument contained misstatements of the law to be applied in this case, the jury received proper curative instructions in this matter when the Court expressly instructed the jurors that they must take and apply the law as given by the court and not as presented by counsel. See Bisbee v. Ruppert, 235 N.W.2d 364, 370 (Minn. 1975); Muehlhauser v. Erickson, 621 N.W.2d 24, 30 (Minn. App. 2000).

3. Under Minn. R. Evid. 606(b), a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connections therewith. The Rule allows three exceptions, dealing chiefly with outside influences affecting the verdict, none of which exist in this case. As such, the Court cannot consider the jury foreperson's newspaper statements regarding the verdict, as they would not even be admissible if sworn to and made in open court.

4. In light of the fact that there are twelve Plaintiffs to be compensated for the death of two decedents, the jury award was not so excessive or shocking so as to constitute a plain injustice. Further, given the testimony and evidence presented during the trial, the Court cannot say that the damage award is not sufficiently justified by the evidence. There is no admissible evidence that the verdict was given under the influence of passion or prejudice.

5. By failing to meet the statutory requirements of Minn. Stat. § 65B.49, subd. 5(a)(1)(2), Defendant ANC/Alamo becomes a self-insured entity with uncapped liability. Under Hertz v. State Farm, 573 N.W.2d 686 (Minn. 1998), a self-insured rental car company is primary for providing liability coverage for any loss while a customer is operating a rental vehicle. The self-insured rental car company is treated as if it had purchased a policy of auto liability insurance for each of its vehicles with itself as a named insured. See id. Such a policy, if purchased, would contain an omnibus clause extending coverage to permissive users as additional unnamed insureds. As such, the liability of the permissive driver of the rented vehicle (here, Defendant Martin) would be fully covered by virtue of the omnibus clause. See id. Accordingly, Defendant Martin is indemnified by Defendant ANC/Alamo for the losses that were sustained while she was operating the rental vehicle.

## ORDER

1. That the Defendants' motion for remittitur or a new trial is hereby denied.

2. That Defendant Martin's motion for amended findings of fact, conclusions of law, and order for judgment is hereby granted such that the following language is added:

   a. That Defendant ANC/Alamo is the primary, self-insured obligor for the entire net verdict.

   b. That Defendant Martin is to be indemnified by Defendant ANC/Alamo to the full extent of any net judgment entered in this matter.

   c. That Defendant ANC/Alamo's cross-claim for indemnity against Defendant Martin is dismissed with prejudice.

3. That all other motion(s) not granted herein are denied.

Dated: October 31, 2003

BY THE COURT:

Richard G. Spicer
Judge of District Court

2

TOTAL P.12

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

File No. C7-02-8209

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and
Allan J. Nipp, as the parent and
natural guardian of the minor
Plaintiff Andrew James Nipp,

      Plaintiffs,

v.

Marjorie Joan Martin, and ANC Rental
Corporation and its subsidiary Alamo
Rent-A-Car, LLC,

      Defendants.

FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND ORDER

WHEREAS, the above entitled matter came before the Honorable Richard G. Spicer, Judge of District Court, on February 10, 2004, at the Dakota County Judicial Center, Hastings, Minnesota.

WHEREAS, Richard Gill, Esq., appeared on behalf of the Plaintiffs; Lee La Bore, Esq., appeared on behalf of Defendant Marjorie Martin; Robert Stich, Esq., appeared on behalf of Defendant ANC/Alamo.

### FINDINGS OF FACT

1. Pursuant to the jury verdict in this matter and subsequent Order for Judgment, dated 9/24/03, Defendant Martin and ANC/Alamo are jointly and severally liable to the Plaintiffs for the amount of $2,500,000.00.

2. Pursuant to the Court's Order of 10/31/03, which added language to the 9/24/03 Order, but did not replace the previous language, Defendant ANC/Alamo is the primary, self-insured obligor for the entire net verdict, and Defendant Martin is to be indemnified by Defendant ANC/Alamo to the full extent of any net judgment entered in this matter.

### CONCLUSIONS OF LAW

1. From the papers submitted in support of the parties' motions, as well as the arguments made in court today, it is clear that while the parties agree that the Court's previous unappealed Orders are the law of this case, the parties do not agree on the meaning of those Orders. Therefore, the Court feels that clarification of those Order(s) is appropriate at this time. See Alvin v. Johnson, 71 N.W.2d 667, 668 (Minn. 1955); Minn. R. Civ. P. 60.02.



FILED
VAN A. BROSTROM   DAKOTA COUNTY
Court Administrator

FEB 10 2004

BY_____ DCB
DEPUTY

EXHIBIT
F

A76

2.   Although Defendant Martin ultimately has the right of indemnification against Defendant ANC/Alamo under the 10/31/03 Order, Defendant Martin remains jointly and severally liable to the Plaintiffs under the 9/24/03 Order. These provisions are entirely consistent with one another and neither was ever intended to negate the other. Likewise, the Court's statement that "Defendant ANC/Alamo is the primary, self-insured obligor for the entire net verdict" implies that a 'secondary' obligor (here, Defendant Martin) remains liable. This language was not intended to mean that Defendant ANC/Alamo now had sole liability in this case, to the exclusion of Defendant Martin. Further, the above-quoted language was intended to reflect Defendant ANC/Alamo's liability to Defendant Martin under principles of indemnification and was not intended to address issues involving self-insured entities under Minn. Stat. § 65B.48, subd. 3, or priority of insurance coverages under Minn. Stat. § 65B.49, subd. 3(3)(d).

3.   Under Minn. R. Civ. P. 69, "in aid of the judgment or execution, the judgment creditor,...may obtain dis covery from any person, including the judgment debtor, in the manner provided in these rules." Plaintiffs are entitled to discovery from Defendant Martin under Rule 69, as Defendant Martin remains a judgment debtor who is jointly and severally liable in this matter.

## ORDER

1.   That the Defendant Martin's motion to quash Plaintiffs' supplemental discovery and for a protective order is hereby <u>denied</u>.

2.   That the Plaintiffs' motion for clarification of the Court's 10/31/03 Order is hereby <u>granted</u> as follows:

   a.   The Court's language stating that "Defendant ANC/Alamo is the primary, self-insured obligor for the entire net verdict" was intended to reflect Defendant ANC/Alamo's liability to Defendant Martin under principles of indemnification and was not intended to address issues involving self-insured entities under Minn. Stat. § 65B.48, subd. 3, or priority of insurance coverages under Minn. Stat. § 65B.49, subd. 3(3)(d).

   b.   Although Defendant Martin ultimately has the right of indemnification against Defendant ANC/Alamo under the 10/31/03 Order, Defendant Martin remains jointly and severally liable to the Plaintiffs under the 9/24/03 Order.

3.   That all other motion(s) not granted herein are <u>denied</u>.

Dated: February 10, 2004                    BY THE COURT:

Richard C. Spicer
Judge of District Court

2

MAR-26-2004  12:02       LABORE & GIULIANI, LTD                                P.05/05

| | | | |
|---|---|---|---|
| NORTH CENTRAL OFFICE | U.S. BANK | | 1 05  206  433  Q |
| WOODBURY MINNESOTA | EAST GRAND FORKS, MINNESOTA | | |

CLAIM NUMBER  03-323, 342    DATE OF LOSS  7/14/01    NAME OF INSURED  Marjorie Martin    ISSUED DATE  3/24/04

PAY TO THE ORDER OF    Judith V. Wahlberg, as trustee for the next of kin of

Robert Louis Nipp and Virginia Ida Nipp and their attorneys, Robins, Kaplan, ETAL

Two million, four hundred forty thousand dollars and no/100----    DOLLARS  $2,440,000.00

☒ STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY    ☐ STATE FARM INDEMNITY COMPANY

☐ STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS

☐ STATE FARM GENERAL INSURANCE COMPANY                        *Cathy Houck*
                                                            AUTHORIZED SIGNATURE

☐ STATE FARM FIRE AND CASUALTY COMPANY        COMPANY LOGOS APPEAR ON BACK. HOLD AT 45° ANGLE FOR VIEWING.    AUTH. ID

⑈0519206433⑈ ⑆091215927⑆ 15210001096⑈

**EXHIBIT**

**G**

TOTAL P.05

A78

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

<table>
<tr><td>In re ANC Rental Corporation, et al.,</td><td>Case Number 01-11200 (MFW)<br>Jointly Administered</td><td>ADMINISTRATIVE<br>CLAIM REQUEST</td></tr>
</table>

**NOTE:** This form should only be used to make a claim for an administrative expense or substantial contribution under Section 503 of the Bankruptcy Code which arose after the commencement of these cases (November 13, 2001) and on or before January 30, 2004.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): | |
|---|---|
| Marjorie Joan Martin<br>c/o Fredrikson & Byron, P.A.<br>200 South Sixth Street<br>Suite 4000<br>Minneapolis, MN  55402<br>Attention:  Ryan T. Murphy<br>(612) 492-7310 | ☐ Check box if you are aware that anyone else has filed a claim for administrative expense or substantial contribution relating to your claim. Attach copy of statement giving particulars.<br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |

If address differs from above, please complete the following:
Creditor Name:

Address:                                                    Telephone #

City/St/Zip:

| Account or other number by which creditor identifies debtor:<br>N/A | Check here if   ☐ replaces<br>this claim   ☐ amends   a previously filed claim, dated _____ |
|---|---|
| **1.  Basis for Claim**<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned | ☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other __Indemnity__ |

| 2. Date debt was incurred (must be after November 13, 2001 and on or before January 30, 2004): | 3. If court judgment, date obtained (must be after November 13, 2001 and on or before January 30, 2004):<br>10/31/2003; exhibits attached |
|---|---|

**4. Total Amount of Claim:**                                        $  2,440,000.00

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim.  Attach itemized statement of all interest or additional charges.

| | This Space Is for the Debtors' Use Only |
|---|---|
| 5. **Credits:** The amount of all payments on this claim should be credited and deducted for the purpose of making this administrative claim request.<br>6. **Supporting Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>7. **Administrative Claim Bar Date:** This claim must be filed with the United States Bankruptcy for the District of Delaware on or before March 18, 2004, at 4:00 p.m. (prevailing eastern time) with a copy: (i) ANC Administrative Claims c/o Wilmer Cutler & Pickering, 399 Park Avenue, New York, New York 10022 and (ii) ANC Administrative Claims c/o Blank Rome, LLP, 1201 Market Street, Suite 800, Wilmington, DE 19801. | |

| Date<br>3/10/2004 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



**EXHIBIT**

tabbies    **H**

115586.01600/40133050v1

# ATTACHMENTS

1.    Original Summons and Complaint – Exhibit A.

2.    Amended Summons and Complaint – Exhibit B.

3.    Answer – Exhibit C.

3.    Findings of Fact, Conclusion of Law, and Order dated October 31, 2003 – Exhibit D.

4.    Findings of Fact, Conclusions of Law, and Order dated February 10, 2003 – Exhibit E.

#2939002\1

MAR-09-2004  14:55     LABORE & GIULIANI, LTD     P.21/30

WOODBURY

MAY 3 2002

CLAIM SERVICE OFFICE

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

CASE TYPE: WRONGFUL DEATH
& PERSONAL INJURY

---

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and Allan
J. Nipp, as the parent and natural guardian
of the minor plaintiff Andrew James Nipp,

---

Plaintiffs,                    SUMMONS

v.

Marjorie Joan Martin,

Defendant.

---

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to serve upon plaintiffs' attorneys an Answer

to the Complaint which is herewith served upon you, within twenty (20) days after service of this

Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be

taken against you for the relief demanded in the Complaint.

You are advised that under Rule 114 of the General Rules of Practice for the District Courts,

all civil cases are subject to Alternative Dispute Resolution (ADR) processes. Your attention is

directed to the ADR options available under that rule.

1309523.1

EXHIBIT A



MAY 3  2002

CLAIM SERVICE OFFICE

Dated this _10th_ day of _April_____, 2002.

ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.

By: _____
Leo F. Feeney (#28599)
David J. Knob (#307282)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFFS

1509523.1

2

MAR-09-2004  14:55    LABORE & GIULIANI, LTD    P.23/30
05/15/02  WED 11:19 FAX 6512227071

MAY 3  2002

CLAIM SETTLEMENT OFFICE

DISTRICT COURT

FIRST JUDICIAL DISTRICT

STATE OF MINNESOTA

COUNTY OF DAKOTA

CASE TYPE:  WRONGFUL DEATH
& PERSONAL INJURY

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and Allan
J. Nipp, as the parent and natural guardian
of the minor plaintiff Andrew James Nipp,

        Plaintiffs,

v.

Marjorie Joan Martin,

        Defendant.

COMPLAINT

Plaintiffs, for their Complaint and cause of action against the above-named defendant,

states and allege as follows:

PARTIES

I.

On October 5, 2001, Judith V. Wahlberg was appointed Trustee for the next of kin

of Robert Louis Nipp and Virginia Ida Nipp, decedents, by Order of the Honorable Donald J. Venne,

Judge of District Court, Tenth Judicial District, County of Anoka, State of Minnesota, a copy of

which Order is attached as Exhibit A.  The action on behalf of the survivors of decedents is brought

by Judith V. Wahlberg, in her appointed capacity as Trustee, against the above-named defendant in

compliance with the Minnesota Wrongful Death Statute, Minn. Stat. §573.02, et seq.  The action on

behalf of the minor plaintiff, Andrew James Nipp, is brought by his parent and natural guardian, Allan

J. Nipp.

1509573.1



A83

MAR-09-2004  14:56    LABORE & GIULIANI, LTD                    P.24/30
05/15/02  WED 11:20  FAX 6517090002

MAY 3  2002
CLAIM SERVICE OFFICE

## II.

At all times herein material, decedents Robert Louis Nipp and Virginia Ida Nipp, husband and wife, were citizens and residents of Dakota County, residing at the time of their deaths at 710 Marie Avenue, Mendota Heights, MN 55118.

## III.

At all times herein material, Allan J. Nipp was and is the father and natural guardian of minor plaintiff Andrew James Nipp (DOB 9/28/99), residing in Dakota County, at 8195 190th Street East, Hastings, MN 55033.

## IV.

Upon information and belief, and at all times herein material, defendant Marjorie Joan Martin was a citizen and resident of Pima County, Arizona, residing at 7590 Via Los Arbusto, Tucson, AZ 85750.

## V.

At all times herein material, Trustee Judith V. Wahlberg was and is a resident of Saint Louis County, residing at 5069 Country Road, Mountain Iron, MN 55768.

## VI.

The next of kin of decedents Robert and Virginia Nipp, together with their ages and relationship to decedents, are as follows:

| Name | Age | Relationship |
|------|-----|--------------|
| Christine S. Kelley | 49 | Daughter |
| Cynthia J. Nipp | 46 | Daughter |
| Judith V. Wahlberg | 42 | Daughter |
| Jeffrey R. Nipp | 40 | Son |
| Allan J. Nipp | 38 | Son |
| Amy L. Nipp | 35 | Daughter |

MAY 3 2002

CLAIM

## FACTS

### VII.

At all times herein material, Robert Louis Nipp was the owner and operator of a 1991 Ford Crown Victoria bearing Minnesota license plate EGX 778. At all times herein material, Virginia Ida Nipp, the wife of Robert Louis Nipp, was a passenger in the above-described motor vehicle. At all times herein material, Andrew James Nipp, the minor plaintiff and grandson of Robert and Virginia Nipp, was a passenger in the above-described motor vehicle.

### VIII.

At all times herein material, defendant Marjorie Joan Martin was in possession of and operating a 2001 Chevrolet Malibu bearing Minnesota license plate GGR 759. At the time of the collision, the 2001 Chevrolet Malibu was leased by defendant Marjorie Joan Martin from Alamo Rent-A-Car, Inc., a Florida corporation. Upon information and belief, Alamo Rent-A-Car, Inc. was the registered owner of the vehicle being operated by defendant Marjorie Joan Martin at the time of the collision.

### IX.

Upon information and belief, Alamo Rent-A-Car, Inc. engages in vehicle leasing services; i.e., providing vehicles for the public to lease, and, as part of its business, leased the above-described vehicle to defendant Marjorie Joan Martin from its business premises at the Minneapolis/St. Paul International Airport on July 14, 2001.

### X.

At all times herein material, Interstate highway 35E was a duly dedicated public thoroughfare located within the city of Lino Lakes, county of Anoka, state of Minnesota. Said highway, as it proceeds through the above-described area, consists of two lanes of travel

1509523.1

3

MAR-09-2004  14:56     LABORE & GIULIANI, LTD                              P.26/30
05/15/02  WED 11:20 FAX 6517910002

WOODRUFF
CLAIM SERVICE OFFICE
MAY 3   2002

MAY 3  2002

proceeding generally northbound and two lanes of travel proceeding generally southbound. A

large, unpaved grass median separates the northbound and southbound lanes of travel.

## GENERAL ALLEGATIONS

### XI.

On July 14, 2001, at approximately 5:00 p.m., Robert Louis Nipp was lawfully

operating his 1991 Ford Crown Victoria in a generally southbound direction upon Interstate 35E

in the vicinity of Lino Lakes, Minnesota. At the same time and place, defendant Marjorie Joan

Martin was operating her leased 2001 Chevrolet Malibu in a generally northbound direction upon

Interstate 35E in the vicinity of Lino Lakes, MN. At the time and place described above,

defendant's Chevrolet Malibu motor vehicle, traveling at a high rate of speed, suddenly bolted

across the divider median and entered the southbound lanes of Interstate 35E, causing a collision

with the Nipp vehicle at highway speeds. As a direct result of the foregoing high-speed collision,

Robert Louis Nipp and Virginia Ida Nipp were fatally injured. The Nipp's grandson, Andrew

James Nipp (DOB 9/28/99), a passenger in the Nipp vehicle, was taken by ambulance to North

Memorial Medical Center and admitted for injuries to his left leg, foot, head and face. As a result

of the accident, the minor child ceased ambulating and does not verbally communicate.

### XII.

The fatal injuries sustained by Robert and Virginia Nipp were proximately caused

by the negligence of defendant Marjorie Joan Martin. Consequently, the next-of-kin of Robert

Louis Nipp and Virginia Ida Nipp have sustained a permanent and final loss of all elements of

their ongoing relationship with their parents, including, but not limited to, the loss of their

services, counseling and advice and other natural and normal losses flowing from the previously

existing familial relationships including, but not limited to, loss of their care, comfort, society,

4

1509523-1

MAR-09-2004  14:57      LABORE & GIULIANI, LTD                          P.27/30

05/15/02  WED 11:21 FAX                                               WOODBURY

MAY 3  2002

CLAIM SERVICE OF LEN

assistance and guidance, all to each heir's pecuniary damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000.00).

XIII.

As a direct result of the death of Robert Louis Nipp and Virginia Ida Nipp, proximately caused and contributed to by the negligence of defendant Marjorie Joan Martin, as set forth herein, plaintiff Judith V. Wahlberg, individually, and as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, has been required to expend sums of money for medical bills, reasonable funeral and burial expenses and related items, all to her damage in a sum presently estimated to be in excess of Ten Thousand Dollars ($10,000.00).

XIV.

As a direct result of the above-described collision and the negligence of defendant the minor plaintiff, Andrew James Nipp, has sustained injuries to his person which injuries, upon information and belief, are disabling and permanent, all to his damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000).

XV.

As a direct result of the trauma sustained by minor plaintiff Andrew James Nipp, proximately caused and contributed to by the negligence of defendant Marjorie Joan Martin, as set forth herein, Allan J. Nipp, individually, and as father and natural guardian for Andrew James Nipp, has been required to expend sums of money for medical bills and related items, all to his damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000).

1509523.1

5

MAR-09-2004  14:57    LABORE & GIULIANI, LTD    P.28/30
05/15/02  WED 11:21 FAX 8517010004

MAY 3  2002

CLAIM Service Office

## NEGLIGENCE OF MARJORIE JOAN MARTIN

### XVI.

Plaintiffs Judith V. Wahlberg, individually, and as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, and Allan J. Nipp, as father and natural guardian of minor plaintiff Andrew James Nipp, reallege and incorporate the above allegations by reference as set forth more fully below.

### XVII.

At the above-described time and place, defendant Marjorie Joan Martin negligently, carelessly and unlawfully operated the subject 2001 Chevrolet Malibu motor vehicle, causing a collision with the motor vehicle operated by Robert Louis Nipp. Illustrations of such negligent, careless and unlawful conduct of defendant Marjorie Joan Martin, cited by way of example, but not limitation, are the following:

A.    Defendant Marjorie Joan Martin failed and neglected to maintain the required degree of attention in her operation of the 2001 Chevrolet Malibu rental vehicle;

B.    Defendant Marjorie Joan Martin's inattentiveness resulted in her losing complete control of the 2001 Chevrolet Malibu rental vehicle;

C.    Defendant Marjorie Joan Martin was operating the 2001 Chevrolet Malibu rental vehicle at a speed in excess of the posted speed limit at the time of and prior to the subject occurrence;

D.    Defendant Marjorie Joan Martin failed and neglected to keep the 2001 Chevrolet Malibu rental vehicle on the proper side of the highway within its designated northbound lane of travel and otherwise failed to exercise due care in

1509523.1

6

A88

MAR-09-2004  14:57     LABORE & GIULIANI, LTD                            P.29/30
05/15/02  WED 11:22 FAX 6517916064

MAY 3  2002

CLAIM SERVICE OFFICE

the operation of the vehicle, including her failing to operate said vehicle in accordance with the laws of the State of Minnesota, the rules of the road and in a generally responsible manner prior to the above-described occurrence; and defendant Marjorie Joan Martin was negligent, careless and unlawful in other ways too numerous to herein mention.

## XVIII.

Defendant Marjorie Joan Martin committed the above-described negligent, careless and unlawful acts and omissions while operating a motor vehicle upon a public thoroughfare of the State of Minnesota. As a direct and proximate result of the above-described negligence, Robert Louis Nipp and Virginia Ida Nipp sustained fatal injuries which resulted in the damages alleged to the next of kin of Robert and Virginia Nipp.

## XIX.

As a direct and proximate result of the above-described negligence of defendant, the minor plaintiff, Andrew James Nipp, sustained traumatic injuries to his person, which injuries have resulted in the alleged damages to the minor plaintiff and to Allan J. Nipp, his father and natural guardian.

WHEREFORE, plaintiff Judith V. Wahlberg, individually, and as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, prays for judgment against the defendant in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with costs and disbursements herein and reasonable attorneys' fees and Allan J. Nipp, as father and natural guardian of minor plaintiff Andrew James Nipp, prays for judgment against the defendant in an amount in excess of Fifty Thousand Dollars ($50,000), together with costs and disbursements herein and reasonable attorneys' fees.

1509529.1

7

MAR-09-2004  14:58        LABORE & GIULIANI, LTD                                    P.30/30
05/15/02  WED 11:22 FAX 6517316082      STATE FARM AND

MAY 8  2002

CLAIM SERVICE OFFICE

Dated this _10th_ day of _April_, 2002.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _____
    Leo F. Feeney (#285999)
    David J. Koob (#307282)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFFS

1509523.1

8

MAR-09-2004  15:00      LABORE & GIULIANI, LTD                                    P.02/05
05/15/02  WED 11:22 FAX 6517315002      ~~~~~ ~~~~~ ~~~~

WOODBURY

MAY 3  2002

CLAIMS SERVICE OFFICE

## ACKNOWLEDGMENT REQUIRED BY
## MINN. STAT. SEC. 549.211, SUBD. 2

        The undersigned hereby acknowledges that, pursuant to Minn. Stat. Sec. 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated this 10^{x} day of _April_, 2002.

        ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _____
    Leo F. Feeney (#28599)
    David J. Koob (#307282)

    2800 LaSalle Plaza
    800 LaSalle Avenue
    Minneapolis, Minnesota 55402-2015
    (612) 349-8500

    ATTORNEYS FOR PLAINTIFFS

9

A91

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

CASE TYPE: WRONGFUL DEATH
& PERSONAL INJURY

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and Allan
J. Nipp, as the parent and natural guardian
of the minor plaintiff Andrew James Nipp,

Plaintiffs,

v.

Marjorie Joan Martin, and ANC Rental
Corporation and its subsidiary Alamo
Rent-A-Car, LLC,

Defendants.

**AMENDED SUMMONS**

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANT:

You are hereby summoned and required to serve upon plaintiffs' attorneys an Answer

to the Amended Complaint which is herewith served upon you, within twenty (20) days after service

of this Amended Summons upon you, exclusive of the day of service. If you fail to do so, judgment

by default will be taken against you for the relief demanded in the Amended Complaint.

You are advised that under Rule 114 of the General Rules of Practice for the District Courts,

all civil cases are subject to Alternative Dispute Resolution (ADR) processes. Your attention is

directed to the ADR options available under that rule.

15060572.1

EXHIBIT B

A92

Dated this 25ᵗʰ day of _April_, 2003.

ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.

By: _(signature)_
    Leo F. Feeney (#28599)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFFS

15060572.1

2

A93

STATE OF MINNESOTA                           DISTRICT COURT

COUNTY OF DAKOTA                        FIRST JUDICIAL DISTRICT

                                        CASE TYPE: WRONGFUL DEATH
                                                & PERSONAL INJURY

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and Allan
J. Nipp, as the parent and natural guardian
of the minor plaintiff Andrew James Nipp,

          Plaintiffs,                        AMENDED COMPLAINT

v.

Marjorie Joan Martin, and ANC Rental
Corporation and its subsidiary Alamo
Rent-A-Car, LLC,

          Defendants.

          Plaintiffs, for their Amended Complaint and cause of action against the above-named

defendants, states and allege as follows:

## PARTIES

## I.

          On October 5, 2001, Judith V. Wahlberg was appointed Trustee for the next of kin

of Robert Louis Nipp and Virginia Ida Nipp, decedents, by Order of the Honorable Donald J. Venne,

Judge of District Court, Tenth Judicial District, County of Anoka, State of Minnesota, a copy of

which Order is attached as Exhibit A. The action on behalf of the survivors of decedents is brought

by Judith V. Wahlberg, in her appointed capacity as Trustee, against the above-named defendant in

compliance with the Minnesota Wrongful Death Statute, Minn. Stat. §573.02, et seq. The action on

15060572.1

behalf of the minor plaintiff, Andrew James Nipp, is brought by his parent and natural guardian, Allan J. Nipp.

II.

At all times herein material, decedents Robert Louis Nipp and Virginia Ida Nipp, husband and wife, were citizens and residents of Dakota County, residing at the time of their deaths at 710 Marie Avenue, Mendota Heights, MN 55118.

III.

At all times herein material, Allan J. Nipp was and is the father and natural guardian of minor plaintiff Andrew James Nipp (DOB 9/28/99), residing in Dakota County, at 8195 190th Street East, Hastings, MN 55033.

IV.

Upon information and belief, and at all times herein material, defendant Marjorie Joan Martin was a citizen and resident of Pima County, Arizona, residing at 7590 Via Los Arbusto, Tucson, AZ 85750.

V.

At all times herein material, Trustee Judith V. Wahlberg was and is a resident of Saint Louis County, residing at 5069 Country Road, Mountain Iron, MN 55768.

VI.

The next of kin of decedents Robert and Virginia Nipp, together with their ages and relationship to decedents, are as follows:

| Name | Age | Relationship |
|------|-----|--------------|
| Christine S. Kelley | 49 | Daughter |

15060572.1

2

A95

| Cynthia J. Nipp | 46 | Daughter |
| Judith V. Wahlberg | 42 | Daughter |
| Jeffrey R. Nipp | 40 | Son |
| Allan J. Nipp | 38 | Son |
| Amy L. Nipp | 35 | Daughter |

## VII.

At all times herein material, ANC Rental Corporation, a Delaware Corporation and its subsidiary Alamo Rent-A-Car, LLC operates one of the world's largest car rental businesses. On information and belief on July 14, 2001 Alamo, at its Minneapolis airport location, rented a Chevrolet Malibu to defendant Marjorie Joan Martin. On November 13, 2001, Defendant ANC Rental Corporation, and its subsidiary Alamo Rent-A Car, LLC filed a Chapter 11 Petition in U.S. Bankruptcy Court for the District of Delaware. In that action, Judith Wahlberg, as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, and minor plaintiff Andrew Nipp, by and through his parent and natural guardian, Allan Nipp, are named as unsecured creditors.

On April 10, 2003 an Order signed by the Honorable Mary F. Wallrath, Judge, United States Bankruptcy Court for the District of Delaware, granted relief from the automatic bankruptcy stay allowing plaintiffs to amend their Complaint to add ANC Rental Corporation, and its subsidiary Alamo Rent-A-Car, LLC as a defendant to this action. This Amended Complaint is being brought under the authority of that Order, attached hereto as Exhibit B.

15060572.1

3

A96

## FACTS

### VIII.

At all times herein material, Robert Louis Nipp was the owner and operator of a 1991 Ford Crown Victoria bearing Minnesota license plate EGX 778. At all times herein material, Virginia Ida Nipp, the wife of Robert Louis Nipp, was a passenger in the above-described motor vehicle. At all times herein material, Andrew James Nipp, the minor plaintiff and grandson of Robert and Virginia Nipp, was a passenger in the above-described motor vehicle.

### IX.

At all times herein material, defendant Marjorie Joan Martin was in possession of and operating a 2001 Chevrolet Malibu bearing Minnesota license plate GGR 759. At the time of the collision, the 2001 Chevrolet Malibu was leased by defendant Marjorie Joan Martin from Alamo Rent-A-Car, LLC. Upon information and belief, Alamo Rent-A-Car, LLC was the registered owner of the vehicle being operated by defendant Marjorie Joan Martin at the time of the collision.

### X.

Upon information and belief, Alamo Rent-A-Car, LLC engages in vehicle leasing services; i.e., providing vehicles for the public to lease, and, as part of its business, leased the above-described vehicle to defendant Marjorie Joan Martin from its business premises at the Minneapolis/St. Paul International Airport on July 14, 2001.

### XI.

At all times herein material, Interstate highway 35E was a duly dedicated public

15060572.1                                      4

thoroughfare located within the city of Lino Lakes, county of Anoka, state of Minnesota. Said

highway, as it proceeds through the above-described area, consists of two lanes of travel

proceeding generally northbound and two lanes of travel proceeding generally southbound. A

large, unpaved grass median separates the northbound and southbound lanes of travel.

## GENERAL ALLEGATIONS

### XII.

On July 14, 2001, at approximately 5:00 p.m., Robert Louis Nipp was lawfully

operating his 1991 Ford Crown Victoria in a generally southbound direction upon Interstate 35E

in the vicinity of Lino Lakes, Minnesota. At the same time and place, defendant Marjorie Joan

Martin was operating her leased 2001 Chevrolet Malibu in a generally northbound direction upon

Interstate 35E in the vicinity of Lino Lakes, MN. At the time and place described above,

defendant's Chevrolet Malibu motor vehicle, traveling at a high rate of speed, suddenly bolted

across the divider median and entered the southbound lanes of Interstate 35E, causing a collision

with the Nipp vehicle at highway speeds. As a direct result of the foregoing high-speed collision,

Robert Louis Nipp and Virginia Ida Nipp were fatally injured. The Nipp's grandson, Andrew

James Nipp, a passenger in the Nipp vehicle, was taken by ambulance to North Memorial

Medical Center and admitted for injuries to his left leg, foot, head and face. As a result of the

accident, the minor plaintiff has experienced developmental delays in speech and motor skills,

and possibly other injuries yet to be determined.

### XIII.

15060572.1

5

A98

The fatal injuries sustained by Robert and Virginia Nipp were proximately caused by the negligence of defendant Marjorie Joan Martin. Consequently, the next-of-kin of Robert Louis Nipp and Virginia Ida Nipp have sustained a permanent and final loss of all elements of their ongoing relationship with their parents, including, but not limited to, the loss of their services, counseling and advice and other natural and normal losses flowing from the previously existing familial relationships including, but not limited to, loss of their care, comfort, society, assistance and guidance, all to each heir's pecuniary damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000.00).

### XIV.

As a direct result of the death of Robert Louis Nipp and Virginia Ida Nipp, proximately caused and contributed to by the negligence of defendant Marjorie Joan Martin, as set forth herein, plaintiff Judith V. Wahlberg, individually, and as Trustee for the next of kin of Robert Louis Nipp and Virginia Ida Nipp, has been required to expend sums of money for medical bills, reasonable funeral and burial expenses and related items, all to her damage in a sum presently estimated to be in excess of Ten Thousand Dollars ($10,000.00).

### XV.

As a direct result of the above-described collision and the negligence of defendant the minor plaintiff, Andrew James Nipp, has sustained injuries to his person which injuries, upon information and belief, are disabling and permanent, all to his damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000).

### XVI.

As a direct result of the trauma sustained by minor plaintiff Andrew James Nipp,

15060572.1

6

A99

proximately caused and contributed to by the negligence of defendant Marjorie Joan Martin, as

set forth herein, Allan J. Nipp, individually, and as father and natural guardian for Andrew James

Nipp, has been required to expend sums of money for medical bills and related items, all to his

damage in a sum presently estimated to be in excess of Fifty Thousand Dollars ($50,000).

## NEGLIGENCE OF MARJORIE JOAN MARTIN

### XVII.

Plaintiffs Judith V. Wahlberg, individually, and as Trustee for the next of kin of

Robert Louis Nipp and Virginia Ida Nipp, and Allan J. Nipp, as father and natural guardian of

minor plaintiff Andrew James Nipp, reallege and incorporate the above allegations by reference

as if set forth more fully below.

### XVIII.

At the above-described time and place, defendant Marjorie Joan Martin

negligently, carelessly and unlawfully operated the subject 2001 Chevrolet Malibu motor vehicle,

causing a collision with the motor vehicle operated by Robert Louis Nipp.  Illustrations of such

negligent, careless and unlawful conduct of defendant Marjorie Joan Martin, cited by way of

example, but not limitation, are the following:

A.      Defendant Marjorie Joan Martin failed and neglected to maintain

the required degree of attention in her operation of the 2001 Chevrolet Malibu

rental vehicle;

15060572.1

7

B.      Defendant Marjorie Joan Martin's inattentiveness resulted in her losing complete control of the 2001 Chevrolet Malibu rental vehicle;

C.      Defendant Marjorie Joan Martin was operating the 2001 Chevrolet Malibu rental vehicle at a speed in excess of the posted speed limit at the time of and prior to the subject occurrence;

D.      Defendant Marjorie Joan Martin failed and neglected to keep the 2001 Chevrolet Malibu rental vehicle on the proper side of the highway within its designated northbound lane of travel and otherwise failed to exercise due care in the operation of the vehicle, including her failing to operate said vehicle in accordance with the laws of the State of Minnesota, the rules of the road and in a generally responsible manner prior to the above-described occurrence; and defendant Marjorie Joan Martin was negligent, careless and unlawful in other ways too numerous to herein mention.

XIX.

Defendant Marjorie Joan Martin committed the above-described negligent, careless and unlawful acts and omissions while operating a motor vehicle upon a public thoroughfare of the State of Minnesota. As a direct and proximate result of the above-described negligence, Robert Louis Nipp and Virginia Ida Nipp sustained fatal injuries which resulted in the damages alleged to the next of kin of Robert and Virginia Nipp.

XX.

As a direct and proximate result of the above-described negligence of defendant,

13060572.1

8

the minor plaintiff, Andrew James Nipp, sustained traumatic injuries to his person, which

injuries have resulted in the alleged damages to the minor plaintiff and to Allan J. Nipp, his

father and natural guardian.

### Negligence as to ANC Rental Corporation and its subsidiary Alamo Rent-A-Car, LLC

## VICARIOUS LIABILITY

### XXI.

Plaintiffs Judith V. Wahlberg, individually, and as Trustee for the next of kin of

Robert Louis Nipp and Virginia Ida Nipp, and Allan J. Nipp, as father and natural guardian of

minor plaintiff Andrew James Nipp, reallege and incorporate the above allegations by reference

as if set forth more fully below.

### XXII.

Defendant ANC Rental Corporation and its subsidiary Alamo Rent-A-Car, LLC,

as the owner of the vehicle causing the deaths of Robert Louis Nipp and Virginia Ida Nipp, and

the injuries to minor plaintiff Andrew Nipp, is vicariously liable for the negligence, carelessness

and unlawful conduct of the driver of its vehicle, Marjorie Joan Martin, deemed to be defendant

Alamo's agent under the provisions of Minn. Statute § 170.54.

WHEREFORE, plaintiff Judith V. Wahlberg, individually, and as Trustee for the

next of kin of Robert Louis Nipp and Virginia Ida Nipp, prays for judgment against the

defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00), together with her

costs and disbursements herein and reasonable attorneys' fees, and Allan J. Nipp, as father and

natural guardian of minor plaintiff Andrew James Nipp, prays for judgment against the

150605721                              9

A102

defendants in an amount in excess of Fifty Thousand Dollars ($50,000), together with costs his

and disbursements herein and reasonable attorneys' fees.

Dated this 25ᵗʰ day of April         , 2003.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _____
Leo F. Feeney (#28599)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFFS

15060572.1

11

A104

### ACKNOWLEDGMENT REQUIRED BY
### MINN. STAT. SEC. 549.211, SUBD. 2

The undersigned hereby acknowledges that, pursuant to Minn. Stat. Sec. 549.211, subd. 2, costs, disbursements and reasonable attorney and witness fees may be awarded to the opposing party or parties in this litigation if the Court should find the undersigned acted in bad faith, asserted a claim or defense that is frivolous and that is costly to the other party, asserted an unfounded position solely to delay the ordinary course of the proceedings or to harass, or committed a fraud upon the Court.

Dated this 25th day of _Cejuul_, 2003.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _____

Leo F. Feeney (#285999)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
(612) 349-8500

ATTORNEYS FOR PLAINTIFFS

15060572.1

12

A105

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

FILE NO.

Judith V. Wahlberg, as Trustee )
for the next of kin of Robert )
Louis Nipp and Virginia Ida Nipp )
decedents, and Allan J. Nipp, as )
the parent and natural guardian )
of the minor Plaintiff, Andrew )
James Nipp, )
                       )
          Plaintiffs, )
                       )
     vs. )
                       )
Marjorie Joan Martin, )
                       )
         Defendant. )

ANSWER

\* \* \* \*

     Comes now the Defendant, and for her Answer to the Complaint of the Plaintiffs, states and alleges as follows:

I.

     Denies each and every allegation contained in Plaintiffs' Complaint, save and except as hereinafter qualified or admitted.

II.

     That she is without sufficient information to judge the truth or falsity of Plaintiffs' Complaint and as a result, puts the Plaintiffs to the strict proof thereof.

III.

     Upon information and belief, admit paragraphs I, II, III, IV, V, VI, VII, VIII, IX, and X of Plaintiffs' Complaint.

AFFIRMATIVE DEFENSES

IV.

     As an affirmative defense the Defendant states that the

EXHIBIT C

Plaintiffs have failed to state a cause of action for which relief can be granted.

<center>V.</center>

As to the minor Plaintiff, Andrew James Nipp, the Defendant states that the Plaintiffs have failed to state a cause of action for which relief can be granted in that she has failed to fulfill a threshold requirement of Minnesota Statute §65B and related subdivisions therein.

<center>IV.</center>

WHEREFORE, the Defendant prays that the Plaintiffs take nothing by their pretended cause of action and that she be awarded her costs and disbursements herein.

LA BORE, GIULIANI, COSGRIFF & VILTOFT, LTD.

Steven L Viltoft (190615)
Attorney for Defendant
P. O. Box 70
Hopkins, Minnesota, 55343
(952) 933-3371

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded, pursuant to Minn. Stat. Sec. 549.21, Subd. 2, to the party against whom the allegations in this pleading are asserted.

Steven L. Viltoft

STATE OF MINNESOTA

COUNTY OF DAKOTA

<div style="text-align:right">

DISTRICT COURT

FIRST JUDICIAL DISTRICT

File No. C7-02-8209

</div>

---

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and
Allan J. Nipp, as the parent and
natural guardian of the minor
Plaintiff Andrew James Nipp,

     Plaintiffs,

v.

Marjorie Joan Martin, and ANC Rental
Corporation and its subsidiary Alamo
Rent-A-Car, LLC,

     Defendants.

<div style="text-align:right">

FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND ORDER

</div>

---

WHEREAS, the above entitled matter came before the Honorable Richard G. Spicer, Judge of District Court, on October 30, 2003, at the Dakota County Judicial Center, Hastings, Minnesota, for post-trial motions.

WHEREAS, Leo Feeney, Esq., and Richard Gill, Esq., appeared on behalf of the Plaintiffs; Lee La Bore, Esq., appeared on behalf of Defendant Marjorie Martin; Louise Behrendt, Esq., appeared on behalf of Defendant ANC/Alamo.

## FINDINGS OF FACT

1. The Defendants argue that Plaintiffs' counsel made improper closing arguments by misstating the law that was applicable to this case.

2. The Court gave what it felt to be proper curative instructions when it made the following two statements during final jury instructions: (1, given near the beginning of the instructions) "What the attorneys say about the law may differ from what I say. If this happens you must rely upon what I say the law is in this case." (2, given immediately before JIG 91.75) "No matter what the attorneys have argued to you in their final arguments, the law to be applied in this case is the law I am going to read you now."

3. After the verdict was entered in this case, the jury foreperson made certain statements regarding the jury deliberations that were printed in the St. Paul Pioneer Press newspaper. Defendants argue that these statements prove that the jury misapplied the law in reaching its verdict.

4. Defendants argue that a remittitur or new trial is appropriate because the jury verdict is excessive, in that it is shocking and results in plain injustice. See Hughes v. Sinclair Marketing, Inc., 389 N.W.2d 194 (Minn. 1986). Further, Defendants argue that a remittitur or new trial is appropriate because the verdict appears to have been given under the influence of passion or prejudice, and/or that the damages awarded are not justified by the evidence. See Baufield v. Safelite Glass Corp., 831 F. Supp. 713 (D.Minn. 1993).

5. Defendant ANC/Alamo failed to comply with the rental car liability "cap" provisions of Minn. Stat. § 65B.49, subd. 5(a)(1)(2).

FILED    DAKOTA COUNTY
WM A. BROSTROM, Court Administrator

NOV 03 2003

BY _____
       DEPUTY

REC'D OCT 14 2003

EXHIBIT D

## CONCLUSIONS OF LAW

1.  This Court need not pass on the question of whether Plaintiffs' counsel's closing arguments were proper.

2.  Regardless of whether or not Plaintiffs' attorney's closing argument contained misstatements of the law to be applied in this case, the jury received proper curative instructions in this matter when the Court expressly instructed the jurors that they must take and apply the law as given by the court and not as presented by counsel. See Bisbee v. Ruppert, 235 N.W.2d 364, 370 (Minn. 1975); Muehlhauser v. Erickson, 621 N.W.2d 24, 30 (Minn. App. 2000).

3.  Under Minn. R. Evid. 606(b), a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connections therewith. The Rule allows three exceptions, dealing chiefly with outside influences affecting the verdict, none of which exist in this case. As such, the Court cannot consider the jury foreperson's newspaper statements regarding the verdict, as they would not even be admissible if sworn to and made in open court.

4.  In light of the fact that there are twelve Plaintiffs to be compensated for the death of two decedents, the jury award was not so excessive or shocking so as to constitute a plain injustice. Further, given the testimony and evidence presented during the trial, the Court cannot say that the damage award is not sufficiently justified by the evidence. There is no admissible evidence that the verdict was given under the influence of passion or prejudice.

5.  By failing to meet the statutory requirements of Minn. Stat. § 65B.49, subd. 5(a)(1)(2), Defendant ANC/Alamo becomes a self-insured entity with uncapped liability. Under Hertz v. State Farm, 573 N.W.2d 686 (Minn. 1998), a self-insured rental car company is primary for providing liability coverage for any loss while a customer is operating a rental vehicle. The self-insured rental car company is treated as if it had purchased a policy of auto liability insurance for each of its vehicles with itself as a named insured. See id. Such a policy, if purchased, would contain an omnibus clause extending coverage to permissive users as additional unnamed insureds. As such, the liability of the permissive driver of the rented vehicle (here, Defendant Martin) would be fully covered by virtue of the omnibus clause. See id. Accordingly, Defendant Martin is indemnified by Defendant ANC/Alamo for the losses that were sustained while she was operating the rental vehicle.

## ORDER

1.  That the Defendants' motion for remittitur or a new trial is hereby denied.

2.  That Defendant Martin's motion for amended findings of fact, conclusions of law, and order for judgment is hereby granted such that the following language is added:

    a.  That Defendant ANC/Alamo is the primary, self-insured obligor for the entire net verdict.

    b.  That Defendant Martin is to be indemnified by Defendant ANC/Alamo to the full extent of any net judgment entered in this matter.

    c.  That Defendant ANC/Alamo's cross-claim for indemnity against Defendant Martin is dismissed with prejudice.

3.  That all other motion(s) not granted herein are denied.

Dated: October 31, 2003

BY THE COURT:

Richard G. Spicer
Judge of District Court

2

**Davis, Marina**

From:           Murphy, Ryan
Sent:           Friday, March 12, 2004 12:17 PM
To:             Davis, Marina
Subject:        RE: FedEx shipment 792449428532

please print for filing in La Bore.  Thanks.

-----Original Message-----
From: Davis, Marina
Sent: Friday, March 12, 2004 12:16 PM
To: Murphy, Ryan
Subject: FW: FedEx shipment 792449428532

-----Original Message-----
From: sysdeliv@fn3a.prod.fedex.com [mailto:sysdeliv@fn3a.prod.fedex.com]
Sent: Friday, March 12, 2004 12:12 PM
To: Davis, Marina
Subject: FedEx shipment 792449428532

Our records indicate that the shipment sent from MARINA DAVIS/FREDRIKSON & BYRON, P.A
to Claims XXX/U.S. Bankruptcy Court has been delivered.
The package was delivered on 03/12/2004 at 10:25 AM and signed for
or released by C.ORKIS.

The ship date of the shipment was 03/10/2004.

The tracking number of this shipment was 792449428532.

FedEx appreciates your business. For more information about FedEx services,
please visit our web site at http://www.fedex.com

To track the status of this shipment online please use the following:
http://www.fedex.com/cgi-bin/tracking?tracknumbers=792449428532&action=track&language=english&cntry_code=us

Disclaimer
-----------------------------------------------------------------------------
FedEx has not validated the authenticity of any email address.

1

A110



December 16, 2005

William J. Burnett, Esq.
901 North Market Street
Suite 840
Wilmington, DE 19801

> Re:   **ANC Rental Corporation, Inc. et al.**
>        **Bky. Case No. 01-11200**

Dear Mr. Burnett:

This firm represents Marjorie Joan Martin and State Farm Mutual Automobile Insurance Company ("State Farm"), Ms. Martin's auto insurer. On or about July 14, 2001, while driving a car leased from one of ANC Rental Corporation's ("ANC's") affiliates – Alamo Rent-A-Car, LLC ("Alamo"), Ms. Martin was involved in an accident in Dakota County, Minnesota. She collided with another vehicle in which Robert Lewis Nipp, Virginia Ida Nipp and Andrew James Nipp were traveling. Robert Lewis Nipp and Virginia Ida Nipp were fatally injured and Andrew James Nipp suffered injuries to his leg, foot, head and face.

Judith B. Walberg, as trustee for the next-of-kin of Robert Lewis Nipp and Virginia Ida Nipp (the "Trustee"), and Andrew James Nipp commenced a suit against Ms. Martin, Alamo, and ANC.[1] Ms. Martin filed and served an answer and crossclaim in which she denied liability and asserted a crossclaim for common law indemnity against ANC Rental Corporation.

---

[1]   On April 10, 2003, the United States Bankruptcy Court for the District of Delaware entered an Order Approving Stipulation Granting Relief from the Automatic Stay. This allowed the Trustee and Ms. Martin to assert claims against Alamo and ANC without violating the automatic stay.

Attorneys & Advisors
main  612.492.7000
fax  612.492.7077
www.fredlaw.com

MEMBER OF THE WORLD SERVICES GROUP
*A Worldwide Network of Professional Service Providers*

Fredrikson & Byron, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota
55402-1425

OFFICES
Minneapolis, London, & Monterrey, Mexico

EXHIBIT
I

William J. Burnett, Esq.
December 16, 2005
Page 2

Shortly after commencing the action, the Trustee filed a series of proofs of claim in ANC's bankruptcy case, each in the approximate amount of $3.5 million. Those claims were subsequently amended twice. The most recent proofs of claim number 6008-11 and 6013-14.

On September 24, 2003, the jury returned a $2.5 million verdict in favor of the next-of-kin of Robert Lewis Nipp and Virginia Ida Nipp and found Alamo, ANC and Ms. Martin jointly and severally liable. On October 31, 2003, the Minnesota District Court found that by failing to meet the statutory requirements of Minn. Stat. § 65B.49 (Minnesota's No-Fault Automobile Insurance Statute), ANC and Alamo became self-insured entities with unlimited liability. As a result, the Minnesota District Court found that Ms. Martin was indemnified by ANC and Alamo to the full extent of any net judgment entered in the matter. See Exhibit A.

On or about January 2004, Ms. Martin and State Farm paid the Trustee on behalf of the next-of-kin of Robert Lewis Nipp and Virginia Ida Nipp $2.44 million in full settlement of the judgment. The settlement agreement included an assignment of the Trustee's proofs of claim.

On March 12, 2004, Ms. Martin and State Farm duly and timely filed a proof of administrative claim in the amount of $2.44 million pursuant to the Court's finding that Alamo and ANC must indemnify Ms. Martin. They will be moving shortly for the payment of that administrative expense claim.

On January 5, 2005, Ms. Martin and State Farm filed a Notice of Transfer of claims notifying all parties in interest that the Trustee's proofs of claim were transferred to them and that all future notices relating to those proofs of claim should be delivered to their attorneys, Fredrikson & Byron.

On November 17, 2005, the attorney for the Trustee forwarded a copy of the Motion of the ANC Liquidating Trust for an Order Establishing Procedures for the Treatment of Certain Pre-Petition Personal Injury Claims. That motion was not served on Ms. Martin or State Farm.

Although not specifically identified in the motion, ANC Liquidating Trust apparently believes that the claims originally filed by the Trustee and assigned to Ms. Martin and State Farm are "unresolved." As demonstrated above, the claims have been liquidated by final orders entered by the Minnesota District Court. Consequently, the amount of the claims have been determined for purposes of distribution.

William J. Burnett, Esq.
December 16, 2005
Page 3

     If you disagree, please contact me.  Please also ensure that any notice relating to proofs of claim numbers 6008-11 and 6013-14 (and the previously filed proofs of claim) are served upon this firm in accordance with the notice of transfer of claim.

Very truly yours,

Ryan T. Murphy

**Direct Dial:** 612.492.7310
**Email:** rmurphy@fredlaw.com

RTM:mgd:#3209445\1 - 49695.0001
Enclosure
cc:    Lee LaBore

STATE OF MINNESOTA

COUNTY OF DAKOTA

DISTRICT COURT

FIRST JUDICIAL DISTRICT

File No. C7-02-8209

Judith V. Wahlberg, as Trustee for the
next of kin of Robert Louis Nipp and
Virginia Ida Nipp, decedents, and
Allan J. Nipp, as the parent and
natural guardian of the minor
Plaintiff Andrew James Nipp,

Plaintiffs,

v.

Marjorie Joan Martin, and ANC Rental
Corporation and its subsidiary Alamo
Rent-A-Car, LLC,

Defendants.

FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND ORDER

WHEREAS, the above entitled matter came before the Honorable Richard G. Spicer, Judge of District Court, on October 30, 2003, at the Dakota County Judicial Center, Hastings, Minnesota, for post-trial motions.

WHEREAS, Leo Feeney, Esq., and Richard Gill, Esq., appeared on behalf of the Plaintiffs; Lee La Bore, Esq., appeared on behalf of Defendant Marjorie Martin; Louise Behrendt, Esq., appeared on behalf of Defendant ANC/Alamo.

## FINDINGS OF FACT

1.  The Defendants argue that Plaintiffs' counsel made improper closing arguments by misstating the law that was applicable to this case.

2.  The Court gave what it felt to be proper curative instructions when it made the following two statements during final jury instructions: (1, given near the beginning of the instructions) "What the attorneys say about the law may differ from what I say. If this happens you must rely upon what I say the law is in this case." (2, given immediately before JIG 91.75) "No matter what the attorneys have argued to you in their final arguments, the law to be applied in this case is the law I am going to read you now."

3.  After the verdict was entered in this case, the jury foreperson made certain statements regarding the jury deliberations that were printed in the St. Paul Pioneer Press newspaper. Defendants argue that these statements prove that the jury misapplied the law in reaching its verdict.

4.  Defendants argue that a remittitur or new trial is appropriate because the jury verdict is excessive, in that it is shocking and results in plain injustice. See Hughes v. Sinclair Marketing, Inc., 389 N.W.2d 194 (Minn. 1986). Further, Defendants argue that a remittitur or new trial is appropriate because the verdict appears to have been given under the influence of passion or prejudice, and/or that the damages awarded are not justified by the evidence. See Baufield v. Safelite Glass Corp., 831 F. Supp. 713 (D.Minn. 1993).

5.  Defendant ANC/Alamo failed to comply with the rental car liability "cap" provisions of Minn. Stat. § 65B.49, subd. 5(a)(1)(2).

RECD OCT 31 2003

FILED          DAKOTA COUNTY
VAN A. BROSTROM, Court Administrator

NOV 03 2003

BY _____

DEPUTY

EXHIBIT

A

## CONCLUSIONS OF LAW

1.    This Court need not pass on the question of whether Plaintiffs' counsel's closing arguments were proper.

2.    Regardless of whether or not Plaintiffs' attorney's closing argument contained misstatements of the law to be applied in this case, the jury received proper curative instructions in this matter when the Court expressly instructed the jurors that they must take and apply the law as given by the court and not as presented by counsel. See Bisbee v. Ruppert, 235 N.W.2d 364, 370 (Minn. 1975); Muehlhauser v. Erickson, 621 N.W.2d 24, 30 (Minn. App. 2000).

3.    Under Minn. R. Evid. 606(b), a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connections therewith. The Rule allows three exceptions, dealing chiefly with outside influences affecting the verdict, none of which exist in this case. As such, the Court cannot consider the jury foreperson's newspaper statements regarding the verdict, as they would not even be admissible if sworn to and made in open court.

4.    In light of the fact that there are twelve Plaintiffs to be compensated for the death of two decedents, the jury award was not so excessive or shocking so as to constitute a plain injustice. Further, given the testimony and evidence presented during the trial, the Court cannot say that the damage award is not sufficiently justified by the evidence. There is no admissible evidence that the verdict was given under the influence of passion or prejudice.

5.    By failing to meet the statutory requirements of Minn. Stat. § 65B.49, subd. 5(a)(1)(2), Defendant ANC/Alamo becomes a self-insured entity with uncapped liability. Under Hertz v. State Farm, 573 N.W.2d 686 (Minn. 1998), a self-insured rental car company is primary for providing liability coverage for any loss while a customer is operating a rental vehicle. The self-insured rental car company is treated as if it had purchased a policy of auto liability insurance for each of its vehicles with itself as a named insured. See id. Such a policy, if purchased, would contain an omnibus clause extending coverage to permissive users as additional unnamed insureds. As such, the liability of the permissive driver of the rented vehicle (here, Defendant Martin) would be fully covered by virtue of the omnibus clause. See id. Accordingly, Defendant Martin is indemnified by Defendant ANC/Alamo for the losses that were sustained while she was operating the rental vehicle.

## ORDER

1.    That the Defendants' motion for remittitur or a new trial is hereby denied.

2.    That Defendant Martin's motion for amended findings of fact, conclusions of law, and order for judgment is hereby granted such that the following language is added:

   a.    That Defendant ANC/Alamo is the primary, self-insured obligor for the entire net verdict.

   b.    That Defendant Martin is to be indemnified by Defendant ANC/Alamo to the full extent of any net judgment entered in this matter.

   c.    That Defendant ANC/Alamo's cross-claim for indemnity against Defendant Martin is dismissed with prejudice.

3.    That all other motion(s) not granted herein are denied.

Dated: October 31, 2003

BY THE COURT:

Richard G. Spicer
Judge of District Court

2