UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
Appeal from the U.S. Bankruptcy Court
For the District of Delaware

Marjorie Joan Martin,

        Appellant,                        Appeal Case No. 1:06-cv-389

     v.

ANC Liquidating Trust,

        Appellee.

---

## APPELLEE ANC LIQUIDATING TRUST'S RESPONSE BRIEF

---

William J. Burnett (DE No. 4078)
Flaster/Greenberg, P.C.
913 Market St., Suite 1001
Wilmington, DE 19801
Telephone 302-351-1910
Facsimile 302-351-1919

-and-

Colleen A. Garrity, Esquire
Flaster/Greenberg, P.C.
Eight Penn Center, 15th Floor
Philadelphia, PA 19103
Telephone 215-279-9384
Facsimile 215-279-9917


ATTORNEYS FOR APPELLEE
ANC LIQUIDATING TRUST

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION........................................... 1

STATEMENT OF ISSUES PRESENTED AND THE APPLICABLE
STANDARD OF APPELLATE REVIEW ...................................................................... 1

STATEMENT OF THE CASE........................................................................................ 2

I.    GENERAL BANKRUPTCY BACKGROUND .......................................................... 2

II.   PREPETITION ACCIDENT AND STATE COURT PROCEEDINGS...................... 3

III.  BANKRUPTCY COURT DECISION ...................................................................... 6

SUMMARY OF THE ARGUMENT ............................................................................... 7

ARGUMENT................................................................................................................ 9

I.    MARTIN'S CLAIM IS A PREPETITION CLAIM....................................................... 9

    A.   Martin's Right to Seek Indemnification from the Debtors
        Arose at the Time Martin Executed the Rental Agreement. ................................ 9

        1.   Under Frenville, Minnesota statutes determine when
             Martin's right to payment arose................................................................ 10

           a.  Owner of rental car is vicariously liable for actions of renter. ................... 10
           b.  Rental car company's coverage is primary in connection with an
               accident involving rental car. .................................................................... 10
           c.  Vehicle owner must have insurance policy or self-insurance...................... 11

        2.   Statutory provisions are implied terms of the rental agreement
             by operation of law. ................................................................................. 12

    B.   *Frenville* is Factually Distinguishable. .............................................................. 15

II.   EVEN IF MARTIN'S CLAIM IS DEEMED TO BE A POSTPETITION
    EXPENSE, IT DOES NOT QUALIFY AS AN ADMINISTRATIVE
    EXPENSE ENTITLED TO IMMEDIATE PAYMENT UNDER
    SECTION 503(b). ..................................................................................................... 17

    A.   Martin's Claim Is Not An Actual , Necessary Cost And  Expense
        Of Preserving The Estate. .................................................................................. 17

    B.   In Any Event, Martin's Claim Would Not Be Entitled To Immediate
        Payment...........................................................................................................  19

III.  ISSUE PRECLUSION DOES NOT APPLY TO THIS MATTER............................ 20

IV.  MARTIN HAS UNCLEAN HANDS AND SHOULD BE ESTOPPED
    FROM SEEKING ADMINISTRATIVE EXPENSE STATUS. ................................ 24

V.   FRENVILLE IS ROUNDLY CRITICIZED AND SHOULD BE
    OVERRULED ........................................................................................................ 27

CONCLUSION..................................................................................................................... 29

## TABLE OF AUTHORITIES

### FEDERAL CASES

Am Flint GlassWorkers Union v. Anchor Resolution Corp.,
    198 F.3d 76, 80 (3d Cir.1999)............................................................................1

Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,
    682 F.2d 446 (3d Cir. 1982)............................................................................25

Avellino & Bienes v. M. Frenville Co., Inc. (Matter of M. Frenville Co, Inc.),
    744 F.2d 332 (3d Cir. 1984)....................................................................Passim

Arnold v. Sallie Mae Servicing Corp. (In re Arnold),
    255 B.R. 845 (Bankr. W.D. Tenn. 2000)........................................................23

Gallivan v. Springfield Post Road Corp., 110 F.3d 848 (1st Cir. 1997)............................22

Gaudiosi v. Mellon, 269 F.2d. 873 (3d. Cir. 1959)........................................................24

Grady v. A.H. Robins Co., Inc., 839 F.2d 198 (4th Cir. 1988)........................................28

Highmark, Inc. v. UTMC Health Plan, Inc. 276 F. 3d 160 (3d. Cir 2001)...........................22

In re Access Beyond Tech., Inc., 237 B.R. 32 (Bankr. D. Del. 1999)................................23

In re American Plumbing & Mechanical, Inc.,
    323 B.R. 442 (Bankr. W.D. Tex. 2005)...........................................................23

In re Amfesco Industries, Inc., 81 B.R. 777 (Bankr. E.D. N.Y. 1988)...............................28

In re Bellman Farms, Inc., 140 B.R. 986 (Bankr.D.S.D. 1991).......................................18

In re Cassidy, 892 F.2d 637 (7th Cir. 1990)...............................................................22

In re Food Barn Stores, Inc., 175 B.R. 723 (Bankr. W.D. Mo. 1994)................................28

In re Garden Ridge Corp., 323 B.R. 136 (Bankr. D. Del. 2005)......................................20

In re Hemingway Transport, Inc., 954 F.2d 1 (1st Cir. 1992)........................................28

In re Highland Group, Inc., 136 B.R. 475 (Bankr. N. D. Ohio 1992)................................28

In re Mid-American Waste Sys., Inc., 228 B.R. 816 (Bankr. D. Del. 1999).........................16

In re O'Brien Envtl. Energy, Inc., 181 F.3d 527 (3d Cir. 1999)......................................18

In re Pennsylvania Truck Lines, Inc., 189 B.R. 331 (Bankr. E.D. Pa. 1995)........................17

In re Philadelphia Mortgage Trust, 117 B.R. 820 (Bankr. E.D.Pa. 1990)...........................17

In re Pinnacle Brands, Inc. 259 B.R. 46 (Bankr.D.Del. 2001)...................................16, 18

In re Powers, 170 B.R. 480 (Bankr.D.Mass. 1994)....................................................25

In re Sky Group Int'l, Inc., 108 B.R. 86 (Bankr.W.D.Pa. 1989)....................................25

In re Sevitski, 161 B.R. 847 (Bankr. N.D. Okla. 1993)..............................................22

In re U.S. Airways, Inc., et al., 296 B.R. 673 (E.D. Va. 2003)....................................22

In re Yanks, 49 B.R. 56 (Bankr. S.D. Fla. 1985)....................................................19

Jensen v. California Dept. of Health Serv. (In re Jensen),
    127 B.R. 27 (9th Cir. BAP 1991).............................................................28

McCord v. Agard (In re Bean), 252 F.3d 113 (2d Cir. 2001)........................................23

New Valley Corp. v. Corporate Property Associates 2 and 3,
    181 F.3d 517 (3d. Cir 1999).................................................................24

Reading Co. v. Brown, 391 U.S. 471 (1968).........................................................18

Spartan Plastics v. Verco Indus. (In re Verco Indus.),
    20 B.R. 664 (B.A.P. 9th Cir. 1982)..........................................................19

United Trucking Serv., Inc. v. Trailer Rental Co. (In re United Trucking Serv., Inc.),
    851 F.2d 159................................................................................22

Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus., Inc.),
    19 F.3d 1371 (11th Cir. 1994)...............................................................19

Watson v. Parker (In re Watson), 264 B.R. 685 (10th Cir. 2001)...................................28

Wheeler v. Magdovitz (Matter of Wheeler),
    137 F.3d 299 (5th Cir. 1998)................................................................28

Zedner v. U.S., 126 S.ct. 1976 (2006).............................................................25

## STATE CASES

Christensen v. Minneapolis Mun. Employees Ret. Bd.,
    331 N.W.2d 740 (Minn. 1983).................................................................12

iv

Clapper v. Budget Oil Co., 437 N.W.2d 722 (Minn. Ct. App. 1989)................................21

Hertz Corp. v. State Farm Mutual Ins. Co.,
    573 N.W.2d 686 (Minn. 1998)...........................................….........…..…….Passim

Hauschildt v. Beckingham, 686 N.W.2d 829 (Minn. 2004)................................….....…..........21

Holman v. All Nation Ins. Co., 288 N.W.2d 244 (Minn. 1980)......................…....................14

Jablonski v. Mutual Serv. Cas. Ins. Co.,
    408 N.W.2d 854 (Minn. 1987)...........................................…....................…....14

Kuchenmeister v. Illinois Farmers Ins. Co.,
    310 N.W.2d 86 (Minn. 1981)..................................................................14

Lunderberg v. Bierman,
    63 N.W.2d 355 (Minn. 1954).........................................................…...........13

McClain v. Begley, 465 N.W.2d 680 (Minn. 1991)....................................…..............11

Mellon Bank, N.A. v. Metro Communications, Inc.,
    945 F.2d 635, 642 (3d Cir. 1991)...........................................…....................2

Pinney v. State Farm Fire and Cas. Co.,
    435 N.W.2d 105 (Minn. Ct. App. 1989)......................................................14

Pope County Board of Comm. V. Pryzmus,
    682 N.W. 2d 666 (Minn. Ct. App. 2004).....................................…............20

Shore v. Minneapolis Auto Auction, Inc.,
    410 N.W.2d 862 (Minn.App. 1987).......................................................…......13

SMA Servs., Inc. v. Weaver,
    632 N.W.2d 770 (Minn. Ct. App. 2001).....................................…..........21

Viersen v. Rosso, Beutel, Johnson, Rosso & Ebersold,
    356 N.W. 2d 333 (Minn. Ct. App. 1984).....................................…..........21

Zander v. State of Minn.,
    703 N.W. 2d 845 (Minn. Ct. App. 2005).....................................…..........20

**FEDERAL STATUTES**

11 U.S.C. § 503(b)...........................................................…........................Passim

**STATE STATUTES**

M.S.A. § 65B.42(1)…………………………………………………………………..……15

M.S.A. § 65B.42(5)……………………………………………………………………..…..15

Minn. Stat. § 65B.48…………………………………………………………..………..11, 12

M.S.A. § 65B.49, subd. 3(3)(d) ………………………………………………….11, 12, 13

M.S.A. § 65B.49, subd. 5(a)(i)(2) ………………………………………………………….12

M.S.A. § 169.09 (formerly M.S.A § 170.54) ……………………………………………10

**OTHER AUTHORITIES**

47 Am Jr. 2d *Judgments* § 496 (2007) …………………………………………………….21

2A C.J.S. *Affidavits* § 57 (2007) …………………………………………………………..2

Blacks Law Dictionary (5th ed., 1979)…………………………………………………....27

*In re Frenville*: A Critique by the National Bankruptcy
         Conference's Committee on Claims and Distributions,
         42 Bus. Law. 697, 713-714 (1986-87) …………………………………..…………………27

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

The Appellate, the ANC Liquidating Trust, is satisfied with the Statement of Appellate Jurisdiction contained in the Opening Brief of Marjorie Joan Martin.

## STATEMENT OF ISSUES PRESENTED AND THE APPLICABLE STANDARD OF APPELLATE REVIEW

The following is a list of the issues on appeal taken directly from Marjorie Joan Martin Statement Of Issues And Designation of Items For Record On Appeal.[1]

1. Did the Bankruptcy Court err in denying Martin's motion for allowance and immediate payment of her $2.44 million administrative expense claim under 11 U.S.C. §503(b)(1)(A)?

2. Did the Bankruptcy Court err in disallowing Martin's administrative expense claim on the grounds that under Minnesota law Martin's indemnification claim arose before the filing of the Debtors' petitions when Minnesota courts hold that an indemnity claim does not arise until the claim has been paid, which occurred after the Debtors' petitions were filed?

3. Did the Bankruptcy Court err by failing to hold that Martin's indemnity claim is an actual and necessary cost and expense of preserving the estates?

4. Did the Bankruptcy Court err by failing to order the Liquidating Trust of ANC Rental Corporation to immediately pay Martin's administrative expense claim?

As described in detail below, the Appellee respectfully submits that the answer to all of the above issues on appeal is no.

The applicable standard of review on this matter is as follows. This court should apply a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to its legal conclusions. See Am Flint GlassWorkers Union v. Anchor Resolution Corp., 198 F.3d 76, 80 (3d Cir.1999). When reviewing mixed questions of law and fact, this court should accept the

---

[1]     It should be noted that the Statement of Issues Section in the Opening Brief of the Appellant changes the Statement of Issues as identified on Martin's own filing. Accordingly, Martin should be limited to these issues on appeal.

bankruptcy court's findings of "historical or narrative facts unless clearly erroneous, but [should] exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (internal quotation omitted).

## STATEMENT OF THE CASE

### I.    GENERAL BANKRUPTCY BACKGROUND

Alamo Rent-A-Car and ANC Rental Corporation and other affiliated entities (the "Debtors") were one of the nation's largest rental car companies serving the most popular domestic and international travel destinations by providing quality vehicles and services to business and leisure customers. On or about November 13, 2001 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code")(Appellant's Appendix at A3).[2]

On or about June 12, 2003, the Debtors entered into that certain Asset Purchase Agreement by and among Car Acquisition Company, LLC and Cerberus Capital Management, L.P. (the "APA"), whereby the Debtors agreed to sell substantially all their assets to Car Acquisition Company, LLC, predecessor-in-interest to Vanguard Car Rental USA, Inc. (collectively, "Vanguard"). On August 21, 2003, the bankruptcy court entered the Order Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure Authorizing (I) The Sale of Certain Assets of the Debtors Free and Clear of Claims, Liabilities and Encumbrances, (II) The

---

[2]    For ease of reference and to avoid duplication, Appellee's citations to the Appendix are citations to Appellant's Appendix, unless otherwise noted. It is Appellee's contention that the Affidavit of Lee La Bore should not be used as substantive evidence. 2A C.J.S. Affidavits § 57 (2007) ("the use of affidavits is generally inappropriate in considering the merits of a case, and generally cannot be admitted as substantive evidence"). The affidavit did not constitute substantive evidence in the bankruptcy court. The affidavit constitutes hearsay and contains conclusions of law. Moreover, it denies the Trust the opportunity for cross-examination.

Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief (the "Sale Order") which, *inter alia*, approved the APA and authorized the Debtors to consummate the sale contemplated therein. On October 14, 2003, the closing of the sale of the Debtors' assets to Vanguard pursuant to the APA occurred.

On April 15, 2004, the Bankruptcy Court entered an Order Confirming the Joint Chapter 11 Liquidating Plan of the Debtors and Statutory Creditors' Committee (the "Plan"). (<u>Id</u>. at A4.) Pursuant to the Plan and Liquidating Trust Agreement executed in connection with the Plan, the Liquidating Trust was authorized to, *inter alia*, administer the remaining assets of the estate and object to claims, including the claim asserted by Martin herein. (<u>Id</u>.)

There were well over 10,000 prepetition automobile accidents, which have resulted in corresponding unsecured claims in the Debtors' cases. (<u>Id</u>. at A18.) The accident involving Marjorie Joan Martin ("Martin" or "Appellant") is identical in nearly all respects to these other accidents.

## II.    PREPETITION ACCIDENT AND STATE COURT PROCEEDINGS

Before the Petition Date, in July 2001, Alamo Rent-A-Car leased a vehicle to Martin. (Appellant's Appendix at A3 and A47.) On July 14, 2001, while driving the rented car Martin was traveling at a high rate of speed when she suddenly bolted across the divider and collided with a vehicle being driven in the other direction (Id. at A48). This accident fatally injured Robert and Virginia Nipp and seriously injured Andrew Nipp (the "Prepetition Accident"). (<u>Id</u>. at A3 and A48.)

On or about April 10, 2002, Judith B. Wahlberg, in her capacity as trustee for the next of kin of Robert and Virginia Nipp and Andrew Nipp (collectively the "Nipps") filed a lawsuit against Martin in Minnesota state court (the "Minnesota Court") for damages arising from the Prepetition Accident (the "PI Lawsuit"). (<u>Id</u>. at A4 and A43-53.)

3

On or about March 11, 2003, the Nipps filed the Motion of Judith Wahlberg as Trustee for the Next of Kin of Robert and Virginia Nipp, and Andrew Nipp, a Minor, by and Through his Parent and Natural Guardian, Allan Nipp, for Relief from Stay Under Section 362 of the Bankruptcy Code (the "Stay Relief Motion"), seeking relief to join the Debtors in the PI Lawsuit. (Appellee's Appendix at B1-31.)

The Debtors objected to the Stay Relief Motion, and the parties entered into the Stipulation Granting Relief from Automatic Stay (the "Stay Relief Stipulation"). (Id. at B32-37.) On or about April 10, 2003, the Bankruptcy Court entered an order approving the Stay Relief Stipulation, which granted relief to join the Debtors as defendants in the PI Lawsuit. (Appellant's Appendix at A57.) Importantly, it also provided that any judgment entered in excess of any applicable insurance coverage and proceeds would constitute a liquidated, prepetition claim against the Debtors. (Appellee's Appendix at B35-36.) (emphasis added).

In reliance of the entry of the Stay Relief Stipulation by the Bankruptcy Court, the Nipps filed an Amended Complaint naming Martin and the Debtors as defendants. (Appellant's Appendix at A58.) Also, following the entry of the Stay Relief Stipulation, Martin proceeded with a cross-claim against the Debtors. After stay relief was granted, the PI Lawsuit proceeded to trial. (Id. at A4.)

Shortly after the PI Lawsuit proceeded to trial, the Nipps filed proofs of claim asserting general unsecured claims in the Debtors' bankruptcy case in the aggregate amount of approximately $3.5 million. (Id.) The proofs of claim (as amended) are identified as numbers 6008-11 and 6013-14 (together, the "Proof of Claim"). (Id.)

4

Pursuant to the Stay Relief Stipulation, the Proof of Claim would become liquidated and non-contingent, and constitute a prepetition general unsecured claim against the Debtors upon the conclusion of the PI Lawsuit. (Appellee's Appendix at B35-36.)

On September 24, 2003, the jury returned a verdict in favor of the Nipps and against the driver, Martin, and as well as the vehicle owner, the Debtors. (Appellant's Appendix at A112.) In connection therewith, The Minnesota Court issued its finding of fact, conclusions of law, order for judgment and judgment whereby the Debtors were found vicariously liable for the negligence of Martin pursuant to Minn Stat. § 170.54 and judgment was entered against the defendants in the amount of $2,500,000 (the "Judgment"). (Id. at A4.)

On October 31, 2003, the Minnesota Court concluded that the Debtors did not comply with Minn. Stat. § 65B.49, which would have capped the Debtors' vicarious liability; the Minnesota Court therefore found that the Debtors were the primary, self-insured obligor for the entire net verdict. (Id. at A114-15.)

Specifically, the Minnesota Court stated that:

[b]y failing to meet the statutory requirements of Minn. Stat. § 65B.49, subd. (5)(a)(1)(2) [sic], Defendant ANC/Alamo becomes a self-insured entity with uncapped liability. Under Hertz v. State Farm, 573 N.W.2d 686 (Minn. 1998), a self-insured rental car company is primary for providing liability coverage for any loss while a customer is operating a rental vehicle. The self-insured rental car company is treated as if it had purchased a policy of auto liability insurance for each of its vehicles with itself as named insured. See id. Such a policy, if purchased, would contain an omnibus clause extending coverage to permissive users as additional unnamed insureds. As such, the liability of the permissive driver of the rented vehicle (here, Defendant Martin) would be fully covered by virtue of the omnibus clause. See id. Accordingly, Defendant Martin is indemnified by Defendant ANC/Alamo for the losses that were sustained while she was operating the rental vehicle.

(Id. at A115.)

On or about February 10, 2004, the Minnesota Court clarified its earlier order. This order reiterated that Martin remained jointly and severally liable for the Judgment and was the

5

secondary obligor. (Id. at A76-77.) The Minnesota Court also reiterated that the Debtors were obligated to indemnify Martin. (Id.)

On March 24, 2004, Martin, through her insurance company, State Farm Mutual Automobile Insurance Company, paid her liability for the judgment to the Nipps in the amount of $2,440,000 (Id. at A78).[3]

In connection with the payment of the Judgment, the Nipps assigned the Proof of Claim to Martin and a subsequent Notice of Transfer of Claims was filed in the Bankruptcy Court ((Id. at A112).

## III.    BANKRUPTCY COURT DECISION

On March 12, 2004, Martin filed an administrative expense claim in the Debtors' bankruptcy. (Appellant's Appendix at A4 and A79.)

On March 24, 2006, Martin filed the Motion of Marjorie Joan Martin for Allowance and Immediate Payment of Administrative Expense Claim (the "Administrative Claim Motion"). (Id. at A4.)

On April 20, 2006, the Liquidating Trust filed an Objection to the Administrative Claim Motion. (Id. at A4-5.)

On April 24, 2006, the Bankruptcy Court heard extensive oral argument on the Administrative Claim Motion and the Liquidating Trust's Objection thereto. (Id. at A5 and A11-36.)   On April 28, 2006, the Bankruptcy Court rightfully denied the Administrative Claim Motion, concluding:

---

[3]    It should be noted that the check from State Farm to the Nipps is dated March 24, 2004; however, the Appellants Brief at page 5 and the Affidavit of Lee Labore at page A41 paragraph 12 states that the $2.44 million dollar check was paid in January of 2004.  No explanation was given for the distinction between these dates.

Based on the conclusions of the Minnesota Court, the Court must conclude that Martin's claim is a prepetition claim. The premise of the Minnesota Court's decision is that the Debtors must be deemed to have a contract of indemnity with Martin that has no cap. *In other words, the indemnification obligation was an implied-at-law term of the actual contract between the Debtors and Martin. Therefore, the Debtors' obligation to indemnify Martin arose when the contract arose, i.e., when the car rental agreement was executed. Because the car rental agreement was executed prepetition, the indemnification obligation similarly arose prepetition.*

(Id. at A9-10.) (emphasis added).

Martin has now appealed the decision of the Bankruptcy Court and seeks administrative status and immediate payment of the claim resulting from the Prepetition Accident. (Id. at A37.)

## SUMMARY OF THE ARGUMENT

Martin seeks to transform her general, unsecured, prepetition claim for damages arising from the Prepetition Accident into an administrative expense claim because she elected to pay the Judgment postpetition. Any claim that Martin had against the Debtors existed on the day of the accident, July 14, 2001, and is a general unsecured claim. Martin uses strained semantics and unfounded assumptions to exalt her claim into a priority position not enjoyed by the thousands of other claims from prepetition accidents in this case.

In postulating her administrative expense theory, Martin relies on <u>Avellino & Bienes v. M. Frenville Co., Inc.</u>, 744 F.2d 332 (3d Cir. 1984), a roundly criticized and clearly distinguishable case from the Third Circuit.

Martin's claim against the Debtors is, at its core, a prepetition claim. It arises from a prepetition accident flowing from a prepetition rental agreement. When the Debtors and Martin executed the rental agreement prepetition, the agreement incorporated the applicable statutory provisions enacted by the Minnesota legislature to specifically address rights and obligations between the owner and driver, which may arise as a result of an automobile accident. Notwithstanding the fact that the Prepetition Accident caused by Martin was an ordinary and

7

typical accident that is contemplated by the provisions of the Minnesota statutory scheme, Martin seeks to distinguish the state law foundation of her claim to reach her coveted bankruptcy goal. To do so, Martin seizes on the term "principals of indemnity" in a Minnesota Court order while ignoring the fact that that ruling, and quite frankly, all the liability relating to the underlying Judgment at issue, emanates from and is controlled by the prevailing Minnesota statutory scheme. Because certain provisions of the Minnesota statutory scheme are implied at law to the contract between these parties, the <u>Frenville</u> decision is completely distinguishable and inapplicable on its face.

Additionally, even if Martin's claim were to be characterized as a postpetition expense, such claim should not be given administrative expense status because such expense in no way was an actual or necessary cost of administering the Debtors' estate during the case.

Further, Martin has unclear hands and should be estopped from re-characterizing of her claim for her own benefit. As the jury found, she was the at-fault driver of the vehicle, which killed the Nipps. It is undisputed that if the Nipps had a claim against the Debtors' estate, it would be a general unsecured claim. The order approving the Stay Relief Stipulation provides such treatment and the Appellants acknowledge it. Nevertheless, now comes the wrongdoer of this tragic accident, and she seeks to make her claim against the Debtor better than the victim's claim would have been had they asserted it directly. This result is inequitable and Martin should be estopped from taking this position.

Martin should also be estopped from asserting this claim theory as she benefited from the Stay Relief Stipulation but is attempting to avoid its burdens. When Martin pursued her cross-claim against the Debtors in the Minnesota Court, she took advantage of the fact that stay relief was granted by the Bankruptcy Court with respect to the litigation without seeking relief herself.

8

Subsequently, she took an assignment of, and was subrogated to the rights of the Nipps in their Proof of Claim, which were, by court order, to be treated as a general unsecured claim. Now, she seeks to better her claim when she does not like the results.

Last, notwithstanding any of the above, Martin's administrative claim theory is premised on a crumbling foundation -- Frenville, a judicial precedent, which does not comport with the Bankruptcy Code, its fundamental principals and many other Circuits in the country that have addressed this issue.

For all the foregoing reasons, the Bankruptcy Court correctly decided that Martin's claim is properly characterized as a general unsecured prepetition claim, and this appeal should be denied.

## ARGUMENT

### I.    MARTIN'S CLAIM IS A PREPETITION CLAIM.

Chief Bankruptcy Judge Walrath correctly held that Martin's claim against the Debtors' estate is a prepetition claim, concluding: "the Debtors' obligation to indemnify Martin arose when the contract arose, i.e., when the car rental agreement was executed." (Appellant's Appendix at A9.)

### A.    Martin's Right to Seek Indemnification from the Debtors Arose at the Time Martin Executed the Rental Agreement.

To determine whether a creditor's claim arose prepetition or postpetition, a court must determine "the point in time when the creditor first had a right to payment." Frenville, 744 F.2d 332; In re Pinnacle Brands, Inc. 259 B.R. 46, 51 (Bankr. D. Del. 2001).

Under Frenville, the right to payment is analyzed under applicable state law. Here, Martin's right to payment from the Debtors is governed by following provisions of the

9

Minnesota Financial Responsibility Act and the Minnesota No-Fault Automobile Insurance Act (the "No Fault Act").

1. Under Frenville, Minnesota statutes determine when Martin's right to payment arose.

    a. Owner of rental car is vicariously liable for actions of renter.

The Minnesota Financial Responsibility Act provides "[w]henever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof." M.S.A. § 169.09 (formerly M.S.A § 170.54).[4] As a result of this provision, the Debtors were vicariously liable to the Nipps for the negligence of Martin. If a rental car company does not comply with M.S.A. §65B.49, subd. 5a(i)(2), its liability is uncapped.

    b. Rental car company's coverage is primary in connection with an accident involving rental car.

---

[4] This vicariously liability provision applies to rental vehicles, but a rental car company can cap its vicarious liability by complying with § 65B.49, subd. 5a(i)(2) of the Minnesota No-Fault Automobile Insurance Act (the "No Fault Act") Section 65B.49, subd. 5a(i)(2) of the No Fault Act provides:

> notwithstanding section 169.09, subdivision 5a, an owner of a rented motor vehicle is not vicariously liable for legal damages resulting from the operation of the rented motor vehicle in an amount greater than $100,000 because of bodily injury to one person in any one accident and, subject to the limit for one person, $300,000 because of injury to two or more persons in any one accident, and $50,000 because of injury to or destruction of property of others in any one accident, if the owner of the rented motor vehicle has in effect, at the time of the accident, a policy of insurance or self-insurance, as provided in section 65B.48, subdivision 3, covering losses up to at least the amounts set forth in this paragraph.

M.S.A. §65B.49, subd. 5a(i)(2).

10

Section 65B.49, subd. 3(3)(d) of the No Fault Act also provides that the renter's insurance policy is excess (or secondary) in the event of an injury or property damage arising from the use of the rented vehicle. Consequently, the owner (the Debtors) are primary obligors. Subdivision 3(3)(d) states in relevant part:

> Every plan of reparation security shall be subject to the following provisions *which need not be contained therein:*
>
> except as provided in subdivision 5a, a residual liability insurance policy shall be excess of a nonowned vehicle policy whether the nonowned vehicle is borrowed or rented, or used for business or pleasure.

M.S.A. §65B.49, subd. 3(3)(d) (emphasis added); Hertz Corp. v. State Farm Mutual Ins. Co., 573 N.W.2d 686, 690-91 (Minn. 1998) (reading M.S.A. §65B.49, subd. 3(3)(d) to require rental car company's self-insurance to be primary coverage for accident involving rental car).

### c.    Vehicle owner must have insurance policy or self-insurance.

The No Fault Act requires the owner of a vehicle to have a "plan of reparation security" to cover personal injury and property damage arising out of the "ownership, maintenance, operation or use of the vehicle." M.S.A § 65B.48, subd. 1. To satisfy this requirement, a vehicle owner can purchase a commercial insurance policy or elect to be self-insured. See M.S.A § 65B.48, subd. 2. Minnesota has long recognized that self-insurance is the "functional equivalent of a commercial insurance" and that the certificate of self-insurance filed with the state is the functional equivalent of an insurance policy. McClain v. Begley, 465 N.W.2d 680, 682 (Minn. 1991); see also Hertz Corp., 573 N.W.2d at 689. Thus, like a commercial insurance policy, a self-insurance policy is a contract for indemnity. Id. Therefore, the Debtors, at the moment Martin rented the car, had agreed (by operation of law) to indemnify Martin. Of course, at such time Martin's right to payment was contingent.

2.    Statutory provisions are implied terms of the rental agreement by operation of law.

In the instant case, Chief Bankruptcy Judge Walrath correctly implied the statutory provisions into the rental agreement by operation of law - - the Debtors were primary obligors with an implied obligation to indemnify Martin.  Her decision is consistent with the Minnesota statutes, Minnesota Supreme Court precedent, and the legislative intent of the No Fault Act.

A rental car company bears primary responsibility for injury or damage resulting from the use of the rented vehicle.  M.S.A. §65B.49, subd. 3(3)(d); Hertz Corp., 573 N.W.2d at 690-91.  As the Minnesota Supreme Court noted in Hertz Corp. v. State Farm Mutual Ins. Co., a provision whereby a rental car company seeks to limit its liability to instances in which a renter does not have liability coverage contravenes the No Fault Act, so it is unenforceable.  The Minnesota Supreme Court noted "[t]he legislature . . . can alter contract terms by enacting statutes as long as the legislation is 'necessary to meet a broad and pressing social or economic need, if the legislation is reasonably adopted for the solution of the problem involved, and if it is not over broad or over harsh.'" Id., quoting Christensen v. Minneapolis Mun. Employees Ret. Bd., 331 N.W.2d 740, 750 (Minn. 1983).  The Minnesota Supreme Court continued "an insurer's liability is governed by the contract between the parties only as long as coverage required by law is not omitted and policy provisions do not contravene applicable statutes." Id. at 690.  Here, in contravention of the No Fault Act, the Debtors sought to contractually shift primary liability to Martin in the event of an accident.  Thus, this provision of the rental agreement was void *ab initio*.  As a result, the Debtors did not limit their liability by contract.

Therefore, §65B.49, subd. 3(3)(d) of the No Fault Act became the curative term of the contract between the parties by operation of law.  The Debtors were statutorily required to provide primary coverage for any damages resulting from the operation of the rental vehicle,

irrespective of whether this obligation was specifically set forth in the rental agreement or the Debtors' certificate of self-insurance. In accordance with § 65B.48, subd. 3 of the No Fault Act, the Debtors were self-insured. Their self-insurance was a contract for indemnity that provided coverage for damages resulting from the use of one of their rental vehicles, and thus indemnified their renters, including Martin.[5] See Hertz Corp., 573 N.W.2d at 689. Therefore, the Debtors' obligation to indemnify Martin arose at the time that she executed the rental agreement. At the time of execution, the Debtors were the primary obligors for any damages that resulted from the operation of the rental vehicle.[6] Because the Debtors were self-insured, they were deemed, as a matter of law, to have a contract of insurance that indemnified Martin.

Chief Judge Walrath's decision also comports with prior decisions of the Minnesota Supreme Court, pursuant to which it has repeatedly implied statutory provisions of the No Fault Act as curative terms in contracts by operation of law. On at least three occasions, the Minnesota Supreme Court implied statutory underinsured motorist coverage as a term of actual insurance contracts by operation of law when (i) an insurance company failed to offer underinsured motorist coverage ("UMC") to its customer; (ii) the insured did not have UMC and suffered a loss in an accident with an underinsured motorist; and (iii) the evidence demonstrated

---

[5]     Moreover, absent the provisions of the No Fault Act, Martin would not have a claim for indemnity from the Debtors for payment of the Judgment. Rather, as the actively liable tortfeasor, Martin would bear primary responsibility for the damages, and the Debtors would have a right of indemnification from Martin if they had paid any damages to the Nipps based on their vicarious liability. See Lunderberg v. Bierman, 63 N.W.2d 355, 360 (Minn. 1954)("where the owner of an automobile has become liable to a third person injured by one to whom the owner has granted permission to drive his car solely by virtue of the Financial Responsibility Act, such owner is entitled to recover indemnity from the operator of the car in the absence of any active negligence chargeable to the owner"); Shore v. Minneapolis Auto Auction, Inc., 410 N.W.2d 862, 866 (Minn.App. 1987) (same).

[6]     Although the No Fault Act permits a rental car company to cap its vicarious liability pursuant to M.S.A. §65B.49, subd. 5a(i)(2), the Debtors did not cap their liability.

13

that the insurance company failed to make the mandatory offer of UMC to its customers. Jablonski v. Mutual Serv. Cas. Ins. Co., 408 N.W.2d 854, 858 (Minn. 1987)(holding "when underinsured motorist coverage is imposed by operation of law, the scope of the coverage is to be governed by Minn.Stat. §§ 65B.41-65B.71(1978)."); Kuchenmeister v. Illinois Farmers Ins. Co., 310 N.W.2d 86 ,89 (Minn. 1981) (holding when "the statutorily mandated offer of insurance has not been made, that coverage is implied in law as included in the insured's policy at the time of the accident"); Holman v. All Nation Ins. Co., 288 N.W.2d 244, 250 (Minn. 1980) (noting "where an insurer fails to establish that the mandatory offer of underinsured coverage was made, such coverage will be read into the contract by operation of law"); see also Pinney v. State Farm Fire and Cas. Co., 435 N.W.2d 105, 107 (Minn. Ct. App. 1989) (same).

Moreover, the Bankruptcy Court's decision is consistent with the Minnesota Supreme Court's decision in Hertz Corp. v. State Farm Mutual Ins. Co.  There, the Minnesota Supreme Court determined that a contractual limitation of liability was unenforceable because it violated the No Fault Act, so it applied §65B.49, subd. 3(3)(d) of the No Fault Act by operation of law to determine a rental car company's coverage was primary. Hertz Corp., 573 N.W.2d at 690-91. Clearly, the Minnesota Supreme Court recognizes the legislature's ability to alter contractual terms by statute, and specifically that the provisions of the No Fault Act should be implied into actual contract by operation of law.

Chief Judge Walrath's decision is also consistent with the legislative intent of the No Fault Act. Minnesota legislature enacted the No Fault Act for the purposes of "reliev[ing] the severe economic distress of uncompensated victims of automobile accidents . . . by requiring automobile insurers to offer and automobile owners to maintain automobile insurance policies or *other pledges of indemnity* which will provide prompt payment of specified basic economic loss

benefits to victims of automobile accidents without regard to whose fault caused the accident" and "correct[ing] imbalances and abuses in the operation of the automobile accident tort liability system." M.S.A. §65B.42(1) and (5) (emphasis added).

In light of these purposes, it is very clear that the Minnesota legislature intended to create a statutory scheme that established the rights and obligations governing the automobile accident tort liability system. It follows that claims like Martin's, which relate to the automobile accident tort liability, were intended to be governed by the statutory scheme set forth in the No Fault Act.

### B.    *Frenville* is Factually Distinguishable.

As explained above, Martin's right to "indemnification" arises from the contract between the parties, which impliedly incorporates and is governed by the background laws in this area, the Minnesota Financial Responsibility Act and the No Fault Act. As such, Frenville, by it own terms, does not apply to the facts of this case. Therefore, Martin cannot rely on that decision to elevate her claim into an administrative claim.

Frenville addressed when the right to payment for an indemnity or contribution claim arose under New York law where no relevant written agreement or statutory scheme existed which could govern the liability of the litigants. Frenville, 744 F.2d 332. In Frenville, the Third Circuit Court specifically noted: "the present case is different from one involving an indemnity or surety contract. When parties agree in advance that one party will indemnify the other party in the event of a certain occurrence, there exists a right to payment, albeit contingent, upon the signing of the agreement . . . the right to payment exists as of the signing of the agreement, but it is dependent on the occurrence of a future event." Frenville, 744 F.2d at 336. Such a contract, as informed by the prevailing Minnesota statutory scheme, exists in this matter.

In Frenville, the debtor's secured lenders filed suit against the debtor's accounting firm alleging that they suffered damages as a result of their reasonable reliance on the financial

statements the accountants negligently and recklessly prepared. Id. The accounting firm then sought relief from the automatic stay in the debtor's bankruptcy proceeding to assert third-party claims against the debtor for indemnification and contribution. Id. The Third Circuit noted that in order to grant the accounting firm's motion for relief from the automatic stay, it must first "determine at what point [the accounting firm] had a 'right to payment' for its claim for indemnification or contribution." Id. at 336.

In so doing, the Third Circuit looked to New York common law and concluded "a claim for contribution or indemnification does not accrue at the time of the commission of the underlying act, but rather at the time of the judgment flowing from the act; notwithstanding a defendant's right to assert a claim for indemnity before such claim is technically ripe." Id. at 337. Resting on this principle, the Third Circuit held that the automatic stay did not apply because the accounting firm did not have a cause of action or right to payment under New York law or any governing contractual provision until a suit was initiated. Id.

It is important to note that in Frenville, there was neither a contract between the debtor and the accounting firm nor a statute that governed the relationship between the debtor and the accounting firm. Conversely, in the instant case, as the Bankruptcy Court found the indemnification obligation was an implied term of the rental agreement (under Minnesota's state statutory scheme), so the Debtors' obligation to indemnify Martin arose when she executed the rental agreement.

Thus, the instant case is akin to Pinnacle Brands and Mid-American Waste Sys., Inc., where the bankruptcy courts refused to extend Frenville in circumstances when an indemnity claim was grounded in a contract between the parties. In re Pinnacle Brands, 259 B.R. 46, 51 (Bankr. D. Del. 2001); In re Mid-American Waste Sys., Inc., 228 B.R. 816 (Bankr. D. Del. 1999)

16

(concluding indemnification provision in certificate of incorporation was contract for indemnity for purposes of determining when a claim arose). See also, In re Pennsylvania Truck Lines, Inc., 189 B.R. 331 (Bankr. E.D. Pa. 1995) (finding that where creditor's indemnity claim was contractual, under Frenville, the claim constituted a "contingent, pre-petition claim, subject to discharge in the Debtor's bankruptcy case[,]" and thus, necessarily could not be "accorded administrative claim status"); In re Philadelphia Mortgage Trust, 117 B.R. 820, 827 (Bankr. E.D.Pa. 1990) (noting "claims of corporate officers for indemnification and compensation for prepetition actions based upon corporate by-laws or resolutions . . . have consistently been denied administrative status due to findings by courts that such claims are prepetition claims").

In light of the above, it follows that Martin had a contingent right to payment pursuant to the No Fault Act at the time that she executed the rental agreement. Thus, her claim is only prepetition, and she is not entitled to administrative status.

Appellant attempts to twist the facts of Frenville to be exactly analogous to the instant case; however they are not. Appellants maintain that in Frenville "the parties entered into a prepetition agreement whereby the accountant would provide services to the debtor." Appellant's Opening Brief at 20. This overstates the facts of Frenville. Nowhere in the Frenville decision or in Avellino & Bienes's brief to the Third Circuit, is there any discussion of a prepetition agreement between the parties. Rather, the debtor simply engaged the accountants to provide services. Moreover, Frenville did not involve a statute, the provisions of which governed the relationship between the parties.

## II. EVEN IF MARTIN'S CLAIM IS DEEMED TO BE A POSTPETITION EXPENSE, IT DOES NOT QUALIFY AS AN ADMINISTRATIVE EXPENSE ENTITLED TO IMMEDIATE PAYMENT UNDER SECTION 503(b).

### A. Martin's Claim Is Not An Actual , Necessary Cost And Expense Of Preserving The Estate.

17

Assuming *arguendo* that Martin's claim constitutes a postpetition expense, it is not entitled to administrative status. Not every postpetition claim is treated as an administrative expense. Pinnacle, 259 B.R. at 51 (noting "postpetition claim is not automatically entitled to administrative status" (citing In re Bellman Farms, Inc., 140 B.R. 986, 994 (Bankr. D.S.D. 1991)).

A postpetition expense is properly an administrative expense if it is for the "actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b).

Courts apply the following two-pronged test to determine whether a claim is entitled to administrative expense status: (i) the expense must have arisen from a postpetition transaction between the creditor and the trustee (or DIP) and (ii) the transaction must have provided a substantial benefit to the estate. In re O'Brien Envtl. Energy, Inc., 181 F.3d 527, 532-33 (3d Cir. 1999); Pinnacle, 259 B.R. at 51.

Here, Martin cannot satisfy either prong. First, the Debtors and Martin did not enter into any postpetition transaction or have any kind of postpetition relationship that would warrant granting the claim administrative expense status. Clearly, Martin's payment to the Nipps cannot satisfy this prong.

Second, Martin attempts to stretch the Supreme Court's ruling in Reading Co. v. Brown, 391 U.S. 471 (1968) beyond reasonable limits in order to satisfy the second prong of the administrative expense test. Reading Co. and its progeny stand for the proposition that a postpetition tort claim can, in certain circumstances, give rise to an administrative expense. Here, however, any tort claim that exists arose at the time of the Prepetition Accident.

Further, assuming that this Court concludes that Martin's indemnity claim against the Debtors arose postpetition, her claim would be an equitable claim, not a tort claim. Thus, Reading Co. does not apply to the facts of this case. Accordingly, Martin cannot satisfy the administrative expense claim test.

Moreover, Section 503 of the Bankruptcy Code is not intended to afford priority status to prepetition claims. All of the relevant events and relationships that give rise to Martin's claim against the Debtors' estate arose prepetition. Martin leased the vehicle from the Debtors prior to the Petition Date. The collision with the Nipps occurred prior to the Petition Date. Martin's claim arises out of the satisfaction of the Nipps' claim, which was indisputably a prepetition claim.

The timing of when Martin paid Nipps (postpetition as opposed to prepetition) should not transform the nature of the claim. In re Yanks, 49 B.R. 56, 57-8 (Bankr. S.D. Fla. 1985)(concluding insurance company's claim for postpetition payments to insured was not entitled to administrative expense status because all of the operative acts and legal relationships occurred before the bankruptcy filing and the estate received no benefit from the payment of the losses). Holding otherwise would unfairly harm the thousands of the Debtor's other similarly situated creditors.

**B.    In Any Event, Martin's Claim Would Not Be Entitled To Immediate Payment.**

Bankruptcy courts have discretion to determine when an administrative expense will be paid. Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus., Inc.), 19 F.3d 1371, 1384 (11th Cir. 1994) (noting that the "determination of the timing of payment of administrative expenses is a matter within the discretion of the bankruptcy court); Spartan Plastics v. Verco Indus. (In re Verco Indus.), 20 B.R. 664, 665 (B.A.P. 9th Cir. 1982) (noting that the

"determination of when an administrative expenses is to be paid is within the discretion of the trial court); In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D. Del. 2005). In making this determination, courts consider the potential prejudice to the debtor, the hardship to the claimant if immediate payment is not made, and potential detriment to the other creditors. In re Garden Ridge Corp., 323 B.R. at 143.

Here, the Trust will suffer prejudice if they are required to make immediate payment of Martin's claim. The issue of whether or not the Trust is the correct party to make such a payment is the subject of a pending adversary proceeding the Debtors' bankruptcy case. The Trust maintains that pursuant to Section 2.3 of the APA and Section 25 of the Sale Order, any liability to Martin was assumed by Vanguard. Vanguard disputes this interpretation of the APA and Sale Order. This issue should be resolved before any payment is made to Martin. Moreover, ordering the Trust to make payment of Martin's claim before the adversary proceeding is resolved disadvantages the other unsecured creditors in this case as in payment of the Martin claim will substantially reduce the pool of assets available for distribution to unsecured creditors.

## III.    ISSUE PRECLUSION DOES NOT APPLY TO THIS MATTER

Contrary to the assertion by Martin, the Minnesota Court orders did not preclude the Chief Bankruptcy Judge Walrath from finding that Martin's claim was a prepetition claim for purposes of the Bankruptcy Code. Under Minnesota law, "[c]ollateral estoppel (issue preclusion) precludes litigants from raising issues that are identical with issues previously litigated and which were *necessary and essential* to the former judgment." Zander v. State of Minn., 703 N.W. 2d 845, 854 (Minn. Ct. App. 2005) (emphasis added); see also Pope County Board of Comm. V. Pryzmus, 682 N.W. 2d 666, 669 (Minn. Ct. App. 2004) (quoting Heine v. Simon, 674 N.W.2d 411, 421 (Minn. Ct. App. 2004) (noting that "[c]ollateral estoppel bars the relitigation of issues which are both identical to those issues already litigated by the parties in a

prior action and necessary and essential to the resulting judgment"). An issue is "necessary" for purposes of collateral estoppel "if, in the absence of a determination of the issue, the judgment could not have been validly rendered." 47 AM JR. 2D *Judgments* § 496 (2007).

Moreover, the issue in question "must have been *distinctly contested and directly determined* [by a court of competent jurisdiction] in the earlier adjudication for collateral estoppel to apply." Hauschildt v. Beckingham, 686 N.W.2d 829, 837-38 (Minn. 2004)(emphasis added). Further, "[t]here can be no estoppel where there is a reasonable doubt as to whether a fact was *actually* adjudicated." Viersen v. Rosso, Beutel, Johnson, Rosso & Ebersold, 356 N.W. 2d 333, 337 (Minn. Ct. App. 1984) (emphasis added); see also SMA Servs., Inc. v. Weaver, 632 N.W.2d 770, 773 (Minn. Ct. App. 2001) (noting that collateral estoppel applies only to "issues actually litigated and that were essential to a previous judgment). Additionally, the "party invoking the defense of collateral estoppel has the burden of proof." Viersen, 356 N.W.2d at 337.

As a practical matter, Minnesota courts do not apply the doctrine of issue preclusion rigidly. Hauschildt, 686 N.W.2d at 837. "Instead, the focus is on whether their application would work an injustice on the party against whom the doctrines are urged." Id.; see also Clapper v. Budget Oil Co., 437 N.W.2d 722, 725 (Minn. Ct. App. 1989) (noting that issue preclusion is a "flexible doctrine, the focus is on whether its application would work an injustice on a party against whom estoppel is urged").

In this case, at issue is when Martin's claim arose for purposes of determining whether Martin is entitled to a post-petition administrative claim under Section 11 U.S.C. § 503 of the Bankruptcy Code and Frenville. As the Minnesota Court never reached this issue, and indeed,

could not have reached this issue, collateral estoppel (issue preclusion) is inapplicable in this instance.

More specifically, entitlement to an administrative claim under Section 503 is a core proceeding under 28 U.S.C. § 157(b)(2) (B) and is "governed solely by federal bankruptcy law." In re U.S. Airways, Inc., et al., 296 B.R. 673, 680 (E.D. Va. 2003); see also Gallivan v. Springfield Post Road Corp., 110 F.3d 848, 851 (1st Cir. 1997) (noting that Section 503(b) claims "are to be assessed under federal law"); United Trucking Serv., Inc. v. Trailer Rental Co. (In re United Trucking Serv., Inc.), 851 F.2d 159, 165, n.3 (6th Cir. 1988) (referring to Section 503 claim as a question of law).

Thus, the Minnesota Court could not have decided Martin's entitlement to an administrative claim, as it was never remotely discussed in that fashion by that tribunal as this issue was not distinctly contested or directly determined. As such, the issues decided by the Minnesota Court were not identical to the issues decided by the Bankruptcy Court.

Furthermore, the determination as to whether Martin's claim was implied at law or related back to the original contract (as discussed in the Bankruptcy Court ruling below) was not necessary or essential to the determination of liability under Minnesota law. See In re Sevitski, 161 B.R. 847, 854 (Bankr. N.D. Okla. 1993) (finding that prior award of fees by state court did not establish as collateral estoppel the claimants entitlement to priority of payment of as an administrative expense claim in the bankruptcy case).

Further, the passages in the Minnesota Court's findings, that Martin pins their hopes on is dicta. Dicta has been defined as the portion of an opinion that is "not entitled to the full weight usually given judicial decisions, including any portion not necessary to the outcome of the case." In re Cassidy, 892 F.2d 637, 640 (7th Cir. 1990) (internal quotations omitted). Accordingly,

22

courts acknowledge that dicta is not covered by the doctrine of collateral estoppel and cannot have preclusive effect.  See, e.g., In re Access Beyond Tech., Inc., 237 B.R. 32, 42 (Bankr. D. Del. 1999) (noting that "[d]icta is not covered by the doctrine of collateral estoppel because the latter requires that the conclusion sought to be given preclusive effect actually formed a necessary part of the ultimate determination reached by the first court"); see also, McCord v. Agard (In re Bean), 252 F.3d 113, 118 (2d Cir. 2001) (noting that a court's *sua sponte* finding was dicta and therefore had no collateral estoppel effect); Arnold v. Sallie Mae Servicing Corp. (In re Arnold), 255 B.R. 845, 854, n.25 (Bankr. W.D. Tenn. 2000) (noting that "[d]icta is not covered by the doctrine of collateral estoppel because this doctrine requires that the conclusion sought to be given preclusive effect actually formed a necessary part of the ultimate decision reached by the court.  That is, a significant corollary to the doctrine of collateral estoppel is that dicta have no preclusive effect").

In the case at bar, Martin places much emphasis on the Minnesota Court's reference to "principles of indemnification."  This term, as employed by the Minnesota Court, was not necessary to the outcome of the legal issue before the Minnesota Court--the Debtor's obligation to indemnify Martin under Minnesota Law.  Accordingly, the Minnesota Court's use of this phrase was purely dicta and, consequently, cannot be used to force issue preclusion in this case.

Additionally, "[c]ourts generally hold that collateral estoppel or issue preclusion applies to issues of ultimate fact." 47 AM JR. 2D *Judgments* § 492 (2007).  "The question of whether a claim is properly allowable as an administrative expense claim is a question of law, not a question of fact." In re American Plumbing & Mechanical, Inc., 323 B.R. 442, 461, n.27 (Bankr. W.D. Tex. 2005).  Thus, even if the dicta expounded by the Minnesota Court was determined be

a precedential legal finding, that issue is a question of fact, not a question of law and cannot control this Court's decision here.

## IV.   MARTIN HAS UNCLEAN HANDS AND SHOULD BE ESTOPPED FROM SEEKING ADMINISTRATIVE EXPENSE STATUS.

Martin was the at-fault driver of the vehicle, which fatally injured the Nipps.  The Debtors were merely the owners of the vehicle.  Martin, of all of the parties involved in this tragedy, should be the last to be held harmless from the consequences of her actions.  The claims asserted by Martin are equitable claims yet it would certainly be inequitable to allow her to have an administrative claim status to the detriment of all other creditors in this case.

As recognized by the Third Circuit, the equitable doctrine of unclean hands may apply and prevent a party from recovery when "a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." Highmark, Inc. v. UPMC Health Plan, Inc. 276 F.3d 160, 174 (3d Cir. 2001) (citing Keystone Driller Co. v. General Excavator Co. 290 U.S. 240 (1933)); New Valley Corp. v. Corporate Property Assoc. 2 and 3, 181 F.3d 517, 525 (3d Cir. 1999).

Bestowing upon Martin, an administrative claim, in a situation where Martin's own victim would undisputedly be barred from such claim is clearly an inequitable result that should not be tolerated.  See Gaudiosi v. Mellon, 269 F.2d. 873 (3d Cir. 1959) (explaining notably that such a "startling result would be to permit than [the wrongdoer] to eat his apple with 'unclean hands.'  Justice may be blind but it isn't 'dumb.'")

Additionally, the doctrine of judicial estoppel also should prevent Martin from seeking an administrative expense claim in this matter.  Generally, the doctrine of judicial estoppel applies where "a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary

24

position, especially if it be to the prejudice of the party who acquiesced in the position formerly

taken by him." Zedner v. U.S., 126 S.Ct. 1976, 1987 (2006) (quoting Davis v. Wakelee 156 U.S.

680, 689 (1895).

Further, the Supreme Court explained that:

> Although this estoppel doctrine is equitable and thus cannot be reduced to
> a precise formula or test, several factors typically inform the decision
> whether to apply the doctrine in a particular case: First, the parties later
> position must clearly be inconsistent with its earlier position. Second,
> courts regularly inquire whether the party has succeeded in persuading a
> court to accept that party's earlier position. . . A third consideration is
> whether the party seeking to assert an inconsistent position would derive
> an unfair advantage or impose an unfair detriment on the  opposing party
> if not estopped.

Zedner, 126 S.Ct. at 187 (citations an internal quotation marks omitted; quoting New Hampshire

v. Maine, 232 U.S. 742 (2001)).

Here, Martin used the Stay Relief Stipulation to her advantage in the Minnesota

proceedings.  She did not obtain relief from the automatic stay to prosecute her cross-claims

against the Debtors.  Rather, she simply relied on the relief granted to the Nipps in the Stay

Relief Stipulation.[7]  Having received the full benefit of the Stay Relief Stipulation, Martin now

seeks to avoid any burdens imposed thereunder, namely she does not want her claim to be

limited to a liquidated, prepetition claim against the Debtors as the Stay Relief Stipulation

requires.

---

[7]    Martin contends that the Debtors demonstrated that Martin's claim was in fact a
postpetition claim by not seeking to enforce the stay against Martin as the Stay Relief Stipulation
was entered.  Appellant's position is contrary to applicable law on the automatic stay.  Debtors
have no ability no waive the automatic stay without notice to their creditors and an opportunity
for such creditors to be heard on the issue as the stay is a protection for other creditors, not just
the debtor.  See, e.g., Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682
F.2d 446, 448 (3d Cir. 1982); In re Powers, 170 B.R. 480, 483 (Bankr.D.Mass. 1994); In re Sky
Group Int'l, Inc., 108 B.R. 86,88 (Bankr.W.D.Pa. 1989).

Specifically, the Stay Relief Stipulation provides as follows:

the Automatic Stay shall be modified solely for the purpose of permitting Movants to amend their Complaint in the Minnesota Proceeding to name Debtors as a party to the action and permitting the Minnesota Proceeding, thus amended, to continue to final judgment or resolution among the parties, provided, however, no action may be taken by the Movants to execute on a judgment or otherwise attempt to collect a judgment from any of the Debtors or against the Debtors' property except as to applicable insurance coverage and proceeds, and provided further that the amount of any final judgment or final order obtained by Movants in excess of any applicable insurance coverage and proceeds shall constitute Movants liquidated, prepetition claim against the Debtors. Nothing herein shall prohibit Movants from seeking to enforce any such judgment or settlement against applicable insurance coverage. Movants will not be required to seek relief from the stay or otherwise obtain authority from this Bankruptcy Court in order to proceed against such insurance., [sic] and provided further that *the amount of any final judgment or final order obtained by Movants shall constitute Movants' liquidated, prepetition claim against the Debtors.*

(Appellee's Appendix at B35-36.)(emphasis added).

Martin's payment of the Judgment merely allows her to step into the Nipps' shoes and assert a claim against the estate. Permitting Martin to assert any other type of claim would clearly impose an unfair detriment on the Debtors' estates and the creditors.

Thus, judicial estoppel as articulated in <u>Zedner</u> applies here. Martin's position today that the Stay Relief Stipulation does not govern the treatment of her claim is certainly inconsistent with her actions taken against the Debtors in a bankruptcy proceeding, where the stay would have otherwise applied. Second, it seems that Martin succeeded in persuading the Minnesota Court and others that the stay need not apply to her in taking actions adverse to the Debtors in that case.[8] Last, Martin, the party seeking to assert an inconsistent position with respect to the stay and the Stay Relief Stipulation, is trying to derive an unfair advantage by avoiding the burdens of the clear characterization of the Proof of Claim as a general unsecured claim which

---

[8]   It should be noted that Martin cannot somehow try to rely on the <u>Frenville</u> decision to assert that the stay did not apply as is quite evident in the instant appeal. The question regarding whether <u>Frenville</u> applies is extremely murky, if not dubious, in light of the Bankruptcy Court's ruling on this topic and this appeal.

would otherwise be required by the Stay Relief Stipulation.  Thus, judicial estoppel should

prevent Martin from succeeding in its quest for an administrative claim.  See Id.

## V.    FRENVILLE IS ROUNDLY CRITICIZED AND SHOULD BE OVERRULED

In the event that this Court is inclined to classify Martin's claim as administrative on the

basis of Frenville, the Debtors respectfully submit that analysis set forth in Frenville is seriously

flawed and should be overruled.

> As one commentator noted:
>
> the court failed to consider the effect of its ruling on the determination of
> administrative expense claims under section 503(b).  If the indemnity claim
> presented in Frenville is determined to arise postpetition, is it then entitled to
> administrative expense status with priority over all prepetition claims?  This result
> would do even more violence to the Code's scheme for the treatment of indemnity
> and guaranty claims.  It seems improbable that a court would find such claims to
> be of an administrative priority since the debtor-in-possession had no dealings
> with the purported claimant.  But, it is equally troubling that these claims - if they
> are not asserted until after a plan of reorganization becomes effective - should be
> allowed to be paid in full as other post-reorganization claims.  Thus, the Frenville
> court's failure to consider the broader impact of its ruling or to narrow it carefully
> in light of the specific circumstances of the case confuses, rather than clarifies.

Ralph R. Mabey and Annette W. Jarvis, In re Frenville: A Critique by the National Bankruptcy

Conference's Committee on Claims and Distributions, 42 Bus. Law. 697, 713-714 (1986-87).

The Third Circuit's emphasis on the "right to payment" under applicable state law is

inconsistent with the Bankruptcy Code's definition of a "claim."  The Bankruptcy Code broadly

defines claim as the "right to payment whether or not such right is reduced to judgment,

liquidated, unliquidated, fixed, contingent matured, unmatured, disputed, undisputed, legal,

equitable, secured or unsecured."  11 U.S.C. § 101(5)(A).  Blacks Law Dictionary defines

contingent as "possible, but not assured; doubtful or uncertain; conditioned upon the occurrence

of some future event which is itself uncertain or questionable."  BLACK'S LAW DICTIONARY (5th

ed., 1979).

27

The majority of courts have declined to follow <u>Frenville</u>, concluding that to determine when a claim arose, "the focus should be on the time when the act giving rise to the claim was performed. Thus, for federal bankruptcy purposes, a prepetition claim may encompass a cause of action that, under the state law, is not cognizable until after the petition is filed . . . Since Congress has so provided in bankruptcy, contingent claims dependent upon a future event are prepetition claims if the underlying act creating the contingency occurred prepetition." <u>In re Food Barn Stores, Inc.</u>, 175 B.R. 723, 728 (Bankr. W.D. Mo. 1994) (quoting <u>In re Highland Group, Inc.</u>, 136 B.R. 475, 480-81 (Bankr. N. D. Ohio 1992)); <u>see also</u> <u>Watson v. Parker</u>, 264 B.R. 685, 696 (10th Cir. 2001)(refusing to follow <u>Frenville</u>); <u>Wheeler v. Magdovitz</u>, 137 F.3d 299, 301 (5th Cir. 1998)(declining to follow <u>Frenville</u>); <u>In re Hemingway Transport, Inc.</u>, 954 F.2d 1, 8 (1st Cir. 1992) (criticizing <u>Frenville</u>); <u>Jensen v. California Dept. of Health Serv.</u>, 127 B.R. 27, 30-33 (9th Cir. BAP 1991) (refusing to follow the reasoning of <u>Frenville</u>); <u>Grady v. A.H. Robins Co., Inc.</u>, 839 F.2d 198 (4th Cir. 1988) (refusing to follow <u>Frenville</u>); <u>In re Amfesco Industries, Inc.</u>, 81 B.R. 777 (Bankr. E.D. N.Y. 1988) (declining to follow <u>Frenville</u>).

Applying the reasoning of the majority of decisions in the country, in various other circuits, Martin's claim arose prepetition because all acts giving rise to the Debtors' liability, i.e. the vehicle rental and the Prepetition Accident, occurred prepetition. The date on which Martin could bring a separate claim for indemnification is irrelevant.

28

## CONCLUSION

For all of the foregoing reasons, the ANC Liquidating Trust respectfully requests that this

Court affirm the decision of the Bankruptcy.

**FLASTER/GREENBERG P.C.**

Dated: February 28, 2007                    By: _____
                                                  William J. Burnett, Esquire (DE No. 4078)
                                                  913 Market Street, Suite 1001
                                                  Wilmington, DE 19801
                                                  Telephone:    302-351-1910
                                                  Facsimile:    302-351-1919

                                                  -and-

                                                  Colleen A. Garrity, Esquire
                                                  Eight Penn Center, 15th Floor
                                                  Philadelphia, PA 19103
                                                  Telephone:    215-279-9384
                                                  Facsimile:    215-279-9917

                                                  *Counsel for the Liquidating Trust of*
                                                  *ANC Rental Corporation, et al.*