U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
Appeal from the U.S. Bankruptcy Court
For the District of Delaware


Marjorie Joan Martin,

                  Appellant,                          Appeal Case No. 1:06-cv-389

     v.

ANC Rental Corporation,

                  Appellee.

---

### APPELLANT MARJORIE JOAN MARTIN'S REPLY

---


Ryan T. Murphy, Esq.[1] (MN #311972)        Lee L. La Bore (MN #59274)
Fredrikson & Byron, P.A.,                      Steven L. Viltoft (MN #190615)
4000 Pillsbury Center                           P.O. Box 70
200 South Sixth Street                        Hopkins, MN  55343-0070
Minneapolis, MN  55402-1425


James S. Yoder (#2643)
White and Williams LLP
824 North Market Street
Suite 902
PO Box 709
Wilmington, DE 19899-0709

ATTORNEYS FOR APPELLANT
MARJORIE JOAN MARTIN

---

[1] Admitted Pro Hac Vice on June 20, 2006.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.    THE MINNESOTA DISTRICT COURT HELD THAT DEBTORS'
      LIABILITY TO MRS. MARTIN AROSE UNDER THE COMMON-LAW,
      WHICH PRECLUDED THE BANKRUPTCY COURT FROM HOLDING
      AND THE TRUST FROM ARGUING TO THE CONTRARY .......................... 3

II.   PURSUANT TO MINNESOTA LAW, MRS. MARTIN'S COMMON-LAW
      CLAIM AROSE POST-PETITION WHEN THE JUDGMENT WAS PAID. ................. 5

III.  THE MINNESOTA DISTRICT COURT HELD THAT DEBTORS WERE
      PRIMARY UNDER THE MINNESOTA NO-FAULT AUTOMOBILE
      INSURANCE STATUTE AND SEPARATELY HELD THAT DEBTORS
      WERE TO INDEMNIFY MRS. MARTIN UNDER THE COMMON-LAW. ................. 6

      A.    Despite Debtors' Attempt To Impose Their Obligations on Mrs.
            Martin, They Were Held Primarily Liable For Plaintiffs' Damages. .................... 6
      B.    The Minnesota No-Fault Automobile Insurance Statute Does Not
            Provide Mrs. Martin With A Claim Of Indemnity. .................................... 7
      C.    Mrs. Martin's Common-Law Indemnity Claim Cannot Be Implied Into
            The Agreement ....................................................................................... 10

            1.    The cases cited by the Trust have been repealed. ..................................... 10
            2.    Because Mrs. Martin's indemnity claim arose under the
                  common law, the indemnification obligation cannot be read
                  into the agreement. .......................................................................... 11
            3.    The Bankruptcy Court's reading of the indemnity obligation
                  into the actual contract between Debtors and Mrs. Martin
                  contradicts the Third Circuit's definition of an indemnity
                  agreement. ....................................................................................... 11

IV.   11 U.S.C. § 503 SETS FORTH THE REQUIREMENTS OF AN
      ADMINISTRATIVE EXPENSE CLAIM. ....................................................... 12

V.    PURSUANT TO BINDING THIRD CIRCUIT PRECEDENT, MRS.
      MARTIN'S COMMON-LAW CLAIM FOR INDEMNITY AROSE POST-
      PETITION WHEN THE JUDGMENT WAS PAID. ........................................ 12

      A.    Frenville Remains Binding Third Circuit Precedent. ............................. 12

i

B.      Mrs. Martin's Claim Arose Post-Petition at the Time She Paid the
        Judgment. .............................................................................................. 13

C.      Frenville Is Not Factually Distinguishable. ......................................... 14

D.      The Cases Cited By The Trust Are Distinguishable. ............................ 15

VI.    MRS. MARTIN'S INDEMNITY CLAIM IS AN ACTUAL, NECESSARY
       COST AND EXPENSE OF PRESERVING DEBTORS' ESTATE. .............................. 15

VII.   THE BANKRUPTCY CODE OBLIGATES THE TRUST TO
       IMMEDIATELY PAY MRS. MARTIN'S ADMINISTRATIVE EXPENSE
       CLAIM. ......................................................................................................... 17

VIII.  THE TRUST'S UNCLEAN HANDS ARGUMENT LACKS MERIT. .......................... 18

CONCLUSION ........................................................................................................... 19

WILDMS 142344v.1

## TABLE OF AUTHORITIES

### FEDERAL CASES

In re B. Cohen & Sons Caterers, Inc., 143 B.R. 27 (E.D. Penn. 1992) ..........................................15

In re Bruce D. Yanke, 225 B.R. 428 (Bankr. D. Minn. 1998)........................................................5

In re Charlesbank Laundry, Inc., 755 F.2d 200 (1st Cir. 1985).....................................................15

Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950 (1st Cir.
    1976) ...........................................................................................................................12

In re Defense Investments, Inc., 186 B.R. 671 (Bankr. D. Minn. 1995) ..........................................5

Dixon v. Northwestern National Bank of Minneapolis, 275 F. Supp. 582 (D. Minn. 1967)...........5

Avellino & Bienes v. Frenville Co., Inc. (In re Frenville Co., Inc.,
    744 F.2d at 33 .............................................................11, 12, 13, 14, 15, 17, 18

Jones v. Chunetron Corp., 212 F.3d 199 (3d Cir. 2000)...............................................................12

In re Met-L-Wood Corp., 115 B.R. 133 (N.D. Ill. 1990) ............................................................17

Penn. Department of Eng. Resources v. Tri-State Clinical Laboratories, Inc., 178 F.2d
    685 (3d. Cir. 1999)........................................................................................................12

Reading Co. v. Brown, 391 U.S. 471 (1968)..........................................................................15, 16

United States v. Mitlow, 714 F.2d 294 (3d Cir. 1983) ..................................................................12

Vansten Bondholders Protective Committee v. Green, 329 U.S. 156 (1946) ...............................12

In re W.R. Grace & Co., Inc., 281 B.R. 852 (Bankr. D. Del. 2002)...............................................12

In re Yanks, 49 B.R. 56 (Bankr. S.D. Fla. 1985).........................................................................17

York v. N.L.R.B., 709 F.2d 1138 (7th Cir. 1983).........................................................................16

### STATE CASES

City of Wilmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872 (Minn. 1994) ……………..5

Hauer v. Integrity Mutual Insurance Co., 352 N.W.2d 406 (Minn. 1984) ...................................10

Hertz Corp. v. State Farm, 573 N.W.2d 686 (Minn. 1998) ........................................7, 8, 9, 10, 11

<u>McClain v. Begley</u>, 465 N.W.2d 680 (Minn. 1991) ................................................................8, 9

<u>Roering v. Grinnell Mutual Reinsurance Co.</u>, 444 N.W.2d 829 (Minn. 1989) ...........................11

<u>Trapp v. R-Vee Corp.</u>, 359 N.W.2d 323 (Minn. Ct. App. 1984)..................................................5

## FEDERAL STATUTES

11 U.S.C. § 101(5) ......................................................................................................................14

11 U.S.C. § 1129(a)(9)(A) ..........................................................................................................17

11 U.S.C. § 362(a)(1)...................................................................................................................18

11 U.S.C. § 503...............................................................................................1, 3, 4, 12, 15, 19

## STATE STATUTES

Minn. Stat. § 65B.48 ......................................................................................................................7

Minn. Stat. § 65B.49 ................................................................................................................7, 18

Minn. Stat. § 169.09................................................................................................................6, 18

## OTHER AUTHORITIES

Black's Law Dictionary (6th ed. 1990)..........................................................................................4

<u>Ralph R. Mabey and Annette W. Jarvis, In re Frenville: A Critique by the National
    Bankruptcy Conference's Committee on Claims and Distributions,</u> 42 Bus. Law.
    697 (1986-87)......................................................................................................................12

# INTRODUCTION[2]

Mrs. Martin rented a car from Debtors.  Mrs. Martin was involved in an accident.  In violation of the Minnesota No-Fault Automobile Insurance Statute, Debtors attempted to impose upon Mrs. Martin the obligation to provide primary coverage under the rental agreement.

After the filing of Debtors' bankruptcy cases, Plaintiffs commenced an action against Mrs. Martin and Debtors.  Mrs. Martin and Debtors asserted competing indemnity claims.  After trial, Mrs. Martin and the Debtors were found to be jointly and severally liable.  The Minnesota district court held that Debtors were primarily liable and also granted Mrs. Martin's common-law indemnity claim against Debtors for the net amount of the judgment.

Mrs. Martin paid the judgment and filed a motion to allow and compel payment of her common-law indemnity as an administrative expense under 11 U.S.C. § 503.  To constitute an administrative claim under section 503, the claim must arise after the filing of the petition and be incident to the operation of the debtor's business.

Mrs. Martin's claim qualified as an administrative expense because, under Third Circuit precedent and Minnesota law, a common-law indemnity claim arises when the judgment is paid or, at the earliest, when a defendant is permitted to institute a third-party suit against one who may be liable.  Here, both events occurred post-petition.  Moreover, the rationale underlying the Supreme Court's holding in <u>Reading Company v. Brown</u> -- a post-petition tort claim is an expense incident to the operation of a debtor's business -- applies equally to Mrs. Martin's common-law indemnity claim.

Contrary to Third Circuit precedent, Minnesota law, and the Supreme Court's Rationale, the Bankruptcy Court held that Mrs. Martin's claim was not an allowed administrative claim

---

[2]  Capitalized terms have the meaning ascribed to them in Appellant Marjorie Joan Martin's Opening Brief.

1

because it arose prior to the filing of Debtors' cases when the parties entered into the rental agreement   To reach this conclusion, the Bankruptcy Court held that Mrs. Martin's indemnity obligation was an implied-at-law term in the rental agreement between Mrs. Martin and Debtors pursuant to the Minnesota No-Fault Automobile Insurance Statute.

Mrs. Martin timely appealed the Bankruptcy Court's Opinion.  The Bankruptcy Court and the Trust in its Response conflated Mrs. Martin's common-law indemnity claim with the determination of whose coverage is primary under the Minnesota No-Fault Automobile Insurance Statute.  The Minnesota district court expressly and necessarily held that Mrs. Martin's claim arose under the common-law.  As a result, the Bankruptcy Court was precluded from holding to the contrary.  In fact, the Minnesota No-Fault Automobile Insurance Statute does not provide Mrs. Martin with a claim of indemnity.

Under controlling Third Circuit precedent and Minnesota law, a common-law indemnity claim arises when the judgment is paid or, at the earliest, when a defendant is permitted to institute a third-party suit.  The Trust's calls to overturn this Third Circuit law must be rejected because this Court is bound by circuit precedent.

The Trust also attacks that fact that Mrs. Martin's claim is an expense incident to the operation of Debtors' business on the grounds that it is not a tort claim as in Reading Company. But the Trust fails to refute that rationale employed by the Supreme Court in reaching its holding.  It is equitable to allow as an administrative claim an expense suffered by those injured post-petition by the debtor's business.  In addition, post-petition obligations of a bankruptcy estate should be imposed on the party who bears the cost of purchasing insurance, and the injured party should enjoy the same priority as the expense for insurance.

The Trust's two final arguments should also be rejected.  The Bankruptcy Code obligates an allowed administrative expense to be paid when the plan of reorganization becomes effective. Because Debtors' plan has been effective for almost two years, Mrs. Martin is entitled to immediate payment of her claim.  Further, the Trust's unclean hands argument lacks merit, particularly in light of the fact that Debtors attempted to impose their obligations on Mrs. Martin in violation of state-law and the Debtors and the Trust have taken inconsistent positions on when Mrs. Martin's claim arose.

Accordingly, Mrs. Martin respectfully requests that this Court reverse the Bankruptcy Court's Opinion and enter an order allowing Mrs. Martin's administrative claim in the amount of $2.44 million and ordering Debtors and the Trust to immediately pay the same.

## ARGUMENT

**I.      THE MINNESOTA DISTRICT COURT HELD THAT DEBTORS' LIABILITY TO MRS. MARTIN AROSE UNDER THE COMMON-LAW, WHICH PRECLUDED THE BANKRUPTCY COURT FROM HOLDING AND THE TRUST FROM ARGUING TO THE CONTRARY.**

As demonstrated in Mrs. Martin's Opening Brief, the Minnesota district court held that Mrs. Martin's indemnity claim arose under the common-law.  Indeed, the Minnesota district court invoked the common-law by utilizing the phrase "principles of indemnification" and expressly held that this liability was distinct from Debtors' and Mrs. Martin's liability to Plaintiffs under the Minnesota No-Fault Automobile Insurance Statute.  (AA. p. A77.)  This precluded the Bankruptcy Court from holding that Mrs. Martin's claim arose under the Minnesota No-Fault Automobile Insurance Statute.  (See id. at A.8-9.)  The Trust's arguments that issue preclusion is inapplicable lack merit.

The Trust argues that issue preclusion does not apply because the Minnesota district court never determined whether a claim is properly allowable as an administrative expense claim

WILDMS 142344v.1

under 11 U.S.C. § 503.  (Trust Response at 21.)  The Trust's argument misses the point entirely. The issue of whether Debtors' liability arose under the common-law and the issue of whether Mrs. Martin is entitled to a post-petition administrative claim under Bankruptcy Code section 503 are separate.  Mrs. Martin does not contend that Minnesota district court ruled on the latter issue, only that its determination of Debtors' common-law liability to Mrs. Martin remains a settled point subject to issue preclusion.

The Trust does not dispute that Minnesota district court invoked the common-law when holding that Mrs. Martin's claim arose under the common law.  Instead, the Trust argues that the holding is mere dicta[3] and, therefore, "not necessary to the outcome of the legal issue before the Minnesota Court – the Debtors' obligation to indemnify Martin under Minnesota law."  (Trust Response at 23.)  The Minnesota district court's holding was a determination of competing claims placed in dispute by the parties.  Mrs. Martin and Debtors had asserted competing indemnity claims.  (AA. p. 75.)  The Minnesota district court resolved this fundamental dispute over liability by holding Mrs. Martin was entitled to indemnification under the Minnesota common-law and dismissing Debtors' claim of indemnity.  (Id.)  The case pending before the Minnesota district court could <u>not</u> have been resolved without ruling on those opposing claims.

Finally, the Trust argues that issue preclusion applies only to a question of fact, not law. (Trust Response at 23.)  Minnesota courts apply issue preclusion to bar a party from relitigating a

---

3    Black's Law Dictionary defines "dicta" as:

Opinions of a judge which do not embody the resolution or determination of the specific case before the court.  Expressions in the court's opinion which go beyond the facts before the court and therefore are individual views of the author of opinion and not binding in subsequent cases as legal precedent.  <u>State ex rel. Foster v. Naftalin</u>, 246 Minn. 181, 74 N.W.2d 249.

Black's Law Dictionary 454 (6th ed. 1990).

WILDMS 142344v.1

question of law.  See, e.g., In re Bruce D. Yanke, 225 B.R. 428, 435 (Bankr. D. Minn. 1998) (Issue preclusion "prohibits a party from relitigating issues of law or fact that were decided in an earlier action to which it was a party."); In re Def Investments, Inc. 186 B.R. 671, 682 (Bankr. D. Minn. 1995) ("The preclusive effect of a judgment on the merits will not be defeated by a showing that the former judgment was incorrect or that the previous court's reasoning or assessment of applicable legal principles was erroneous.").   Indeed, the Bankruptcy Court recognized the preclusive effect of the Minnesota district court's determination of the nature of Mrs. Martin's claim.   (AA. p. A8.) ("[T]o settle this dispute the Court must look to the conclusions of the Minnesota Court to determine on what basis and when the indemnification claim arose.").  The Bankruptcy Court simply misapplied the Minnesota district court's holding.

## II.    PURSUANT TO MINNESOTA LAW, MRS. MARTIN'S COMMON-LAW CLAIM AROSE POST-PETITION WHEN THE JUDGMENT WAS PAID.

As described above, the Minnesota district court held that Mrs. Martin's right to payment is based on the common-law right of indemnification.  The Trust does not dispute that, under Minnesota law, Mrs. Martin's claim of indemnity does not arise at the time of the accident; rather, the claim arises at the time she paid the Plaintiffs' judgment.  See Dixon v. Northwestern Nat'l Bank of Minneapolis, 275 F. Supp. 582, 584 (D. Minn. 1967); City of Wilmar v. Short-Elliott-Hendrickson, Inc., 512 N.W.2d 872, 874-75 (Minn. 1994); Trapp v. R-Vee Corp., 359 N.W.2d 323, 327 (Minn. Ct. App. 1984).  Mrs. Martin paid the judgment in March 2004, which is over three years after Debtors filed for bankruptcy.  Accordingly, Mrs. Martin's claim arose after the filing of Debtors' bankruptcy petitions.

### III. THE MINNESOTA DISTRICT COURT HELD THAT DEBTORS WERE PRIMARY UNDER THE MINNESOTA NO-FAULT AUTOMOBILE INSURANCE STATUTE AND SEPARATELY HELD THAT DEBTORS WERE TO INDEMNIFY MRS. MARTIN UNDER THE COMMON-LAW.

Mrs. Martin agrees with the Trust's recitation of the general precepts of the Minnesota No-Fault Automobile Insurance Statute, i.e., that Debtors were vicariously liable to the Plaintiffs, that Debtors were "primary" as to the damages sustained by Plaintiffs, and that Debtors' liability was uncapped. There, however, the parties' agreement ends.

The Bankruptcy Court and Trust conflated the Minnesota district court's holding that Debtors were primary under the Minnesota No-Fault Automobile Insurance Statute with that court's holding that Mrs. Martin was entitled to be indemnified under the common-law by Debtors. The Minnesota No-Fault Automobile Insurance Statute provides Mrs. Martin with no right of indemnification. Accordingly, the Bankruptcy Court erred in implying the common-law claim into the rental agreement.

### A. Despite Debtors' Attempt To Impose Their Obligations on Mrs. Martin, They Were Held Primarily Liable For Plaintiffs' Damages.

It is undisputed that both Mrs. Martin and Debtors were found jointly and severally liable to Plaintiffs for their damages. (AA. p. A77.) Debtors, as the owner of a rental car, were vicariously liable for the actions of their agent, Mrs. Martin. See Minn. Stat. § 169.09, subd. 5(a).

Each party, however, contended that the other was primary as to the damages sustained by Plaintiffs. In support of their argument, Debtors relied on the rental agreement, which provided Mrs. Martin was primary. In contrast, Mrs. Martin asserted that the rental agreement violated the Minnesota No-Fault Automobile Insurance Statute, which established Debtors were primary.

In accordance with established case law, the Minnesota district court employed the "conceptual policy approach" by hypothesizing that Debtors purchased a policy naming themselves as insureds with an omnibus clause extending coverage to Mrs. Martin.  (AA. p. A75); see also Hertz Corp. v. State Farm, 573 N.W.2d 686, 689-90 (Minn. 1998).  Because the rental agreement conflicted with the conceptual policy approach, the Minnesota district court struck the offending language in the rental agreement.  (AA. p. A75); see also Hertz Corp., 573 N.W.2d at 690 ("We conclude that the provision of the rental agreement purporting to limit Hertz' liability obligation to situations in which there is no other coverage, contravenes the No-Fault Act and is, therefore, unenforceable.").  Accordingly, the Minnesota district court held that Debtors were primary.  (AA. p. A75); Minn. Stat. § 65B.49 subd. 3(3)(d).

Moreover, Debtors' liability was uncapped.  The Minnesota No-Fault Automobile Insurance Statute permits a rental car company to cap its liability by filing an appropriate certificate with the Commissioner.  Minn. Stat. § 65B.48 subd. 3.  Debtors, admittedly, failed to file a certificate of insurance.  (Trust Response at 13 n.6.)  Accordingly, their liability was uncapped.  (AA. p. A75.)

**B.**    **The Minnesota No-Fault Automobile Insurance Statute Does Not Provide Mrs. Martin With A Claim Of Indemnity.**

The Bankruptcy Court held and the Trust repeatedly argues that Debtors were obligated to indemnify Mrs. Martin under the Minnesota No-Fault Automobile Insurance Statute. (AA. p. A9; Trust Response at 11.)    To the contrary, Mrs. Martin possesses no right of indemnification under that statute.  Indeed, the Bankruptcy Court and Trust have failed to cite to any provision that provides Mrs. Martin with such a right.

Instead, the Bankruptcy Court cited Hertz Corp. for the proposition that, from the primary determination, Mrs. Martin's was deemed to have an indemnity contract with Debtors.

(AA. p. A9.)  The Trust also cites <u>McClain v. Begley</u>, 465 N.W.2d 680 (Minn. 1991).  Neither decision supports this proposition.

In both cases, a dispute existed as to which insurer was primary and the limits of that primary obligation.  <u>Hertz Corp.</u>, 573 N.W.2d at 686; <u>McClain</u>, 465 N.W.2d at 682. Accordingly, the sole issue before the courts was who provided primary coverage for the damages suffered by the plaintiff.  Neither decision addressed the salient issue here – what claims arise when a party who is not primary pays the damages sustained by the plaintiff. Indeed, the Minnesota district court expressly held that Mrs. Martin's indemnity claim did not arise under the Minnesota No-Fault Automobile Insurance Statute.  (AA. p. A77 ("Further, the above-quoted language was intended to reflect Defendant ANC/Alamo's liability to Defendant Martin under principles of indemnification and was not intended to address issues involving self-insured entities under Minn. Stat. § 65B.48, subd. 3, or priority of insurance coverage under Minn. Stat. § 65B.49, subd. 3(3)(d).").)  Had it, Mrs. Martin would not have had an obligation to pay Plaintiffs' damages.

The Bankruptcy Court's and the Trust's failure to cite any supporting statute or caselaw is attributable to the fact that Mrs. Martin's claim of indemnity is separate and distinct from the primary determination.  As demonstrated above, it is undisputed that a claim of indemnity under Minnesota law does not arise at the time of the commission of the underlying act; rather, the claim arises at the time of the payment of the judgment flowing from the act.  The common-law claim exists to compensate Mrs. Martin for damages separate and distinct from those of the Plaintiffs, which the primary determination addressed.  Plaintiffs' damages arose out of the accident.  On the other hand, Mrs. Martin's damages arose post-petition when she paid more than her share of the judgment in satisfaction of Plaintiffs' claims against Debtors and her.

8

The fact that Mrs. Martin's claim of indemnity flows from damages separate and distinct from the damages associated with the primary determination is borne out not only by case law and the Minnesota District court's ruling, but by an example in the Trust's Response. The Trust hypothesized that, had Mrs. Martin's coverage been deemed primary:

> Martin would bear primary responsibility for damages, and the Debtors would have a right of indemnification from Martin **if they had paid** any damages to the Nips [Plaintiffs] based on their vicarious liability.

(Trust Response at 13 n.5.) Inadvertently, the Trust recognizes the distinction between the determination that the right of indemnification would arise if, and only if, Debtors paid more than their fair share of damages to the Plaintiffs, giving rise to a claim against Mrs. Martin.

The Trust also attempts to argue that Debtors' obligation to indemnify flows from its "self-insurance" under the Minnesota No-Fault Automobile Insurance Statute. Specifically, the Trust argues that Debtors' certificate of self-insurance is a "contract for indemnity":

> Minnesota has long recognized that self-insurance is the "functional equivalent of a commercial insurance" and that the certificate of self-insurance filed with the state is the functional equivalent of an insurance policy. McClain v. Begley, 465 N.W.2d 680, 682 (Minn. 1991); see also Hertz Corp., 573 N.W.2d at 689. Thus, like a commercial insurance policy, a self-insurance policy is a **contract for indemnity**. Id.

(Trust Response at 11 (emphasis added).)

As noted above, neither cited case stands for the proposition that Debtors were obligated to indemnify Mrs. Martin under the Minnesota No-Fault Automobile Insurance Statute. Moreover, the Debtors failed to file a certificate of self-insurance with the Commissioner. The only agreement between the parties – the rental agreement – provided that Mrs. Martin's coverage was primary. Debtors maintained that this contractual language controlled throughout the underlying case and, therefore, they asserted no obligation including a contractual obligation to indemnify Mrs. Martin existed.

9

C.     **Mrs. Martin's Common-Law Indemnity Claim Cannot Be Implied Into The Agreement.**

The Bankruptcy Court held that Debtors' indemnification obligation was an implied-at-law term of the actual contract between Debtors and Mrs. Martin in accordance with the Minnesota No-Fault Automobile Insurance Statute. (AA. p. A9.) On that basis, the Bankruptcy Court held that the indemnification claim arose at the time the rental agreement was executed, before the filing of the bankruptcy cases. (Id. at A9-A10.) The Trust attempts to defend this erroneous interpretation by citing to a line of cases that have been repealed. In any event, the argument fails as Mrs. Martin's indemnity claim does not arise under the Minnesota No-Fault Automobile Insurance Statute, rather under Minnesota common-law. Moreover, implying the indemnification obligation into the Agreement contradicts Third Circuit law.

1.     **The cases cited by the Trust have been repealed.**

The Trust cites a line of cases purporting to demonstrate that Minnesota courts have "implied statutory under-insured motorist coverage as a term of actual insurance contracts by operation of law." Trust Response at 13. All the cases address interpretation of uninsured motorist coverage prior to 1980. Effective April 1980, the Minnesota Legislature repealed that line of cases:

> *Holman* and its progeny have judicially read underinsured motorists coverage into insurance contracts where legally insufficient offers were made as a remedy to enforce the insurer's legislatively imposed obligation to offer such coverage. However, since the Legislature has now eliminated that obligation, underinsured motorist coverage will not be read into new policies, purchased or existing policies renewed after April 12, 1980, the date of repeal.

Hauer v. Integrity Mutual Ins. Co., 352 N.W.2d 406, 409 (Minn. 1984). Further, this line of cases has no applicability to the issue confronted by the Minnesota district court.

Thus, neither the Bankruptcy Court nor the Trust has cited any authority for implying terms of the Minnesota No-Fault Automobile Insurance Statute into the agreement between

10

Debtors and Mrs. Martin.  In fact, as demonstrated in Mrs. Martin's Opening Brief, where the contract and Minnesota No-Fault Automobile Insurance Statute conflict, the statute renders the conflicting contractual provision unenforceable.  The statutory language is not inferred into the contract.  <u>Hertz Corp.</u>, 573 N.W.2d at 690; <u>Roering v. Grinnell Mut. Reinsurance Co.</u>, 444 N.W.2d 829, 833 (Minn. 1989).

> **2.      Because Mrs. Martin's indemnity claim arose under the common law, the indemnification obligation cannot be read into the agreement.**

In any event, the Bankruptcy Court's reasoning and the Trust's arguments are inapplicable.  As demonstrated above, Mrs. Martin's indemnity claim arose under Minnesota common-law.  (AA. p. A77.)  It did <u>not</u> arise under the Minnesota No-Fault Automobile Insurance Statute.  Neither the Bankruptcy Court nor the Trust cite any authority for the proposition that a common-law claim of an indemnity becomes an actual term of the contract, particularly where that contract expressly provides to the contrary.  In fact, a common-law indemnity claim exists only in the absence of an agreement as described in greater detail in Mrs. Martin's Opening Brief.

> **3.      The Bankruptcy Court's reading of the indemnity obligation into the actual contract between Debtors and Mrs. Martin contradicts the Third Circuit's definition of an indemnity agreement.**

The Trust failed to address the fact that the Bankruptcy Court's holding contradicted the Third Circuit's definition of an indemnity agreement.  As demonstrated in Mrs. Martin's Opening Brief, the Third Circuit has held that to constitute an indemnity contract, the parties must specifically agree in advance that one party will indemnify the other.  <u>In re Frenville Co., Inc.</u>, 744 F.2d at 337.  It is undisputed that Mrs. Martin and Debtors never specifically agreed that Debtors would indemnify her.  Indeed, the rental agreement provided to the contrary.  As a result, Debtors maintained throughout the underlying litigation that this contractual language

11

controlled.  Only after the Bankruptcy Court entered its order implying Mrs. Martin's common-law indemnity claim into the agreement has the Trust (the privity of Debtors) maintained that Debtors had a contractual obligation to indemnify her.

## IV.    11  U.S.C.  § 503  SETS  FORTH  THE  REQUIREMENTS  OF  AN ADMINISTRATIVE EXPENSE CLAIM.

Although the parties disagree in their application, they agree on the general standards for allowance of an administrative expense claim.  To qualify as an allowed administrative expense claim under 11 U.S.C. § 503, a claim must (1) rise post-petition and (2) be an actual, necessary cost and expense of preserving the bankruptcy estate.  Penn. Dept. of Eng. Res. v. Tri-State Clinical Labs., Inc., 178 F.2d 685, 689 (3d. Cir. 1999); Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 955 (1st Cir. 1976).  When a claim arises is determined by state law.  Vansten Bondholders Protective Comm. v. Green, 329 U.S. 156, 161 (1946); In re Frenville Co., Inc., 744 F.2d at 335.

## V.    PURSUANT TO BINDING THIRD CIRCUIT PRECEDENT, MRS. MARTIN'S COMMON-LAW CLAIM FOR INDEMNITY AROSE POST-PETITION WHEN THE JUDGMENT WAS PAID.

### A.    Frenville Remains Binding Third Circuit Precedent.

A district court has a duty to follow circuit precedent.  United States v. Mitlow, 714 F.2d 294, 298 (3d Cir. 1983).  "Frenville remains the law of this Circuit."  In re W.R. Grace & Co., Inc., 281 B.R. 852, 860 (Bankr. D. Del. 2002) (citing Jones v. Chunetron Corp., 212 F.3d 199, 206 (3d Cir. 2000)).  Accordingly, this Court has a duty to apply Frenville.[4]  Indeed, the

---

[4]    The Trust's call to overrule Frenville should be rejected on the merits as well.  The Trust adopts the arguments of two commentators.  The commentators argue that a common-law indemnity claim that arises post-petition should not be afforded status as an administrative expense on the grounds that the "debtor-in-possession had no dealings with the purported claimant" and that they found it troubling that if such claims "are not asserted until after a plan of reorganization becomes effective – should be allowed to be paid in full as other post-reorganization claims."  (Trust Response at 27 (quoting Ralph R. Mabey and Annette W.

12

Bankruptcy Court held that it "of course, cannot overrule <u>Frenville</u> and is bound by its holding." (AA. at p. A5.)  Thus, this Court must reject the Trust's arguments that the decision should be overruled.

### B.    Mrs. Martin's Claim Arose Post-Petition at the Time She Paid the Judgment.

As described in greater detail in Mrs. Martin's Opening Brief, the Third Circuit in <u>Frenville</u> held that because the suit, which gave rise to the common-law claim for indemnity, was not commenced and a judgment would not be paid until after the debtor's bankruptcy petition was filed, the common-law indemnity claim was a post-petition claim.  <u>In re Frenville Co., Inc.,</u> 744 F.2d at 337.  In accordance with that decision and Minnesota law, Mrs. Martin's common-law claim for indemnity against Debtors did not arise until, at the earliest, the date the underlying suit was brought.  That suit was commenced in April 2002, which was approximately six months <u>after</u> Debtors commenced their bankruptcy cases.  Mrs. Martin did not pay the judgment until March 2004, which was over three years <u>after</u> Debtors filed for bankruptcy.  Accordingly, Mrs. Martin's claim arose after the filing of Debtors' petitions.

The Trust's argument that "Martin's claim arose pre-petition because all acts giving rise to the Debtors' liability, i.e., the vehicle rental and the Pre-petition Accident, occurred pre-petition" runs contrary to <u>Frenville</u> and the Bankruptcy Code's definition of claim.  (Trust Response at 28.)  The Bankruptcy Code defines claim as the "<u>right to payment</u> whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

---

Jarvis, <u>In re Frenville:  A Critique by the National Bankruptcy Conference's Committee on Claims and Distributions</u>, 42 <u>Bus. Law.</u> 697, 713-14 (1986-87).)  Here, these arguments are inapplicable.  Mrs. Martin had post-petition dealings with Debtors.  She paid more than her fair share of the judgment, absolving Debtors from any liability to Plaintiffs.  Moreover, in accordance with the administrative claims bar date established by Debtors prior to confirmation of their plan, Mrs. Martin timely filed her administrative claim.  In doing so, she unequivocally asserted and provided notice of the administrative claim prior to confirmation of the plan.

13

unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A) (emphasis added). The Trust does not dispute that, under <u>Frenville</u> and Minnesota law, a claim of indemnity does not arise at the time of the commission of the underlying act; rather, the claim arises at the time of the payment of the judgment flowing from the act. Accordingly, Mrs. Martin first had a "right to payment" when she paid Plaintiffs' judgment, satisfying their claims against Debtors. Her claim did not arise at the time of the accident as asserted by the Trust.

>   **C.      <u>Frenville Is Not Factually Distinguishable</u>.**

The Trust contends that <u>Frenville</u> is distinguishable on the grounds that Mrs. Martin's right to indemnification "arises from the contract between the parties, which impliedly incorporates and is governed by the background laws in this area, the Minnesota Financial Responsibility Act and the No-Fault Act." (Trust Response at 15.) As demonstrated above, Mrs. Martin's right to indemnification does not arise under any statute. The Minnesota No-Fault Automobile Insurance Statute simply governs the determination of whether Mrs. Martin's or Debtors' coverage was primary. It does not provide Mrs. Martin with a claim of indemnity. Instead, the Minnesota district court granted Mrs. Martin's common-law claim for indemnification, which is the identical claim addressed by <u>Frenville</u>.

The Trust further attempts to distinguish <u>Frenville</u> on the grounds that there was no contract between the debtor and the accounting firm asserting a claim of indemnity. (Trust Response at 16.) It cannot be disputed, however, that there was an agreement between the accountant and debtor. <u>In re Frenville</u>, 744 F.2d at 33. Absent such an agreement, the accounting firm would not have prepared the debtor's financial statements. <u>See id.</u> at 333. But this agreement did not address the parties' rights of indemnity. <u>Id.</u> at 337.

14

Similarly, the rental agreement between Debtors and Mrs. Martin did not establish Mrs. Martin's right to indemnification. Indeed, in the only agreement between the parties, Debtors attempted to impose on Mrs. Martin that obligation. By holding that an indemnification obligation that is implied-at-law arises at the time the parties enter into any agreement, even one that bars such indemnity, the Bankruptcy Court effectively overruled Frenville.

> ### D.    The Cases Cited By The Trust Are Distinguishable.

Finally, the Trust asserts that this Court should follow the cases holding that an indemnity claim arising from a contract executed pre-petition is a claim that arises prior to the filing of the bankruptcy case. (Trust Response at 16-17.) These cases are inapposite. The contract between Mrs. Martin and the Debtors did not provide Mrs. Martin with a right of indemnification. The Minnesota No-Fault Automobile Insurance Statute provides no such indemnity claim. Finally, no authority exists to imply a common-law indemnity claim into an agreement between the parties, particularly where the agreement expressly provides to the contrary.

## VI.    MRS. MARTIN'S INDEMNITY CLAIM IS AN ACTUAL, NECESSARY COST AND EXPENSE OF PRESERVING DEBTORS' ESTATE.

The second element of a section 503 administrative expense is that the claim must be an "actual, necessary cost and expense preserving the bankruptcy estate." 11 U.S.C. § 503(b)(1)(A). The Trust contends that such an expense must provide "a substantial benefit to the estate." (Trust Response at 18.) To the contrary, the expense need only be incident to the operation of a business. Reading Co. v. Brown, 391 U.S. 471, 473 (1968); In re B. Cohen & Sons Caterers, Inc., 143 B.R. 27, 28-29 (E.D. Penn. 1992).

As demonstrated in Mrs. Martin's Opening Brief, the same principles upon which the Supreme Court based its holding in Reading Company – a tort claim was an actual, necessary cost and expense under section 503 – necessitated holding that Mrs. Martin's common-law

15

indemnity claim was an expense incident to the Debtors' operations.  The Trust attacks this position on the ground that <u>Reading Company</u> addressed a tort claim and Mrs. Martin's claim is an "equitable" claim.  (Trust Response at 18-19.)  The Trust neglects to address the policies that underlie that holding, which apply equally here.

The Supreme Court based its holding in <u>Reading Company</u> on the fact that it was equitable to allow as an administrative claim an expense suffered by those injured by the operation of the debtor's business.  Here, Mrs. Martin's common-law indemnity claim is, in fact, an equitable claim.  Moreover, Mrs. Martin's equitable claim arose because she satisfied Plaintiffs' tort claim against Debtors.  As noted by the Trust, such claims are a frequent occurrence because Debtors are a party to over 10,000 automobile accidents.  Thus, a claim such as Mrs. Martin's is clearly an expense ordinarily attendant upon Debtors' active participation in commercial life.  <u>See</u> <u>Reading Co.</u>, 391 U.S. at 494.

In addition, the Supreme Court held that post-petition obligations of a bankruptcy estate should be imposed on the party who bears the cost of purchasing insurance, and the injured party should enjoy the same priority as the expense for insurance premiums.  <u>Reading Company</u>, 391 U.S. at 477.  Debtors had an opportunity to purchase insurance post-petition.  Payment of this expense would have been entitled to priority treatment under section 503.  That policy would have provided coverage for Mrs. Martin's claim.  The fact that Debtors chose not to purchase such insurance should not relegate Mrs. Martin's indemnity claim to a general unsecured claim.  Instead, she should enjoy the same priority status as the expense for insurance premiums.

Finally, numerous courts have applied the rationale of <u>Reading Company</u> to circumstances not identical to that case.  <u>See</u>, <u>e.g.</u>, <u>In re Charlesbank Laundry, Inc.</u>, 755 F.2d 200, 202 (1st Cir. 1985) (extending <u>Reading Company</u> to civil compensatory damages and

16

attorneys fees resulting from debtor's violation of an injunction); <u>York v. N.L.R.B.</u>, 709 F.2d 1138, 1143 (7th Cir. 1983) (finding that that injuries sustained during trustee's administration of an estate are given administrative priority regardless of whether their injury was caused by tort or some other wrongdoing); <u>In re Met-L-Wood Corp.</u>, 115 B.R. 133, 136 (N.D. Ill. 1990) (extending <u>Reading Company</u> based on "principles of fairness" to hold that awards of attorneys' fees and costs from frivolous litigation pursued by trustee constitute administrative expenses).

The Trust also cites <u>In re Yanks</u>, 49 B.R. 56 (Bankr. S.D. Fla. 1985), to support its proposition that "the timing of when Martin paid Nipps (post-petition as opposed to pre-petition) should not transform the nature of the claim." (Trust Response at 19.)  To the extend that this argument even relates to the second prong of the administrative expense test, the decision was founded on that court's conclusion that the applicable claim was a pre-petition claim.  <u>In re Yanks</u>, 49 B.R. at 59 ("[T]he claim cannot constitute an actual, necessary expense of preserving the estate when it arose from the Debtors' alleged pre-petition arson of their property.").  The Court reached that decision by rejecting <u>Frenville</u>.  As noted above, <u>Frenville</u> is binding precedent in this circuit and leads to the inescapable conclusion that Mrs. Martin's common-law indemnity claim arose post-petition when the judgment was paid.

## VII.   THE BANKRUPTCY CODE OBLIGATES THE TRUST TO IMMEDIATELY PAY MRS. MARTIN'S ADMINISTRATIVE EXPENSE CLAIM.

The Trust asserts that this Court has discretion to determine when an administrative expense will be paid. (Trust Response at 17-18.) The Trust cites three cases in support of that assertion.  None of the cases, however, address payment of an administrative claim <u>after</u> confirmation of a debtor's reorganization plan.  This is a critical distinction from the case at hand.  Debtors confirmed their plan almost two years ago, and the plan has gone "effective."  Bankruptcy Code section 1129(a)(9)(A) requires payment of all allowed administrative expense

17

claims on the effective date.  11 U.S.C. § 1129(a)(9)(A).  The courts have <u>no</u> discretion to delay payment of allowed claims after the effective date.

Because Mrs. Martin has an allowed administrative claim, she is entitled to immediate payment.  The payment is required regardless of any pending adversary proceedings in Debtors' bankruptcy case.

## VIII.    THE TRUST'S UNCLEAN HANDS ARGUMENT LACKS MERIT.

The Trust asserts that Mrs. Martin should be estopped from seeking administrative expense status because she was found to be the at-fault driver of the vehicle rented from Debtors. (Trust Response at 24.)  The Trust failed to cite a single decision supporting the application of the doctrine to administrative claims.  In any event, the jury found Debtors and Mrs. Martin jointly and severally liable.  (AA. p. A77).  Indeed, as the owner of a rental car, Debtors share the identical liability as Mrs. Martin.  <u>See</u> Minn. Stat. § 169.09.

Moreover, in the rental agreement, Debtors attempted to impose upon Mrs. Martin their obligation to provide primary coverage.  Debtors' actions were in direct violation of the Minnesota No-Fault Automobile Insurance Statute.  Minn. Stat. § 65B.49 subd. 5(a)(1)(2). Debtors relied on this contract in support of its position that Mrs. Martin was primary.  Not until Mrs. Martin brought the motion to allow and pay her administrative claim did the Trust contend that the agreement established Debtors were liable.

The Trust also argues that judicial estoppel should prevent Mrs. Martin from seeking an administrative expense claim because she "did not obtain relief from the automatic stay to prosecute her cross-claims against the Debtors," but rather "relied on the relief granted to the Nips in the Stay Relief Stipulation."  (Trust Response at 25.)  Mrs. Martin's claim, as a post-petition claim, was not barred by the automatic stay.  11 U.S.C. § 362(a)(1); <u>In re Frenville Co., Inc.</u>, 744 F.2d at 335.  Accordingly, Mrs. Martin did not rely on the relief granted to Plaintiffs.

18

Indeed, the stipulation was between Debtors and Plaintiffs and simply did not apply to Mrs. Martin.  (AA. p. A57.)

The stipulation between Debtors and Plaintiffs shows that Debtors contemplated that Mrs. Martin's claim was a post-petition claim.  If Debtors had thought the claim was a pre-petition claim, as the Trust now contends, they would have sought to enforce the automatic stay at the time Mrs. Martin asserted her common-law indemnity claim.  Under the principles set forth in the judicial estoppel cases cited by the Trust, the Trust, as successor of Debtors, should not now be allowed to assert Mrs. Martin's claim arose pre-petition.

## **CONCLUSION**

Mrs. Martin respectfully requests that this Court reverse the Bankruptcy Court's Opinion, allow Mrs. Martin's administrative claim in the amount of $2.44 million under 11 U.S.C. § 503, and order Debtors and the Trust to immediately pay that claim.

Dated:  March 21, 2007

James S. Yoder (#2643)
White and Williams LLP
824 North Market Street
Suite 902
PO Box 709
Wilmington, DE 19899-0709

and

Ryan T. Murphy (MN #311972)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street
Suite 4000
Minneapolis, MN 55402
(612) 492-7000
(612) 492-7077

and

19

WILDMS 142344v.1

Lee L. La Bore (MN #59274)
Steven L. Viltoft (MN #190615)
P.O. Box 70
Hopkins, MN  55343-0070
(952) 933-3371

ATTORNEYS FOR MARJORIE JOAN MARTIN

4163246_1.DOC

20

U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE
Appeal from the U.S. Bankruptcy Court
For the District of Delaware


Marjorie Joan Martin,

                Appellant,                Appeal Case No. 1:06-cv-389

    v.

ANC Rental Corporation,

                Appellee.


## <u>CERTIFICATE OF SERVICE</u>

I, James S. Yoder, Esquire, certify that I am not less than 18 years of age, and that I caused

service of the foregoing **Reply Brief** to be made on this 21st day of March, 2007, to the party

listed below via First Class Mail:

      Willaim J. Burnett
      Smith Giacometti and Chikowski LLC
      901 North Market Street, Suite 840
      Wilmington, DE 19801-3090


Under penalty of perjury, I declare that the foregoing is true and correct.

                                     _____
                                       James S. Yoder (#2643)